R. Rex Parris (SBN 96567)
    rrparris@parrislawyers.com
Kitty K. Szeto (SBN 258136)
    kszeto@ parrislawyers.com
John M. Bickford (SBN 280929)
    jbickford@parrislawyers.com
Eric N. Wilson (SBN 291815)
    ewilson@parrislawyers.com
**PARRIS LAW FIRM**
43364 10th Street West
Lancaster, California 93534
Telephone:(661) 949-2595
Facsimile: (661) 949-7524

Attorneys for Plaintiff and the Putative Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE DEL VALLE; an individual, for herself and all members of the putative class,<br><br>        Plaintiff,<br><br>        v.<br><br>GLOBAL EXCHANGE VACATION CLUB, a California corporation; RESORT VACATIONS, INC., a Nevada corporation; GLOBAL VACATIONS MARKETING CORP., a Nevada corporation, GLOBAL EXCHANGE DEVELOPMENT, CORP., a Nevada corporation, and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: 8:16-cv-02149<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:      January 9, 2017<br>Time:      8:30 a.m.<br>Courtroom: 9C<br>Judge:    David O. Carter |

# <u>TABLE OF CONTENTS</u>

**PAGE**

SUMMARY OF MOTION ..................................................................................... 1

FACTS ............................................................................................................. 4

    A.    Defendants are a group of related companies responsible for developing, marketing, and selling timeshares. ................................................. 4

    B.    Defendants engage in internal and external telemarketing in order to invite customers to attend an in-person timeshare presentation ............................. 4

        1.    Defendants collect telephone numbers for internal telemarketing via sweepstakes, which require a telephone number to enter. ............. 5

        2.    Defendants contract with IVT and MSI to make telemarketing calls on their behalf, but do not provide them with numbers to call or take any steps to ensure compliance with the TCPA. ......................... 6

    C.    Plaintiff was called on her cell phone at least three times by IVT and MSI on Defendants' behalf. ....................................................... 7

LEGAL STANDARD ......................................................................................... 8

ARGUMENT ................................................................................................... 9

    I.    THE RULE 23(A) PREREQUISITES ARE SATISFIED ............................ 9

        A.    The class is sufficiently numerous and ascertainable. ......................... 9

        B.    There are common questions that will drive the resolution of the litigation. ......................................................................... 13

        C.    Plaintiff's claims are typical of the claims and defenses of the class. 15

        D.    Both Plaintiff and her counsel are adequate. ................................... 15

    II.    THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED. ............... 16

        A.    The common questions predominate. ............................................. 16

        1.    Common questions predominate on whether IVT and MSI called cell phones .................................................................. 17

i

# <u>TABLE OF CONTENTS</u>

**PAGE**

2. Common questions predominate on whether IVT and MSI use an ATDS..................................................................17

3. Common questions predominate on whether Defendants can prove IVT and MSI obtained prior express consent........18

4. Common questions predominate on whether Defendants can be held liable for IVT and MSI's telemarketing. ..........................21

B. Class treatment is superior to thousands of individual actions...........23

CONCLUSION..............................................................................................24

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Abdeljalil v. Gen. Elec. Capital Corp.*,
   206 F.R.D. 303 (S.D. Cal. 2015) ........................................................................ 2, 9, 11

*Agne v. Papa John's Int'l, Inc.*,
   286 F.R.D. 559 (WD. Wash. 2012) .............................................................................. 20

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................... 16

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) ................................................................................................. 8

*Bateman v. Am. Multi-Cinema, Inc.*,
   623 F.3d 708 (9th Cir. 2010) ................................................................................ 8, 16

*Bee, Denning, Inc. v. Capital Alliance Grp.*,
   310 F.R.D. 614 (S.D. Cal. 2015) ...................................................................... 3, 23, 24

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   302 F.R.D. 240 (N.D. Ill. 2014) ................................................................................. 13

*Booth v. Appstack, Inc.*,
   No. C13-1533JLR, 2016 WL 3030256 (W.D. Wash. May 25, 2016) ................ 2, 12, 13

*Dukes v. Wal-Mart Stores, Inc.*,
   603 F.3d 571, (9th Cir. 2010) .................................................................................... 15

*Duran v. U.S. Bank Nat'l Ass'n*,
   59 Cal. 4th 1 (2014) ................................................................................................... 17

*Edeh v. Midland Credit Mgmt., Inc.*,
   748 F. Supp. 2d 1030 (D. Minn. 2010) ...................................................................... 19

*Edwards v. First Am. Corp.*,
   289 F.R.D. 296 (C.D. Cal. 2012) ................................................................................. 9

iii

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Eisen v. Carlisle & Jacquelin*,
   391 F.2d 555 (2d Cir. 1968) ........................................................................ 1

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ..................................................................................... 8

*Giles v. St. Charles Health Sys., Inc.*,
   294 F.R.D. 585 (D. Or. 2013) .................................................................... 16

*Gonzales v. Arrow Fin. Servs. LLC*,
   489 F. Supp. 2d 1140 (S.D. Cal. 2007) ....................................................... 9

*Grant v. Capital Mgmt. Servs., L.P.*,
   449 Fed. App'x 598 (9th Cir. 2011) .......................................................... 14

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ....................................................................................... 1

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................................. 14, 17

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...................................................................... 15

*Ikuseghan v. MultiCare Health Sys.*,
   No. C14–5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015) .......... 24

*In re Fresh & Process Potatoes Antitrust Litig.*,
   834 F. Supp. 2d 1141 (D. Idaho 2011) ....................................................... 21

*In re Google Referrer Header Privacy Litig.*,
   87 F. Supp. 3d 1122 (N.D. Cal. 2015) ....................................................... 12

*In re Rubber Chem. Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005) ................................................................. 9

iv

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Jackson v. Caribbean Cruise Line, Inc.*,
  88 F. Supp. 3d 129 (E.D.N.Y. 2015) ............................................................... 21

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014) .................................................................. 14, 15

*Knutson v. Schwan's Home Servs., Inc.*,
  No. 3:12-cv-0964-GPC-DHB, 2013 WL 4774763 ......................................... 12

*Krakauer v. Dish Network L.L.C.*,
  311 F.R.D. 384 (M.D.N.C. 2015) ............................................................ 13, 22

*Kristensen v. Credit Payment Sers.*,
  12 F. Supp. 3d 1292 (D. Nev. 2014) ............................. 3, 11, 18, 19, 21, 22

*Lennartson v. Papa Murphy's Holdings, Inc.*,
  No. C15-5307 RBL, 2016 WL 51747 (W.D. Wash. Jan. 5, 2016) ................. 19

*Linder v. Thrifty Oil Co.*,
  23 Cal. 4th 429 (2000) ..................................................................................... 8

*Lushe v. Verengo Inc.*,
  No. CV 13-07632 AB (RZ), 2015 WL 500158 (C.D. Cal. Feb. 2, 2015) ........... 1, 14, 21

*Manno v. Healthcare Revenue Recovery Group, LLC*,
  289 F.R.D. 674 (S.D. Fla. 2013) .................................................................... 11

*Mevorah v. Wells Fargo Home Mortg. Overtime Pay Litig.*,
  571 F.3d 953 (9th Cir. 2009) ......................................................................... 16

*Meyer v. Portfolio Recovery Assocs.*,
  *LLC*, 707 F.3d 1036 (9th Cir. 2012) ..................... 1, 14, 17, 18, 19, 21

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339  U.S. 306 (1950) ...................................................................................... 12

v

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ............................................................ 14, 15

*Phelps v. 3PD, Inc.*,
   261 F.R.D. 548 (D. Or. 2009) ................................................................. 16

*Richmond v. Dart Indus., Inc.*,
   29 Cal. 3d 462 (1981) ............................................................................. 1

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 (9th Cir. 2009) ................................................................. 18

*Sav-on Drug Stores, Inc. v. Superior Court*,
   34 Cal. 4th 319 (2004) ................................................................. 8, 9, 17

*Schwartz v. Upper Deck Co.*,
   183 F.R.D. 672 (S.D. Cal. 1999) ............................................................ 9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ............................................................................... 8

*Silbaugh v. Viking Magazine Servs.*,
   278 F.R.D. 389 (N.D. Ohio 2012) ......................................................... 19

*Smith v. Farm Mut. Auto. Ins. Co.*,
   30 F. Supp. 3d 765 (N.D. Ill. 2014) ...................................................... 21

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................. 16

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ............................................................... 16

*Stern v. DoCircle, Inc.*,
   No. SACV 12-2005AG (JPRx), 2014 WL 486262 (C.D. Cal. Jan 29, 2014) .......... 19, 20

vi

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Thomasson v. GC Servs. Ltd. P'ship*,
   275 F.R.D. 309 (S.D. Cal. 2011) ...................................................................... 12

*Thrasher v. CMRE Fin. Servs., Inc.*,
   No. 14-CV-1540 BEN (NLS), 2015 WL 1138469 (S.D. Cal. Mar. 13, 2015) ............... 11

*Trasher-Lyon v. CCS Commercial, LLC*,
   No. 11-C-04473, 2012 WL 3835089 (N.D. Ill. Sept. 4, 2012) ...................................... 19

*United Steel Workers Int'l Union v. ConocoPhillips Co.*,
   593 F.3d 802 (9th Cir. 2010) ............................................................................ 9

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ............................................................................ 23

*Villegas v. United States*,
   963 F. Supp. 2d 1145 (E.D. Wash. 2013) ...................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................ 2, 8, 13, 14

*Whitaker v. Bennett Law, PLLC*,
   No. 13–cv–3145–L(NLS), 2014 WL 5454398  (S.D. Cal. Oct. 27, 2014) .............. 23, 24

**FCC Orders**

*In re Rules and Regulations Implementing the TCPA*,
   18 FCC Rcd. 14091 (July 3, 2003) ................................................................ 17, 18

*In re Rules & Regulations Implementing the TCPA*,
   23 FCC Rcd. 559 (Jan. 4, 2008) ........................................................................ 14

*In re Rules and Regulations Implementing the TCPA*,
   27 FCC Rcd. 1830 (Feb. 15, 2012) .................................................................... 19

*In re the Joint Pet. Filed by Dish Network, LLC, et al.*,
   28 FCC Rcd. 6574 (May 9, 2013) ............................................................ 14, 21, 22

vii

# TABLE OF AUTHORITIES

**PAGE(S)**

**FCC Orders**

*In re Rules and Regulations Implementing the TCPA,*
   30 FCC Rcd. 7961 (July 10, 2015)...................................................................18

**Other Authorities**

Black's Law Dictionary (8th ed. 2004) .............................................................18

Newberg on Class Actions (5th ed. 2011) ...........................................................9

Restatement (Third) of Agency (2) (2006) .........................................................22

**Statutes**

47 U.S.C. § 227(a)(1)..........................................................................................17

**Rules**

Fed. R. Civ. P. 23(a).............................................................................................9

Fed. R. Civ. P. 23(a)(1).........................................................................................9

Fed. R. Civ. P. 23(a)(2).......................................................................................13

Fed. R. Civ. P. 23(a)(3).......................................................................................15

Fed. R. Civ. P. 23(a)(4).......................................................................................15

Fed. R. Civ. P. 23(b)(3)..................................................................................16, 23

Fed. R. Civ. P. 23(c)(2)(B)..................................................................................12

viii

## **SUMMARY OF MOTION**

"Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). " 'By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation.' "   *Richmond v. Dart Indus., Inc.*, 29 Cal. 3d 462, 469 (1981) (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560 (2d Cir. 1968)).

Here, Plaintiff Michele Del Valle ("Plaintiff") alleges that a group of closely related timeshare companies (collectively "Defendants")[1] hired two Philippine-based telemarketing companies, InterVoice Technologies ("IVT") and Marketing Solutions International ("MSI"), to telemarket timeshares on their behalf.  Plaintiff alleges IVT and MSI telemarket cell phones using an automatic telephone dialing system ("ATDS") without the recipients' prior express consent.  *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (explaining there are three parts to a TCPA claim: "(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent"); *Lushe v. Verengo Inc.*, No. CV 13-07632 AB (RZ), 2015 WL 500158, at *1 (C.D. Cal. Feb. 2, 2015) (recognizing that "common law principles of agency apply such that sellers like Defendant[s] who did not make calls themselves may be held liable for calls their agents make for them").  Accordingly, Plaintiff seeks to certify the following class:

> All persons within the United States to whom [IVT] and [MSI] have placed a call to said persons' cellular telephone (without their prior express consent and not for emergency purposes) for

---

[1]      Defendants are Global Exchange Vacation Club ("GEVC"), Resort Vacations, Inc. ("RVI"), Global Vacations Marketing Corp. ("GVMC"), and Global Exchange Development, Corp. ("GEDC").

1

the purpose of marketing Defendants' timeshares through the use of an [ATDS] from September 15, 2010 to the present.

First Am. Compl., ¶ 24.

This class meets all the requirements for certification. First, it is ascertainable. Each class member can be identified by performing a cell phone scrub on IVT and MSI's VICIdial call records, which will isolate which calls were made to cell phones. *See* PA 235–38 [Ex. 5] (Hansen Decl., ¶¶ 40–49); *see also Abdeljalil v. Gen. Elec. Capital Corp.*, 206 F.R.D. 303, 307 (S.D. Cal. 2015) (holding "class membership [could] be readily determined by . . . obtaining a list of telephone numbers called by defendant during the class period" and "scrub[ing] th[at] list"). Additionally, individuals can self-identify as class members by comparing their cell phone records to the outbound telephone numbers used by IVT and MSI. *See Booth v. Appstack, Inc.,* No. C13-1533JLR, 2016 WL 3030256, at *7 (W.D. Wash. May 25, 2016) (holding class was ascertainable because members could "self-identify via affidavit or presentation of phone records from the relevant time period").

Second, commonality is satisfied with four common questions:

1. Do IVT and MSI call cell phones?

2. Do IVT and MSI use an ATDS?

3. Can Defendants prove that IVT and MSI obtained prior express consent to telemarket cell phones?

4. Are Defendants liable for the calls IVT and MSI made on their behalf?

These questions track the elements of Plaintiff's TCPA claim and Defendants' affirmative defense. They will therefore yield common answers that will "drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks omitted).

Third, Plaintiff is a typical and adequate class representative because her claims arise out of the same course of conduct as the absent class members—i.e., IVT and

2

MSI's telemarketing of her cell phone using an ATDS without her prior express consent—and there is no antagonism between her and the proposed class.

Four, the four common questions will predominate over individual issues. For example, whether IVT and MSI called cell phones can be determined by performing a cell phone scrub on their call records. Similarly, determining whether VICIdial constitutes an ATDS merely requires examining the functional capacity of VICIdial and comparing that to the definition of an ATDS. *See Kristensen v. Credit Payment Sers.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (noting the question of "whether the equipment used to send the text messages [was] an ATDS" is both common and predominant). The issue of consent also predominates because Defendants admit they have no evidence that either IVT or MSI obtain prior express consent to call cell phones. *See* PA 175 [Ex. 2.E] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set One at 7:1–3); *see also Kristensen*, 12 F. Supp. 3d. at 1307 ("[I]n the absence of any evidence of consent by the defendant, consent is a common issue with a common answer."). And the issue of agency predominates because agency only requires the court to examine the relationship between Defendants and IVT and MSI, and how a reasonable person would interpret their telemarketing calls. *See Kristensen*, 12 F. Supp. 3d. at 1301 (holding the issue of agency predominates in a TCPA case).

Finally, class treatment is superior to individual actions. Despite the fact that over 110,000 individuals have complained about Defendants' telemarketing activity, *see* PA 183 [Ex. 2.E] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set One at 15:16–18), no individual TCPA actions have been filed. This is likely because Defendants admit to using a long list of deceptive names and DBAs to make it difficult for consumers to find the correct agency to sue. *See* PA 11–13 [Ex. 1.A] (Sargent Depo. at 22:11–24:2). As a result, the TCPA's statutory damages of "$500 (or even $1,500) for each violation is unlikely to incentivize the average claimant to incur the opportunity costs of time, effort, and attention to pursue [their] claim on an individual basis." *Bee, Denning, Inc. v.*

3

*Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015).  For these reasons, the Court should grant Plaintiff's motion for class certification.

**FACTS**

**A.  Defendants are a group of related companies responsible for developing, marketing, and selling timeshares.**

Defendants are a group of closely related companies responsible for developing, marketing, and selling memberships in a multi-destination vacation timeshare club called GEVC.  *See* PA 14–18 [Ex. 1.A] (Sargent Depo. at 33:24–37:4).  These companies consist of GEDC, GEVC, and RVI.  GEDC is the development and management company.  It acquires timeshare intervals at various resorts, dedicates those intervals to GEVC, and maintains ownership over the new memberships created by the dedicated intervals.  RVI then markets and sells the new memberships on behalf of GEDC.  *See* PA 18–21, 23 [Ex. 1.A] (Sargent Depo. at 37:12–40:4, 76:10–14).[2]

**B.  Defendants engage in internal and external telemarketing in order to invite customers to attend an in-person timeshare presentation.**

RVI markets Defendants' timeshares by inviting potential customers to attend an in-person sales presentation where its employees attempt to sell memberships in GEVC.  Generally, RVI does this in one of two ways:  (1) its own telemarketing activities[3] and (2) contracting with outside telemarketing vendors, including two Philippine-based telemarketing companies called IVT and MSI.

---

[2]  GVMC handled marketing prior to RVI.  PA 7–9 [Ex. 1.A] (Sargent Depo. at 9:21–11:8).  However, in an admitted effort to make it harder to find the correct entity to file a lawsuit against, GVMC became inactive in 2011 and RVI was formed to perform the same function.  PA 11–13 [Ex. 1.A] (Sargent Depo. at 22:11–24:2).

[3]  Plaintiff's classwide claims are *not* based on RVI's internal telemarketing.  They are based solely on the calls IVT and MSI made on Defendants' behalf.  Plaintiff's discussion of RVI's internal telemarketing activities is for background purposes only.

4

**1.      Defendants collect telephone numbers for internal telemarketing via sweepstakes, which require a telephone number to enter.**

RVI collects telephone numbers for its internal telemarketing by setting up sweepstakes kiosks at various fair and concert venues in Southern California.  *See* PA 10 [Ex. 1.A] (Sargent Depo. at 14:4–18); PA 68–69 [Ex. 1.B] (Bryson Depo. at 86:6–87:5, 87:17–24).   These kiosks include touchscreen computers that require entrants to input their personal information, such as their name, telephone number, and zip code.  Entrants must also agree to the sweepstake's "official rules," which contain microscopic language Defendants claim gives RVI prior express consent to telemarket.  *See* PA 32–36 [Ex. 1.A] (Sargent Depo. at 94:2–98:15); PA 80–85 [Ex. 1.B] (Bryson Depo. at 112:4–17:7); *see also* PA 139–48 [Ex. 2.A] (screenshots from kiosks (version one)); PA 150–57 [Ex. 2.B] (screenshots from touchscreen kiosks (version two)).

RVI then reviews the collected information and weeds out entrants who do not live in Southern California and do not meet the demographics of a typical timeshare purchaser.  The remaining numbers are then scrubbed against RVI's Internal Do Not Call List to ensure it does not re-call someone who has already asked Defendants to stop telemarketing them.  RVI does not scrub against the National Do Not Call List, nor does it perform a cell phone scrub to remove telephone numbers assigned to cell phones.  *See* PA 37–38, 46 [Ex. 1.A] (Sargent Depo. at 99:2–100:1, 133:4–15); PA 86–88, 94 [Ex. 1.B] (Bryson Depo. at 120:7–22:4, 128:2–10).

RVI currently has three call centers.  Each can accommodate between 15 to 30 telemarketers at a time.  *See* PA 26–31 [Ex. 1.A] (Sargent Depo. at 80:22–82:10, 82:25–83:9, 84:3–85:1); PA 63, 66–67 [Ex. 1.B] (Bryson Depo. at 71:3–17, 84:25–85:18). Originally, RVI's telemarketers used Polycom telephones, and were provided with paper "lead slips" with telephone numbers to call.  *See* PA 42 [Ex. 1.A] (Sargent Depo. at 112:2–15); PA 95–99 [Ex. 1.B] (Bryson Depo. at 135:23–38:4, 143:11–19); *see also* PA 159 [Ex. 2.C] (example of lead slips).  However, in 2014 RVI upgraded to Mitel telephones.  These phones have a button called "Get Next," which automatically pulls a

5

phone number from RVI's telemarketing database onto the phone.   The telemarketer then presses a button called "Dial" to call that number.  *See* PA 88–93 [Ex. 1.B] (Bryson Depo. at 122:18–27:20).

### 2. Defendants contract with IVT and MSI to make telemarketing calls on their behalf, but do not provide them with numbers to call or take any steps to ensure compliance with the TCPA.

RVI engages in external telemarketing by contracting with outside telemarketing vendors to make calls on their behalf, including IVT and MSI.  *See* PA 38 [Ex. 1.A] (Sargent Depo. at 100:7–25); *see also* PA 161–67 [Ex. 2.D] (agreement between RVI and MSI).  In order to keep track of which entity made which call, RVI requires IVT and MSI to identify themselves to potential customers using one of RVI's DBAs.   For example, IVT must identify itself as Sunset Getaways, and MSI must identify itself as Celebration Vacations.  *See* PA 22, 24–25, 43–45 [Ex. 1.A] (Sargent Depo. at 60:6–19, 78:9–79:12, 119:25–21:14); PA 70–79, 102–05 [Ex. 1.B] (Bryson Depo. at 89:18–93:7, 94:19–98:4, 176:21–77:7, 185:23–86:16).

Nevertheless, despite requiring IVT and MSI to identify themselves using RVI's DBAs, Defendants take no steps to ensure IVT and MSI comply with the TCPA.  *See* PA 49–50 [Ex. 1.A] (Sargent Depo. at 139:14–140:2); PA 108 [Ex. 1.B] (Bryson Depo. at 197:12–18).   Defendants do not provide IVT or MSI with telephone numbers to call, have no idea where they get their numbers to call, and don't know if they perform cell phone scrubs to ensure they don't call cell phones.  *See* PA 38, 40–41, 47–48 [Ex. 1.A] (Sargent Depo. at 100:2–6, 102:13–03:4, 136:11–16, 137:1–3); PA 94, 106–07 [Ex. 1.B] (Bryson Depo. at 128:11–16, 193:5–10, 193:25–94:1).   Defendants also don't know if IVT and MSI use an ATDS, nor do they prohibit them from doing so.  *See* PA 51–52 [Ex. 1.A] (Sargent Depo. at 158:24–59:13; PA 108 [Ex. 1.B] (Bryson Depo. at 197:4–18).   Concerning consent, Defendants admit they have no idea if or how IVT and MSI obtain prior express consent to cell phones.  *See* PA 106, 108 [Ex. 1.B] (Bryson Depo. at 193:13–15, 197:1–3).   In other words, Defendants allow IVT and MSI to telemarket on

6

their behalf however they want, so long as they identify themselves using one of RVI's DBAs when doing so.

Nevertheless, Defendants know that both IVT and MSI use a software program called VICIdial to place telemarketing calls on their behalf.  *See* PA 176 [Ex. 2.E] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set One at 8:19–24); *see also* PA 108–09, 114 [Ex. 1.B] (Bryson Depo. at 197:19–98:7, 240:6–14).  They also have a list of outbound telephone numbers IVT and MSI use when making these calls.  PA 178 [Ex. 2.E] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set One at 10:6–28).

## C.   Plaintiff was called on her cell phone at least three times by IVT and MSI on Defendants' behalf.

Plaintiff runs an antique and collectables business out of her home.  As part of her business, she posts numerous ads on the internet that list one or more of her cell phone numbers.  *See* PA 120–21, 129–30 [Ex. 1.C] (Del Valle Depo. at 12:24–13:7, 57:10–58:4).  Sometime prior to 2014, Plaintiff started receiving telemarketing calls from Filipino call centers asking her to attend a timeshare presentation for GEVC.  Although she eventually attended, she continued to receive telemarking calls.  Fed up, she called GEVC's headquarters in Irvine and asked them to stop calling.  Nevertheless, the calls continued.  *See* PA 122–28, 130–31 [Ex. 1.C] (Del Valle Depo. at 38:19–41:19, 47:15–49:9, 58:7–59:7).  Accordingly, Plaintiff filed this putative class action.

During discovery, Plaintiff obtained the outbound telephone numbers used by IVT and MSI when calling on  RVI's  behalf.  *See* PA 178 [Ex. 2.E] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set One at 10:6–28).  She then compared these numbers to her cell phone records to determine she was called by either IVT or MSI *at least* three times:

| Vendor | Vendor Number | P's Cell Number | Date & Time |
|--------|---------------|-----------------|-------------|
| MSI | (949) 200-5342 | (949) 439-8867 | 09/30/14 @ 7:02 p.m. |
| IVT | (909) 243-1147 | (949) 287-2405 | 12/04/14 @ 7:22 p.m. |
| MSI | (714) 912-6964 | (949) 287-2405 | 12/14/14 @ 7:58 p.m. |

7

*Compare* PA 178 [Ex. 2.E] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set One at 10:6–28), *with* PA 187–190 [Ex. 2.F] (Pl.'s Phone Records); *see also* PA 53–58 [Ex. 1.A] (Sargent Depo. at 164:13–66:19, 167:7–68:23, 169:2–10); PA 110–13 [Ex. 1.B] (Bryson Depo. at 227:16–30:22).

Additionally, Defendants identified a fourth call in their written discovery responses by stating IVT "called [Plaintiff's] 949-287-2405 [cell phone on] January 15, 2015," but claim to have "no knowledge as to what the outgoing Caller ID for this call was." PA 195 [Ex. 2.G] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set Two at 4:16–18).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 23 provides that " '[a] class action may be maintained if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b).' " *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (alteration in original) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)).

Rule 23 is not "a mere pleading standard," so establishing its requirements sometimes requires evidence, which courts must subject to a " 'rigorous analysis.' " *Wal-Mart*, 564 U.S. at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). While such rigor "may 'entail some overlap with the merits of the plaintiff's underlying claim,' " the likelihood of overlap is "no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013) (quoting *Wal-Mart*, 564 U.S. at 351). This is because "[t]he certification question is 'essentially a procedural one,' " *Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 326 (2004) (quoting *Linder*

8

*v. Thrifty Oil Co.*, 23 Cal. 4th 429, 439–40 (2000)), which examines "whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment," *id.* at 327.

Courts also "retain[ ] the flexibility to address problems with a certified class as they arise, including the ability to decertify." *United Steel Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010). Therefore, any initial " 'doubts regarding the propriety of class certification should be resolved in favor of certification.' " *Edwards v. First Am. Corp.*, 289 F.R.D. 296, 299–00 (C.D. Cal. 2012) (quoting *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007)).

**ARGUMENT**

As fully explained below, all of Rule 23(a)'s prerequisites are satisfied, and the class falls within the parameters of Rule 23(b)(3). The class should be certified.

## I.   THE RULE 23(A) PREREQUISITES ARE SATISFIED.

Rule 23(a) has four prerequisites:  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a).

### A.   The class is sufficiently numerous and ascertainable.

Numerosity is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement, the plaintiff does not need to demonstrate the exact number of class members, nor is there a particular magic number that is required. *See In re Rubber Chem. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). Nevertheless, "a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *See* 1 Newberg on Class Actions § 3:12 (5th ed. 2011). Additionally, " ' "although there is no explicit requirement concerning the class definition in [Rule] 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." ' " *Abdeljalil*, 306 F.R.D. at 305 (quoting *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679–80 (S.D. Cal. 1999)).

9

Here, Plaintiff seeks to certify the following class for both monetary and injunctive relief:

> All persons within the United States to whom [IVT] and [MSI] have placed a call to said persons' cellular telephone (without their prior express consent and not for emergency purposes) for the purpose of marketing Defendants' timeshares through the use of an [ATDS] from September 15, 2010 to the present.

First Am. Compl., ¶ 24.

This class is precisely defined, numerous,[4] and ascertainable.  As mentioned above, both IVT and MSI use a software program called VICIdial to make telemarketing calls on Defendants' behalf.  *See* PA 176 [Ex. 2.E] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set One at 8:19–24); *see also* PA 108–09, 114 [Ex. 1.B] (Bryson Depo. at 197:19–98:7, 240:6–14).  VICIdial is a predictive dialer that dials lists of telephone numbers loaded into client-specific "campaigns."  PA 227–28 [Ex. 5] (Hansen Decl., ¶¶ 18, 20).  It automatically creates a record of every call it makes, and can generate campaign reports detailing these calls.  PA 237 [Ex. 5] (Hansen Decl., ¶ 45).  As a result, both IVT and MSI can provide Defendants with a report showing every call they made on their behalf.  *Id.*  Plaintiff's expert, Jeffrey A. Hansen, can then perform a cell phone "scrub" on these reports to isolate which calls were made to cell phones, and then compare these cell phone numbers to IVT and MSI's internal lead lists to identify the names and addresses of each individual class member.  *See* PA 235–38 [Ex. 5] (Hansen Decl., ¶¶ 40–49).

---

[4]   There should be no dispute that the class is sufficiently numerous.  RVI and its vendors make more than 8,000 calls per day, *see* PA 175 [Ex. 2.E] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set One at 7:21–23), and each week IVT and MSI each send approximately 50 to 60 potential customers to RVI's showrooms, *see* PA 100–01 [Ex. 1.B] (Bryson Depo. at 168:21–69:7).  Additionally, over 110,000 individuals have complained about receiving unwanted telemarketing from RVI and its vendors.  *See* PA 183 [Ex. 2.E] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set One at 15:16–18).

Numerous courts have approved of this method for identifying the members of a TCPA class.  For example, in *Abdeljalil* the court agreed that "class membership [could] be readily determined by . . . obtaining a list of telephone numbers called by defendant during the class period" and "scrub[ing] th[at] list of telephone numbers" for cell phone numbers.  *Abdeljalil*, 306 F.R.D. at 307.  Similarly, in *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 685 n.3 (S.D. Fla. 2013), the court held the class was both numerous and ascertainable because the plaintiff's expert performed " 'a cell phone scrub' " to conclude "that more than 5,000 numbers were cell phone lines."  *See also, e.g., Thrasher v. CMRE Fin. Servs., Inc.*, No. 14-CV-1540 BEN (NLS), 2015 WL 1138469, at *2 (S.D. Cal. Mar. 13, 2015) (ordering the production of the defendant's outbound call records so the plaintiff's expert could " 'scrub' the list by comparing 'the outbound dial list to a list of known cell block identifiers [to] quickly determine how many of the numbers called [were] cell phone numbers' "); *Kristensen*, 12 F. Supp. 3d at 1303 (holding class was ascertainable because data from a cellular telephone provider's call records could "be used to identify the individual class members").

Nevertheless, Defendants may claim they are not required to obtain these VICIdial records from IVT and MSI.  While such an argument will likely fail, the class is still ascertainable, even without these records.  This is because when both IVT and MSI contact someone who is actually interested in attending one of Defendants' timeshare presentations, they send that person's contact information to Defendants so they know who to expect at their presentations.  *See PA 64–64 [Ex. 1.B] (Bryson Depo. at 80:20–81:20).*  As a result, Defendants are in direct possession of at least *some* of the class members' contact information.  Plaintiff's expert would simply need to perform a cell phone scrub on this information to isolate which individuals were called on their cell phones.  *See PA 235–38 [Ex. 5] (Hansen Decl., ¶¶ 40–49).*

Of course, this doesn't identify individuals called by IVT or MSI that *weren't* interested in attending a presentation.  But just because it will be difficult to identify each and every class member doesn't mean the class isn't ascertainable.  After all, a

class is ascertainable if it " 'identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description.' " *Knutson v. Schwan's Home Servs., Inc.*, No. 3:12-cv-0964-GPC-DHB, 2013 WL 4774763, at *5 (quoting *Thomasson v. GC Servs. Ltd. P'ship*, 275 F.R.D. 309, 313 (S.D. Cal. 2011)). Here, the class is defined to include all individuals who received a telemarketing call from IVT and/or MSI marketing Defendants' timeshares between September 15, 2010 and the present. First Am. Compl., ¶ 24. Notice will therefore include this definition, along with the outbound telephone numbers used by IVT and MSI.[5] As a result, any individual would be able to use this definition to check their cell phone records and determine whether they are part of the class.

Courts have approved of this method in other TCPA class actions. For example, in *Booth* the plaintiffs argued the class was ascertainable because members could "self-identify via affidavit or presentation of phone records from the relevant time period." *Booth*, 2016 WL 3030256 at *7. The defendants, however, argued that this " 'methodology provide[d] no suggestion of how . . . the actual claimholders . . . c[ould] be found, other than through a lengthy and cumbersome "self-certification," or by having each and every class member submit telephone records.' " *Id.* (second and third alternation in original). In agreeing with the plaintiffs, the court noted "the class

---

[5]   Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "However, individual notice is not always practical. When that is the case, publication or something similar is sufficient to provide notice to the individuals that will be bound by the judgment." *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1129 (N.D. Cal. 2015) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)); *see also Villegas v. United States*, 963 F. Supp. 2d 1145, 1152 (E.D. Wash. 2013) (notice "was mailed to all members of the class who could be identified, and it was published in print media, by radio, on the internet, and on television").

---

definition provide[d] an objective basis to identify proper claimants," which could be confirmed with "minimal individualized inquiry" such as "sworn self-identification, review of specific phone records, or another method." *Id.* at *8. The defendants could then challenge class membership by "present[ing] evidence from cellular carriers" or "examin[ing] [the cell records] and discredit[ing] [them] where possible." (*Id.*; *see also, e.g., Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 248 (N.D. Ill. 2014) (holding class was ascertainable because members could be identified by submitting "telephone records, bills, and/or recordings of the calls"). This makes sense. After all, "declining to certify a class altogether . . . would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct." *Birchmeier*, 302 F.R.D. at 250; *accord Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 393 (M.D.N.C. 2015) ("If the Court were to deny certification because Dish does not keep [accurate telemarketing records] it would create the perverse incentive for entities to keep poor records and to violate the TCPA's clear requirement that such a list be kept.").

This is the case here. Plaintiff's expert can easily ascertain the class by performing a cell phone scrub on IVT and MSI's VICIdial records. Additionally, class members can self-identify as members. Defendants cannot escape class certification just because they refuse to do anything to ensure their vendors comply with the TCPA. Ascertainability is satisfied.

## B. There are common questions that will drive the resolution of the litigation.

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This means that the class members' claims "depend upon a common contention" whose "truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Wal-Mart*, 564 U.S. at 350. "All questions of fact and law need not be common to satisfy th[is] rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts

13

coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Put differently, commonality is satisfied if an answer to a common question has the capacity to "drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotation marks omitted).  "Whether a question will drive the resolution of the litigation necessarily depends on the nature of the underlying legal claims that the class members have raised." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (citing *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014)).

Generally, the TCPA makes it unlawful to:  (1) "call[ ] a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent." *Meyer*, 707 F.3d at 1042 (citing 47 U.S.C. § 207(b)(1)).  Although the plaintiff bears the burden of proving the defendant called a cell phone using an ATDS, consent "is an affirmative defense for which the defendant bears the burden of proof." *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. App'x 598, 600 n.1 (9th Cir. 2011) (citing *In re Rules & Regulations Implementing the TCPA*, 23 FCC Rcd. 559, 565 (Jan. 4, 2008)).  Additionally, "common law principles of agency apply such that sellers like Defendant[s] who did not make calls themselves may be held liable for calls their agents make for them." *Lushe*, 2015 WL 500158 at *1 (citing *In re the Joint Pet. Filed by Dish Network, LLC, et al.*, 28 FCC Rcd. 6574, 6574 (May 9, 2013)).

Here, Plaintiff is alleging that Defendants hired IVT and MSI to telemarket cell phones using an ATDS without the recipients' prior express consent.  As a result, there are four common questions:

1.    Do IVT and MSI call cell phones?

2.    Do IVT and MSI use an ATDS?

3.    Can Defendants prove that IVT and MSI obtained prior express consent to telemarket cell phones?

4.    Are Defendants liable for the calls made by IVT and MSI on their behalf?

14

Each of these questions will drive the litigation by answering the elements of Plaintiff's TCPA claim and Defendants' affirmative defense.   Indeed, "[t]he close connection between the common questions . . . and the legal test[s] [the court] must apply to determine whether [Plaintiff] can make out a [TCPA] claim . . . means that these are precisely the kind of common questions that Rule 23(a)(2)" requires.  *Jimenez*, 765 F.3d at 1166.  Commonality is satisfied.

### C.   **Plaintiff's claims are typical of the claims and defenses of the class.**

Typicality requires "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Although the 'commonality and typicality requirements . . . tend to merge,' each factor serves a discrete purpose.   Commonality examines the relationship of facts and legal issues common to the class members, while typicality focuses on the relationship of facts and issues between the class and its representatives."  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 n.37 (9th Cir. 2010), *rev'd on other grounds*, 131 S. Ct. 2541 (2011).  In other words, typicality tests whether the other members of the class " 'have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' "  *Parsons*, 754 F.3d at 685 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiff's claims arise out of the same course of conduct—i.e., IVT and MSI's telemarketing of her cell phone using an ATDS without her prior express consent—as the absent class members.  There are also no defenses unique to Plaintiff that will be a major focus of the litigation, nor does she have any interests antagonistic to the class.  Typically is therefore satisfied.

### D.   **Both Plaintiff and her counsel are adequate.**

Adequacy of representation requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "To determine whether the representation meets this standard, [courts] ask two questions:  (1) Do the

15

representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

There is no antagonism between Plaintiff and the proposed class.  Plaintiff understands the duties of acting as a class representative, and there are no unique circumstances between Plaintiff and Defendants that destroys her ability to fairly and adequately represent the class.  *See* PA 209–10 [Ex. 3] (Del Valle Decl., ¶¶ 3–8). Plaintiff has also hired experienced counsel that will fairly, responsibly, and vigorously represent the interests of the class.  *See* PA 214–15 [Ex. 4] (Parris Decl., ¶¶ 2–7). Adequacy is satisfied.

## II.   THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED.

Since the four prerequisites of Rule 23(a) are satisfied, Plaintiff need only demonstrate that her proposed class fits into one of the three categories described in Rule 23(b).  *Bateman*, 623 F.3d at 712.  Here, Plaintiff seeks certification under (b)(3), which has two requirements:   (1) predominance and (2) superiority.  *See* Fed. R. Civ. P. 23(b)(3).  Both are satisfied.

### A.   The common questions predominate.

Predominance requires the "question of law or fact common to the class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  It focuses " 'on "the relationship between common and individual issues," ' " *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (quoting *Mevorah v. Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009)), and "tests whether [the] proposed class[ ] [is] sufficiently cohesive to warrant adjudication by representation," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  By its own terms, this does not mean a plaintiff must " 'establish that there are no individualized issues, only that the class issues predominate.' "  *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 594 (D. Or. 2013) (quoting *Phelps v. 3PD, Inc.*, 261

16

F.R.D. 548, 559 (D. Or. 2009)).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation maters omitted).  Above, Plaintiff identified four questions common to the class.  *See supra* at 14:22–27 .  As explained below, each of these common questions predominate.

### 1.  Common questions predominate on whether IVT and MSI called cell phones.

The first common question is whether IVT and MSI called cell phones.  Although it will be necessary to individually determine whether each number called by IVT and MSI was assigned to a cell phone, this issue can be effectively managed by conducting a cell phone scrub on IVT and MSI's call records as discussed above. *See supra* at 10:8–21; *see also Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 29 (2014) (" '[I]ndividual issues do not render class certification inappropriate so long as such issues may effectively be managed.' " (italics omitted) (quoting *Sav-on*, 34 Cal. 4th at 334)).  Accordingly, common questions predominate on whether IVT and MSI called cell phones.

### 2.  Common questions predominate on whether IVT and MSI use an ATDS.

The second common question is whether IVT and MSI use an ATDS.  An ATDS is "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator, and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).  The FCC has found predictive dialers to be a type of ATDS. *Meyer*, 707 F.3d at 1043 (citing *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14091, 14093 (July 3, 2003)).  "A predictive dialer is . . . hardware, when paired with certain software, [which] has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Id.* (citing *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. at 14091).

The focus is on the equipment's *capacity* to perform these functions, not whether it actually does. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009). This capacity "is not limited to [the equipment's] current configuration but also includes its potential functionalities." *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7974 (July 10, 2015). Put differently, "Congress intended a broad definition of [ATDS]" that includes equipment that has "the [functional] 'capacity' to dial random and sequential numbers, rather than the 'present ability' to do so." *Id.*

Here, both IVT and MSI use a software called VICIdial to make timeshare telemarketing calls for Defendants. *See* PA 176 [Ex. 2.E] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set One at 8:19–24); *see also* PA 108–09, 114 [Ex. 1.B] (Bryson Depo. at 197:19–98:7, 240:6–14). As a result, there are no individual issues. The common question is whether VICIdial constitutes an ATDS—i.e., whether it has the functional "capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer*, 707 F.3d at 1043 (citing *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. at 14091; *see also Kristensen*, 12 F. Supp. 3d at 1306 (finding the question of "whether the equipment used to send the text messages [was] an ATDS" common and predominant).[6]  Accordingly, common questions predominate on whether IVT and MSI use an ATDS.

### 3.   Common questions predominate on whether Defendants can prove IVT and MSI obtained prior express consent.

The third common question is whether Defendants can prove that IVT and MSI obtained prior express consent to telemarket cell phones. Prior express consent is "[c]onsent that is clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955 (alteration in original) (quoting Black's Law Dictionary 323 (8th ed. 2004)). This

---

[6]   While not necessary for certification, Mr. Hansen's declaration explains why VICIdial is a stereotypical predictive dialer that easily falls within the definition of an ATDS. *See* PA 225–35 [Ex. 5] (Hansen Decl., ¶¶ 15–39).

"means 'explicit [consent],' not, as [some defendants] seem[ ] to think, 'implicit.' [Parties are] not permitted to make an automated call to [a person's] cellular phone unless [that person] had previously said . . . something like this: 'I give you permission to use an [ATDS] to call my cellular phone.' " *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1038 (D. Minn. 2010); *see also Trasher-Lyon v. CCS Commercial, LLC*, No. 11-C-04473, 2012 WL 3835089, at *2–*3 (N.D. Ill. Sept. 4, 2012) (holding prior express consent means knowingly "consent[ing] to [receive] robocalls, not just consent to receiv[e] telephone calls"). Additionally, as of October 16, 2013, *written* prior consent is required, which is defined as a signed "written agreement authorizing delivery of advertisements or telemarketing messages by an autodialer to the signatory's telephone number." *Lennartson v. Papa Murphy's Holdings, Inc.*, No. C15-5307 RBL, 2016 WL 51747, at *1 (W.D. Wash. Jan. 5, 2016) (citing *In re Rules and Regulations Implementing the TCPA*, 27 FCC Rcd. 1830, 1838 (Feb. 15, 2012)).

"The Ninth Circuit has held that in the absence of any evidence of consent by the defendant, consent is a common issue with a common answer." *Kristensen*, 12 F.Supp.3d at 1307 (citing *Meyer*, 707 F.3d at 1036). This is because if a defendant cannot produce "evidence that any individual consented to receive the [telemarketing calls]," it "is unable to realistically argue that individual issues regarding consent outweigh commonality." *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012); *see also Stern v. DoCircle, Inc.*, No. SACV 12-2005AG (JPRx), 2014 WL 486262, at *3, *8 (C.D. Cal. Jan 29, 2014) (finding predominance because the defendant did not "present[ ] individualized evidence of consent").

For example, in *Kristensen* the defendant claimed individualized issues of consent would predominate because the telephone numbers at issue were obtained from hundreds of different websites, where consent to receive calls may or may not have been obtained. *Kristensen*, 12 F. Supp. 3d at 1307. But the court rejected this claim because the defendant (1) did not submit "any evidence of express consent" being obtained at these websites and (2) "did not appear to have a mechanism to verify" it did so. *Id.* Similarly,

19

in *Stern* the defendant claimed individual issues of consent would predominate because there were "over eighty-five websites where . . . consumers c[ould] voluntarily provide their consent to receive marketing information." *Stern*, 2014 WL 486262 at *1. But the court rejected this claim and explained that "[w]hile such [individualized] determinations would be necessary if the parties presented individualized evidence of consent," since they didn't, the court would not have to engage in individualized inquiry. *Id.* at *3. And in *Agne v. Papa John's International, Inc.*, 286 F.R.D. 559, 567 (WD. Wash. 2012), the defendants claimed individualized issues of consent would predominate "because 'the putative class members . . . had innumerable discussions with scores of different franchisee locations, during which consent to receive messages could have been obtained.' " The court disagreed, explaining that the defendants' "speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification." *Id.*

Like these three cases, Defendants have no evidence of individualized consent. For example, they have no idea where IVT and MSI get their telemarking phone numbers from. *See* PA 47–48 [Ex. 1.A] (Sargent Depo. at 136:11–16, 137:1–3). Defendants do not provide them with their touchscreen leads, *see* PA 38–41 [Ex. 1.A] (Sargent Depo. at 100:2–03:4); PA 94 [Ex. 1.B] (Bryson Depo. at 128:11–16), nor do they provide them with call lists, *see* PA 106 [Ex. 1.B] (Bryson Depo. at 193:8–10). Additionally, Defendants do not know if IVT and MSI have a method of obtaining prior express consent, *see* PA 49–50 [Ex. 1.A] (Sargent Depo. at 139:14–40:2); PA 106 [Ex. 1.B] (Bryson Depo. at 193:13–15), or if they take any steps to ensure cell phones aren't called, *see* PA 106–07 [Ex. 1.B] (Bryson Depo. at p. 193:25–194:1). Furthermore, nowhere in Defendants' standardized vendor marketing agreements do they mention the TCPA—let alone prohibit vendors from calling cell phones using an ATDS. *See generally* PA 161–67 [Ex. 2.D] (vendor agreement between RVI and MSI). Indeed, when asked to identify all forms of consent they contend IVT and MSI obtain, Defendants stated: "[D]espite a good faith effort to obtain information from third parties,

20

[we] lack any further information regarding the forms of consent obtained" by IVT and MSI.  *See* PA 175 [Ex. 2.E] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set One at 7:1–3).  In other words, Defendants "can provide no evidence of consent, [and] will probably lose on this [affirmative defense]" at trial.  *Kristensen*, 12 F. Supp. 3d at 1307.  Accordingly, the issue of "consent is a common issue with a common answer."  *Id.* (citing *Meyer*, 707 F.3d at 1036).

### 4. Common questions predominate on whether Defendants can be held liable for IVT and MSI's telemarketing.

The final common question is whether Defendants can be held liable for the calls made by IVT and MSI on their behalf.  "There is no dispute that federal common law principles of agency apply such that sellers like Defendant[s] who did not make calls themselves may be held liable for calls their agents make for them."  *Lushe*, 2015 WL 500158 at *1 (citing *In re the Joint Pet.*, 28 FCC Rcd. at 6574).  After all, "sellers are in the best position to monitor and police third-party telemarketers' compliance with the TCPA.  [Citation.]  Allowing sellers to avoid potential TCPA liability by outsourcing their telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions, particularly when the telemarketers are judgment proof, unidentifiable, or located outside the United States."  *Smith v. Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 774 (N.D. Ill. 2014) (citing *In re the Joint Pet.*, 28 FCC Rcd. at 6588); *see also Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135–38 (E.D.N.Y. 2015) (collecting cases).

There are three types of agency: actual authority, apparent authority, and ratification.  *See Kristensen*, 12 F. Supp. 3d at 1301.  " '[A]ctual authority consists of powers which a principle directly confers upon an agent, as well as those the principal causes or permits the agent to believe he or she possesses.' "  *Id.* (quoting *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167 (D. Idaho 2011).  " 'Apparent authority arises when a third party reasonably believes that the putative agent had authority to act on behalf of the principle and that belief can be traced to the

1   principal's own manifestations.' "  *Id.* (quoting *In re Fresh*, 834 F. Supp. 2d at 1167).
2   Ratification exists when the principle ratifies the acts of a third party and knowingly
3   accepts the benefits.  *Id.* (citing *In re the Joint*, 28 FCC Rcd. at 6587).  " 'A person
4   ratifies an act by (a) manifesting assent that the act shall affect the person's legal
5   relations, or (b) conduct that justifies a reasonable assumption that the person so
6   consents.' "  *Id.* (quoting Restatement (Third) of Agency, § 4.01(2) (2006)).

7        Common questions predominate for each type of agency.  For example, since
8   actual authority depends on the relationship Defendants have with IVT and MSI, the
9   fact-finder simply needs to examine these two relationships and determine whether IVT
10  and MSI "had actual authority to make the calls at issue on [Defendants'] behalf."
11  *Krakauer*, 311 F.R.D. at 395.   Apparent authority, on the other hand, "depends on
12  whether a reasonable person would believe that the [telemarketer], or the person that
13  caused the [telemarketing], had authority to act on behalf of Defendants." *Kristensen*, 12
14  F. Supp. 3d at 1306.  Here, IVT and MSI are required to identify themselves using RVI's
15  DBAs—i.e., Sunset Vacations and Celebration Vacations, respectfully—when making
16  calls on RVI's behalf.  Accordingly, the common question is whether a reasonable
17  person would believe that IVT and MSI's representation that they *were RVI* meant they
18  had authority to act on behalf of Defendants.  Additionally, "[b]ecause the inquiry is
19  limited to how a *reasonable* person would perceive [IVT and MSI's representation that
20  they were Defendants], there is no need to determine how individual class members
21  perceived the [calls]."   *Id*. (italics added).   Finally, "[r]atification depends on
22  [Defendants'] post-[call] behavior without concern for any conduct by the class
23  members." *Id.*  Therefore, the fact-finder will need to determine whether Defendants
24  ratified IVT and MSI's telemarketing by accepting the prospective customers IVT and
25  MSI sent to attend Defendants' timeshare presentations.   Accordingly, common
26  questions predominate on whether Defendants' can be held liable for IVT and MSI's
27  telemarketing.
28  / / / /

1   / / / /

2   **B.   Class treatment is superior to thousands of individual actions.**

3       Superiority requires the plaintiff to demonstrate that class treatment "is superior to

4   other available methods" of adjudication.   Fed. R. Civ. P. 23(b)(3).   A class action is

5   superior "[w]here classwide litigation of common issues will reduce litigation costs and

6   promote greater efficiency."   *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th

7   Cir. 1996).

8       In this case, "[a] class action is the most efficient vehicle to achieve an

9   opportunity for classwide recovery while minimizing the economic burden on

10   [Plaintiff's] putative class and promoting judicial economy."   *Whitaker v. Bennett Law,*

11   *PLLC*, No. 13–cv–3145–L(NLS), 2014 WL 5454398, at *7 (S.D. Cal. Oct. 27, 2014)).

12   After all, over 110,000 individuals have asked to be removed from Defendants'

13   telemarketing lists, yet no individual TCPA lawsuits have been filed.   *See* PA 183 [Ex.

14   2.E] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set One at 15:16–18).   It is

15   therefore very likely that the putative class members are unaware of their rights under

16   the TCPA.   Additionally, Defendants admitted that they use the name RVI—rather than

17   a "Global" name—to intentionally make it difficult for consumers to find the correct

18   entity to sue.   PA 11–13 [Ex. 1.A] (Sargent Depo. at 22:11–24:2).   They also require IVT

19   and MSI to identify themselves as Sunset Vacations and Celebration Vacations,

20   respectfully, making it even more difficult to pinpoint exactly who is engaging in the

21   unlawful conduct.   *See* PA 22, 24–25, 43–45 [Ex. 1.A] (Sargent Depo. at 60:6–19, 78:9–

22   79:12, 119:25–21:14); PA 70–79, 102–05 [Ex. 1.B] (Bryson Depo. at 89:18–93:7,

23   94:19–98:4, 176:21–77:7, 185:23–86:16); *see also Bee*, 310 F.R.D. at 629–30 (S.D. Cal.

24   2015) ("Defendants have allegedly concealed their role in the prohibited conduct through

25   use of nearly a dozen aliases and difficult to trace toll-free numbers.   This fact

26   scenario—one that require something beyond a basic reading of the TCPA and its

27   unsettled case law—is thus ill-suited for small claims litigation.").   "Under these

28   circumstances, $500 (or even $1,500) for each violation is unlikely to incentivize the

23

average claimant to incur the opportunity costs of time, effort, and attention to pursue [their] claim on an individual basis." *Bee*, 310 F.R.D. at 630; *accord Ikuseghan v. MultiCare Health Sys.*, No. C14–5539 BHS, 2015 WL 4600818, at *7 (W.D. Wash. July 29, 2015) (holding superiority satisfied "[b]ecause individual damages are small" and "it is unlikely that class members would litigate TCPA claims on their own").

Moreover, Plaintiff's "TCPA claims present no unique difficulties that would make a class action any less desirable than other forms of adjudication." *Whitaker*, 2014 WL 5454398 at *7.  Indeed, "[m]any courts have managed similar TCPA class actions, and the nature of a TCPA violation lends itself to classwide adjudication." *Id.*  Class treatment is therefore superior.

## CONCLUSION

As explained above, Plaintiff has satisfied the procedural requirements for certification under Federal Rule of Civil Procedure 23.  The Court should therefore grant Plaintiff's motion and certify the class.

Date:  December 7, 2016

**PARRIS LAW FIRM**

By:   /s/ *John M. Bickford*
      R. Rex Parris
      John M. Bickford

Attorneys for Plaintiff and
the Putative Class

24

## <u>CERTIFICATE OF SERVICE</u>

I, John M. Bickford, an attorney, certify that on December 8, 2016, I served the above and foregoing **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**, by causing true and accurate copies of such paper to be filed and transmitted to the persons shown below via the Court's CM/ECF electronic filing system, on this the 8th day of December 2016.

Joseph Ehrlich, Esq.
Mark R. Meyer, Esq.
**LOSCH & EHRLICH**
425 California Street, Suite 2025
San Francisco, California 94104
Telephone:  (415) 956-8400
Facsimile:   (415) 956-2150
Email: je@losch-ehrlich.com
mm@losch-ehrlich.com

/s/   *John M. Bickford*
John M. Bickford