JOSEPH EHRLICH - #84359
MARK R. MEYER - #238231
Losch & Ehrlich - Attorneys at Law
425 California Street, Suite 2025
San Francisco CA 94104
Telephone:    (415) 956-8400
Facsimile:     (415) 956-2150
Email:          je@losch-ehrlich.com
                    mm@losch-ehrlich.com

Attorneys for Defendants
Resort Vacations, Inc.;
Global Exchange Marketing Corp.;
Global Exchange Development Corp.; and
Global Exchange Vacation Club.

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DISTRICT

| | |
|---|---|
| MICHELE DEL VALLE,<br><br>                Plaintiff,<br><br>              v.<br><br>GLOBAL EXCHANGE VACATION CLUB;<br>RESORT VACATIONS, INC.;<br>GLOBAL VACATIONS MARKETING CORP.;<br>GLOBAL EXCHANGE DEVELOPMENT<br>CORP.;<br>and DOES 1 through 100, inclusive,<br><br>                Defendants. | CASE NO.<br>8:16-cv-02149-DOC-JCG<br><br>**DEFENDANTS' OPPOSITION TO<br>MOTION FOR CLASS CERTIFICATION;<br>MEMORANDUM OF POINTS AND<br>AUTHORITIES**<br><br>Date:         January 9, 2017<br>Time:        8:30 a.m.<br>Courtroom:  9C<br>Judge:       David O. Carter |

//

//

//

//

//

//

//

# TABLE OF CONTENTS

I.    Introduction ................................................................................. 8

II.   Legal Standard – Class Certification ............................................ 9

III.  Background ................................................................................. 10

      A.    Factual Background Regarding Defendants ........................... 10

            1.    Global Exchange Development Corporation developed
                  the Global Exchange Vacation Club, a timeshare
                  development. ......................................................... 10

            2.    Global Exchange Development Corporation has
                  contracted with Resort Vacations, Inc. to market its
                  interests in the owners' association ......................... 11

            3.    Resort Vacations, Inc. has entered into contracts with
                  independent companies to supply prospective
                  customers at sales presentations ........................... 11

            4.    MSI and IVT are independent companies that make
                  telephone calls related to many other businesses ....... 12

      B.    The factual and legal background regarding the elements of the
            claim alleged. ......................................................... 12

      C.    Factual and Procedural History regarding Plaintiff's action ....... 13

IV.   Argument: Class Certification should be denied because Plaintiff lacks
      standing, Plaintiff is not a member of the class, individual issues
      dominate, and other factors support denying the motion ................. 15

      A.    A class should not be certified because Plaintiff cannot
            establish she has standing at the time she filed the complaint. ... 15

      B.    Certification should be denied because Plaintiff cannot show
            she is a member of the proposed class ............................... 16

1        1.   Plaintiff has not shown that she received a phone call
2            from MSI or IVT related to Global Exchange Vacation
3            Club.................................................................................................16
4        2.   Plaintiff cannot testify as to who called her, when she
5            was called, or the content of the phone calls. .............................17
6        3.   Plaintiff did not attend a timeshare presentation for the
7            Global Exchange Vacation Club.................................................18
8     C.   A class should not be certified because Plaintiff cannot
9        establish she has standing at *any* time.......................................19
10        1.   Passage of the TCPA and the harm Congress sought to
11            address........................................................................................19
12        2.   Plaintiff does not have standing because she cannot
13            show she suffered any actual, concrete harm
14            contemplated by Congress. .........................................................20
15        3.   Plaintiff does not have standing because she cannot
16            trace any harm she may have suffered to the manner in
17            which she was called....................................................................21
18     D.   Certification should be denied because the class cannot be
19        currently and readily ascertainable based upon objective
20        criteria. ..........................................................................................22
21     E.   Certification should be denied because common factual issues
22        do not predominate. ........................................................................23
23        1.   Standing requirements will require each class member
24            to provide evidence of actual harm that is separately
25            established...................................................................................23
26        2.   The issue of apparent authority agency will require an
27            individual inquiry........................................................................24

28

3.    The issue of consent may need to be established individually based upon records located in unrelated third parties. .................................................................................26

F.    Additional factors do not favor class certification ...................................................28

1.    Plaintiff is not an adequate representative. ..................................28

2.    Class-wide resolution is not required in the interest of justice or to fulfill the goals of Congress. ....................................28

V.    Conclusion .................................................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ....... 10

*Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962) ................................................................ 16

*Byrd v. Aaron's Inc.*, 784 F. 3d 154 (3rd Cir. 2015) ......................................................... 22

*Carrera v. Bayer Corp.*, 727 F. 3d 300 (3rd Cir. 2013)...................................................... 22

*Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577 (S.D. Cal. 2013)................ 9, 27

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974)...................................................... 23

*Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970 (9th Cir. 2011) ........................................ 28

*Ewing v. SQM US, Inc.*, No. 3:16-CV-1609-CAB-JLB, 2016 WL 5846494, at *2 (S.D. Cal. Sept. 29, 2016) ................................................................................................................ 21

*Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir.2008)........................................... 9, 26

*Gomez v. Campbell-Ewald Co.* (9th Cir. 2014) 768 F.3d 871 ............................................... 13

*Halvorson v. Auto-Owners Ins. Co.*, 718 F. 3d 773 (8th Cir.2013)......................................... 24

*Harris v. Vector Marketing Corp.* (N.D. Cal. 2010) 753 F.Supp.2d 996, 1015 .......................... 28

*In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 477 (9th Cir. 2015) .......................... 26

*In Re Fresh and Process Potatoes Antitrust, Lit.*, 834 F. Supp. 2d 1141 (D. Idaho 2011) ............... 25

*In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir.2006) .............................. 22

*In re Nexium Antitrust Litigation,* 777 F. 3d 9  (1st Cir. 2015) ....................................... 24

*In re POM Wonderful LLC* (C.D. Cal., Mar. 25, 2014, No. ML 10-02199 DDP RZX) 2014 WL 1225184 ...................................................................................................... 22

*John v. Nat. Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir.2007)................................... 22

*Kamei v. Kumamoto,* 256 Cal.App.2d 381 (1967)........................................................... 15

*Kristensen v. Credit Payment Services Inc.* (D. Nev., July 20, 2015, No. 2:12-CV-00528-APG) 2015 WL 4477425 ............................................................................................. 25

*Kristensen v. Credit Payment Services*, 12 F. Supp. 3d 1292 (D. Nev. 2014) ................................ 25

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 575 (1992) ................................................. 24

*Lushe v. Verengo Inc*., No. CV 13-07632 AB RZ, 2015 WL 500158, at *5-*6 and fn. 2.(C.D. Cal. Feb. 2, 2015) .................................................................................................................. 26

*Makaron v. GE Sec. Mfg., Inc.* (C.D. Cal., May 18, 2015, No. CV-14-1274-GW AGRX) 2015 WL 3526253 ........................................................................................................................ 25

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594–95 (9th Cir. 2012) ........................................... 12

*McNamara v. City of Chicago*, 138 F.3d 1219, 1221 (7th Cir. 1998) ............................................... 21

*Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) ........... 10, 12, 27

*Mims v. Arrow Fin. Servs*., LLC, 132 S. Ct. 740, 752, 181 L. Ed. 2d 881 (2012) .......................... 29

*O'Shea v. Epson Am., Inc.,* No. CV 09-8063 PSG CWX, 2011 WL 4352458, at *8 (C.D. Cal. Sept. 19, 2011) ....................................................................................................................... 24

*Rogers v. Epson Am., Inc.*, 648 F. App'x 717, 719 (9th Cir. 2016) .................................................. 26

*Simon v. E. Kentucky Welfare Rights Org*., 426 U.S. 26, 96 (1976) ................................................ 22

*Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) ............................ 15

*Smith v. Microsoft Corp.*, 297 F.R.D. 464, 469 (S.D. Cal. 2014) ...................................................... 29

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016) .................................. 20, 21

*Supply Pro Sorbents, LLC v. Ringcentral, Inc.*, No. C 16-02113 JSW, 2016 WL 5870111, at *3 (N.D. Cal. Oct. 7, 2016) ................................................................................................... 20

*Thomas v. Taco Bell Corp.* (9th Cir. July 2, 2014) No. 12-56458, 2014 WL 2959160 .......... 13, 25, 26

*Thomas v. Taco Bell Corp.* (C.D. Cal. 2012) 879 F. Supp. 2d 1079 .................................................. 13

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) ......................................... 10, 29

*Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)......... 10

*Webb v. Carter's Inc.*, 272 F.R.D. 489, 497–98 (C.D. Cal. 2011) ..................................................... 24

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D.Cal.2011) ......................................................... 9

**Statutes**

47 U.S.C. 227(b)(1)(iii) ........................................................................................................... 8, 19, 20

**Other Authorities**

2A C.J.S. Agency § 391 .................................................................................................................... 26

Restatement (Second) of Agency § 262 & cmt. a (1958) .................................................................. 26

Restatement (Third) Agency § 2.03 & cmts. c, d ................................................................ 26

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket,

No. 92-90, Report and Order, 7 FCC Rcd 8752 .......................................................... 20

**Rules**

Rule 23 ............................................................................................................ 8, 9, 10

## OPPOSITION MEMORANDUM

## I.     Introduction

Plaintiff received three calls from non-parties InterVoice Technologies ("IVT") and Marketing Solutions International ("MSI") to her cell phones.  IVT and MSI make marketing calls related to numerous businesses in several different industries.

Plaintiff alleges the calls she received were made in violation of 47 U.S.C. 227(b)(1)(iii), part of the Telephone Consumer Protection Act ("TCPA"), because they were made without her consent using an automatic telephone dialing system.

Plaintiff asserts that the named defendants—Resort Vacations, Inc.; Global Exchange Marketing Corp.; Global Exchange Development Corp.; and Global Exchange Vacation Club—are responsible for the three calls she received because IVT and MSI called as agents of Defendants.

Plaintiff seeks class certification under Rule 23(a) and 23(b)(3) for all persons called by IVT or MSI in connection with marketing of membership in the Global Exchange Vacation Club.  The motion should be denied.

Plaintiff has not affirmatively demonstrated compliance with the requirements of Rule 23(a) and 23(b)(3):

(A) Plaintiff cannot show she had standing when she commenced this action.  Plaintiff received three calls from IVT and MSI—*after* she filed suit—but Plaintiff has not shown, and cannot show any relevant calls before suit was filed.

(B) Plaintiff is not a member of the proposed class.  Plaintiff cannot show any of the three calls from IVT and MSI (even those made after suit was filed) were made in connection with the Global Exchange Vacation Club.  The evidence indicates they were made in connection with a different company.

(C) Plaintiff cannot show she would have standing today.  A bare violation of TCPA cannot create standing.  Congress was concerned with automatically dialed calls that would be charged to cell phone customers.  Plaintiff has not shown any harm that Congress was concerned about with automatically dialed calls or that Plaintiff would be any better off had the calls been made using a different phone system.

(D) Plaintiff cannot show the class is ascertainable.  Plaintiff's expert speculates records are available, but speculation is not evidence.  MSI and IVT say otherwise.  After two years, Plaintiff should not be given the benefit of the doubt.

(E) Resolution of this action will require individual inquiries with each class member, including whether the class member suffered a cognizable harm, whether the class member consented, and the specific facts of each call justifying application of "apparent agency" to hold the defendant liable.

(F) Additional factors counsel against certification of a class, including Plaintiff's lack of credibility and congressional intent that a $500 per call penalty be sufficient incentive for those harmed by calls to bring individual actions.

Most fundamentally, Plaintiff has not and cannot show that she received a call from either IVT or MSI in any way connected with the defendants.

## II.   Legal Standard – Class Certification

Under Rule 23(a), four prerequisites must be satisfied for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed.R.Civ.P. 23(a).

As a threshold matter "apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists."  *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D.Cal.2011).

A plaintiff also must satisfy one or more of the separate prerequisites set forth in Rule 23(b).  Plaintiff moves for certification under Rule 23(b)(3), which also requires that common questions of law or fact predominate and that the class action is superior to other available methods of adjudication.

In this motion, the Rule 23(a) commonality requirement is subsumed in the "far more demanding" predominance inquiry of Rule 23(b)(3).  See, *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577 (S.D. Cal. 2013), citing *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318,

326 (5th Cir.2008) and *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Plaintiff has the burden of meeting the threshold requirements.  *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012).

"What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016), quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).  Merits questions at the class certification stage only to the extent they are relevant to whether Rule 23 requirements have been met.  *Id.*

## III.   Background

### A.   Factual Background Regarding Defendants

#### 1.   Global Exchange Development Corporation developed the Global Exchange Vacation Club, a timeshare development.

Most people cannot afford a vacation home.  Timeshare allows consumers to own and use vacation property for one or two weeks a year, at a price they can afford.

The Global Exchange Development Corporation is a timeshare developer.  Sargent Dec. ¶¶ 9-13.  It purchased various vacation resort properties and dedicated the properties to a timeshare owners association, the Global Exchange Vacation Club.  *Id.*

Global Exchange Vacation Club owns and holds the resort properties for its members. Sargent Dec. ¶¶ 2-8.  The Global Exchange Vacation Club is responsible for managing the properties for the members.  *Id.*  The organization operates through an elected board that collects fees from the members and uses the fees to pay for management services for the resort properties.  *Id.*

Each member has a number of "points," which they can then use to stay at the association's resort properties.  Members can sell their membership and the points.  *Id.*

Initially, the Global Exchange Development Corporation owned all of the membership interests in the Global Exchange Vacation Club.  Global Exchange Development Corporation is in the process of selling its membership interests.  Sargent Dec., ¶¶ 9-41.

1        Thus, the process is substantially the same as a condominium developer which constructs a

2    building, creates a homeowners association, and then sells the condominium units to individuals.  As

3    the units are sold, the owners elect their HOA board, pay fees, and arrange for management and

4    maintenance.

5        **2.**    **Global Exchange Development Corporation has contracted with**

6            **Resort Vacations, Inc. to market its interests in the owners'**

7            **association.**

8        Global Exchange Development Corporation has contracted with Defendant Resort Vacations,

9    Inc. dba Travel Media to sell its interests in the Global Exchange Vacation Club.  Sargent Dec. ¶¶

10   14-19.  Resort Vacations, Inc. is a successor to Defendant Global Exchange Marketing Corp.

11       Resort Vacations, Inc. sells the development corporation's interests in-person through a 90

12   minute sales presentation.  The salespersons provide prospective members with information

13   regarding the benefits of becoming members and the opportunity to buy membership.  Sargent Dec.

14   ¶¶ 20-23.

15       In order to schedule people to attend the presentations, RVI calls prospective customers.

16   RVI obtains contact information, including phone numbers, in-person through raffles or give-a-ways

17   at public events.  During this process, RVI asks for information regarding the customer and obtains

18   consent to call each person.  Sargent Dec. ¶¶ 24-26.

19       RVI employees initiate calls separately and do not use an automatic or predictive dialer.

20   Calls made by RVI are not at issue in this action.

21       **3.**    **Resort Vacations, Inc. has entered into contracts with independent**

22           **companies to supply prospective customers at sales presentations.**

23       RVI also contracts with several different independent companies to schedule individuals to

24   attend sales presentations.  RVI pays contractors for each qualified person they arrange to attend a

25   presentation.  Sargent Dec. ¶ 27.

26       Some contractors make phone calls to schedule tours with prospective customers.  Other

27   contractors attempt to schedule tours in-person at public events.  For example, a contractor may set

28   up a booth at a fair and convince people who enjoy travel and vacation that learning about becoming

a member of the Global Exchange Vacation Club may be worth their time.  Sargent Dec. ¶¶ 27-31.

RVI does not direct any contractors as to whether they should call people, or talk to them in-person.  RVI does not direct contractors on who they should call, or what equipment to use.  RVI does not allow or authorize contractors to use the trade name that RVI uses when it makes calls (Travel Media).  Sargent Dec. ¶¶ 31-37.

### 4.   MSI and IVT are independent companies that make telephone calls related to many other businesses.

Two contractors that RVI has worked with are InterVoice Technologies (IVT) and Marketing Solutions (MSI).  These contractors are independent companies that are not under the control and direction of RVI.  Sargent Dec. ¶¶ 38-41; Dec. re: MSI; Dec. re: IVT.

These contractors are known to make phone calls related to many different companies including, but not limited to, RVI and other timeshare businesses.  MSI and IVT make phone calls for many other companies, including other timeshare companies.  A majority of the calls these companies make do not have anything to do with the defendants.  *Ibid*.

RVI asked MSI and IVT to use a unique name when making any phone calls, "Sunset Getaways" and "Celebration Vacations."  Sargent Dec. ¶ 40.  These are names that are not used by any of the defendants or any other contractor.  Using these names allows RVI to track the source of prospective customers or complaints.

### B.   The factual and legal background regarding the elements of the claim alleged.

First, in order to establish any claim in federal court, each plaintiff must have standing. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594–95 (9th Cir. 2012).  Plaintiff must have (1) suffered an injury in fact that is (2) fairly traceable to the challenged conduct and (3) likely to be redressed by a favorable decision.  *Id*.  And, ultimately, to provide a damage award to each class member, the member must show standing as well.

Second, in order to establish a claim under Section 227(b)(1)(A)(iii) of the TCPA, each plaintiff must prove that: (1) defendant called plaintiff at their cellular telephone number, (2) using an automatic dialer, (3) without consent.  See 47 U.S.C. § 227(b)(1)(A)(iii); *Meyer v. Portfolio*

*Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

In this case, Plaintiff does not allege the named defendants called her.  Plaintiff asserts Defendants are responsible for calls from IVT and MSI.

Under the TCPA, each defendant may only be held liable for its own conduct, or the conduct of its *agents*.  *Gomez v. Campbell-Ewald Co.* 768 F.3d 871, 877-79 (9th Cir. 2014) ["a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller"].

To demonstrate an agency relationship, a plaintiff may establish actual agency by showing the defendant controlled, directed, or supervised the manner and means in which IVT and MSI made phone calls—passive permission is not enough.  *Thomas v. Taco Bell Corp.* 879 F. Supp. 2d 1079, 1084-85 (C.D. Cal. 2012).  Knowledge, approval, and fund administration do not amount to creating an actual principal-agent relationship.  *Id.* at 1086.

A plaintiff may establish agency liability based upon "apparent authority."  A plaintiff must prove a defendant said or did something to make the plaintiff *believe* IVT or MSI was acting as an agent of a defendant.  *Thomas v. Taco Bell Corp.* No. 12-56458, 2014 WL 2959160, at *2 (9th Cir. July 2, 2014).

Thus, in this action, each class member must prove:

(1) IVT or MSI called the class member's cellular phone, and

(2) For each call received, IVT or MSI was

(a) an actual agent of a defendant at the time of the call, or

(b) appeared to be an agent of a defendant at the time of the call, and

(3) each call was made using an ATDS, and

(4) each call was made without consent.

See 47 U.S.C. § 227(b)(1)(A)(iii); *Gomez v. Campbell-Ewald Co.* 768 F.3d 871, 877-79 (9th Cir. 2014).

**C.    Factual and procedural history regarding Plaintiff's action.**

Prior to filing her complaint, Plaintiff received annoying phone calls asking her to attend a timeshare presentation.  Meyer Dec., Ex. C, 38:9-39:11, 47:21-48:4.  Plaintiff went to a presentation

in Ontario, California to ask for the calls to stop.  *Id*. at 41:8-9, 49:21-50:2.  They did not.  *Id*. at 50:24-51:8, 52:5-8.  She called someone in Irvine to have the calls stop.  *Id*. at 52:17-53:25, 42:9-12, 39:12-18.  She then contacted her present attorney.  *Id*. at 67:9-17.

While Plaintiff's testimony was vague and incomplete as to when she was called, she mentioned writing a Yelp! review at about the time.  *Id*. at 65:14-24.  In May 2014, Plaintiff wrote Yelp! reviews in which she complained about calls from "Great Destinations."  Meyer Dec. Ex. F

Plaintiff has no records of attending a timeshare presentation related to Global Exchange Vacation Club.  Resort Vacations, Inc. has no record that Plaintiff attended a presentation.  Sargent Dec. ¶¶ 42-51.

On September 15, 2014, Plaintiff filed the Complaint in the Superior Court against Global Exchange Vacation Club.  Dkt. 1-6.

After filing the Complaint, on September 30, December 4, and December 12, 2014, Plaintiff received two calls from MSI and one call from IVT.  The calls were either not answered or lasted one minute or less.  Pltf's Evid. p. 187-189; Dec. re: MSI; Dec. re: IVT.  There is no way to know whether the calls made were related to Global Exchange Vacation Club or another business other than based upon what was said during the calls.  *Id*.

On January 18, 2015, Plaintiff wrote another Yelp! review complaining about calls from Great Destinations located in Ontario, California.  Meyer Dec. Ex. F.

On February 6, 2015, Plaintiff filed an almost identical TCPA complaint against a different timeshare business, "Great Destinations, Inc."  Meyer Dec. Ex. D.  Among the calls Plaintiff claimed were made by Great Destinations was a call she received from MSI.  Meyer Dec. Ex. E.  Plaintiff settled with Great Destinations in a confidential settlement agreement.

Two years later, on September 21, 2016, Plaintiff filed a motion for leave to amend the complaint and add the removing defendants.  On October 28, 2016, the motion was granted.

//

//

//

//

On December 2, 2016, Defendants removed the action to federal court.  On December 8, 2016, Plaintiff filed the motion for class certification seeking to define a class as:

> All persons within the United States to whom InterVoice Technologies and Marketing Solutions International have placed a call to said persons' cellular telephone (without their prior express consent and not for emergency purposes) for the purpose of marketing Defendants' timeshares through the use of an automatic telephone dialing system from September 15, 2010 to the present.

First Amended Complaint, ¶ 24.

## IV.   Argument: Class Certification should be denied because Plaintiff lacks standing, Plaintiff is not a member of the class, individual issues dominate, and other factors support denying the motion.

### A.   A class should not be certified because Plaintiff cannot establish she has standing at the time she filed the complaint.

The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint.  *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007).

Plaintiff filed her complaint on September 15, 2014.  In her motion for class certification, she claims she received the three offending calls on September 30, 2014, December 4, 2014, and December 12, 2014.  Ptlf.'s Mem. ISO Mtn. Class Cert., p. 7:24-28.

Plaintiff *speculates* that she may have received other calls from IVT or MSI before the complaint was filed.  Speculation is not evidence.  Speculation is particularly inappropriate where Plaintiff has had *two years* to investigate and propound discovery.

Because there are many companies that make phone calls related to multiple timeshare businesses, it is impossible to show that IVT or MSI are responsible for any calls made prior to the complaint being filed.  Likewise, Plaintiff cannot show any calls made prior to the complaint being filed had anything to do with Global Exchange Vacation Club, rather than Great Destinations or some other timeshare travel club.

Under California law and the Federal Rules, amendments are distinct from supplemental complaints.  See *Kamei v. Kumamoto,* 256 Cal.App.2d 381, 385 (1967) ("whether original or amended" the complaint "can properly speak only of things which occurred either before or

concurrently with the *commencement of the action*"); compare FRCP 15(a) with FRCP 15(d).

Plaintiff's filing of an amended complaint does not change the requirement that standing must exist and be evaluated at the time the complaint was filed. Limiting standing to the time of filing is also supported by public policy. Courts should not encourage the plaintiff's bar to initiate suits with the hope that some harm will later be found. And Plaintiff should not be able to exploit a pre-mature filing date to extend the statute of limitations on class claims.

**B.    Certification should be denied because Plaintiff cannot show she is a member of the proposed class.**

**1.    Plaintiff has not shown that she received a phone call from MSI or IVT related to Global Exchange Vacation Club.**

A plaintiff cannot represent a class of whom they are not a part. *Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962).

The proposed class is: persons called on their cell phones by IVT and MSI for the purposes of scheduling a sales presentation for membership in Global Exchange Vacation Club. In addition to not having been called by MSI or IVT prior to filing the complaint, Plaintiff has not shown she was ever called by MSI or IVT *in connection with* marketing of the Global Exchange Vacation Club. Thus, she is not a member of the class.

Plaintiff received three calls from IVT and MSI, but Plaintiff cannot show *these three calls* were made for purposes of marketing membership in Global Exchange Vacation Club. See Dec. re: MSI and Dec. re: IVT.

Plaintiff testified she received many annoying calls, but she *cannot* show that any annoying calls came from MSI and IVT, or that these calls were related to *Global Exchange Vacation Club*. Rather, Plaintiff vaguely testified about receiving many annoying calls *before* she retained counsel, not after filing suit.

In order to show she is a member of the class, Plaintiff must show that the *specific calls* she received from MSI and IVT were actually *related to* Global Exchange Vacation Club.

This is not a case where every marketing call MSI or IVT makes relates to Global Exchange Vacation Club. To the contrary, most calls MSI and IVT make are not related to Global Exchange

Vacation Club and are likely related to different timeshare businesses that have a similar marketing model.

Instead, the evidence suggests that Plaintiff did not receive any calls from MSI or IVT related to Global Exchange Vacation Club, but actually received calls related to another timeshare business.

### 2.   Plaintiff cannot testify as to who called her, when she was called, or the content of the phone calls.

Plaintiff's testimony is vague and uncertain regarding who called her, when, and what they actually said.  Meyer Dec., Ex. C, Del Valle Depo. p. 36:6-17 [cannot recall any phone calls], p. 39:2-8 ["I don't remember if they told me" where they were "calling from"], p. 38:10-40:6 [called from timeshare and went to presentation, did online research to find company], p. 41:2-13 [does not recall name or time of attending a timeshare presentation], p. 42:9-12 [does not recall name of anyone]; 46:22-47:1-5 [not sure of name of company], p. 41:10-13 [does not recall when she went to presentation].  She often just hung up the phone.  Meyer Dec., Ex. A, Pltf. Resp. to SI, Set One, No. 7.

Plaintiff testified she received many phone calls before filing suit.  But she could not identify a single call from MSI or IVT before she filed the action.  See Meyer Dec., Ex. C, Del Valle Depo. p. 48:2-4 [calls should be in phone records]; 50:6-51:8 [received many phone calls].

MSI and IVT use specific names when calling in relation to Global Exchange Vacation Club—"Sunset Getaways" and "Celebration Vacations."  Plaintiff has never mentioned these names in written discovery or at her deposition.

Plaintiff is unable to provide *any* information that would distinguish (a) calls she received from MSI or IVT from (b) calls made by another person.  And Plaintiff is unable to provide any information distinguishing calls (a) related to Global Exchange Vacation Club from (b) calls related to another business.

To establish she is a member of the class, Plaintiff must show the specific calls she received from IVT and MSI were actually related to Global Exchange Vacation Club.  She cannot.

It is not enough to show (a) she was called by IVT and MSI and also that (b) she was called related to Global Exchange Vacation Club.  The calls must be *the same calls*.

MSI and IVT make calls related to *many other businesses*.  Most of the calls they make are not related to the Global Exchange Vacation Club.  Plaintiff asks the court to speculate and guess that the calls from MSI or IVT are related to Global Exchange Vacation Club.

### 3.    Plaintiff did not attend a timeshare presentation for the Global Exchange Vacation Club.

Plaintiff testified that, sometime in 2014, she received numerous calls over a period of a couple of days.  Then, in response to the calls, she agreed to attend a timeshare presentation.  Meyer Dec., Ex. C, Del Valle Depo. p. 38:20-40:20.  Her intent was simply to get the calls to stop.  *Id*.  She does not remember much, but she *clearly* recalls driving to the sales center in **Ontario, California in 2014**.  Meyer Dec., Ex. C, Del Valle Depo. p. 68:14-19 [plaintiff is "very sure" she attended a presentation in Ontario, California].

She then told the salesperson that she did not want to receive any more phone calls.  She cannot recall when, but she subsequently received additional phone calls.  She testified that she contacted the headquarters "in Irvine" to ask for the calls to stop.

Plaintiff received documents that could have shown where she went, but she lost or destroyed the evidence.  Meyer Dec., Ex. C, Del Valle Depo. p. 45:1-12; 46:14-21; 41:14-42:3; 60:3-22.

But Plaintiff was confused and mistaken.  Plaintiff never attended a sales presentation related to Global Exchange Vacation Club.  In 2014, Resort Vacation, Inc. did not have a sales center in Ontario, California.  Sargent Dec. [RVI did not have a sales center in Ontario, California]; Meyer Dec. Ex. B, Bryson Depo. pp. 141:21-142:6, 174:10-11.

There are *no records* of Plaintiff ever attending a presentation related to Global Exchange Vacation Club.  In fact, Plaintiff destroyed any records she may have had.  Meyer Dec., Ex. C, 45:1-12; 46:14-21; 41:14-42:3; 60:3-22; 68:14-19.

In February 2015, Plaintiff filed a lawsuit against a different timeshare business operating in Southern California known as "Great Destinations, Inc."  Plaintiff accused Great Destinations of making some of the *same phone calls that* she claims Global Exchange Vacation Club is responsible for.  Meyer Dec., Ex. D, Ex. E [letter dated February 26, 2015 identifying phone calls from Great Destinations]; Meyer Dec., Ex. A, Pltf. Resp. to SI, Set One, Nos. 1-3 [identifying phone calls

1   allegedly].

2       Plaintiff testified she submitted on-line Yelp! reviews related to receiving phone calls.

3   Meyer Dec., Ex. C, Del Valle Depo. p. 61:15-62:5.  She testified she called a supervisor in Irvine to

4   take herself off the call list but continued to receive calls.  Meyer Dec., Ex. C, Del Valle Depo. p.

5   38:20-40:20.  But Plaintiff's on-line reviews show that she was actually contacting Great

6   Destinations and that she had called Great Destination's Irvine office to complain.  Meyer Dec., Ex.

7   C, Del Valle Depo. p. 61:15-62:5; Ex. F.  Plaintiff has no credible evidence she has had any

8   involvement with the defendants in this action other than filing this lawsuit.

9       Even if Plaintiff did go to an RVI presentation for Global Exchange Vacation Club, it would

10  not matter unless Plaintiff could show that the calls she received *came from MSI or IVT*.  Plaintiff

11  has no evidence this is the case.

12      **C.    A class should not be certified because Plaintiff cannot establish she has**

13          **standing at *any* time.**

14          **1.    Passage of the TCPA and the harm Congress sought to address.**

15      In the 1980s, equipment became available to automatically generate and dial thousands of

16  random or sequential numbers, and the ability to call with pre-recorded messages.

17      Automatically dialed calls could tie-up multiple emergency phone lines, or result in calls to

18  cellular phone numbers, which require the recipient to pay high per-minute charges.

19      In 1991, Congress enacted the Telephone Consumer Protection Act (TCPA).  The TCPA

20  prohibited making any call using "using any automatic telephone dialing system or an artificial or

21  prerecorded voice" to make a call to (i) emergency numbers, (ii) health care patients, and (iii)

22  cellular phones or any service where the party called is charged.  47 U.S.C. 227(b)(1)(A).

23      The TCPA prohibits "using an artificial or prerecorded voice" to "any residential telephone

24  line." 47 U.S.C. 227(b)(1)(B).  (Calls using an automatic dialer to a residential line are not

25  prohibited.)  These prohibitions were not limited to marketing calls.

26      The TCPA provides a separate national "do-not-call" database for anyone who does not wish

27  to receive telemarketing calls.

28      As noted, the TCPA treats residential phones and cellular phones differently.  The TCPA

prohibits pre-recorded or artificial voice calls ("robocalls") to residential phones and cellular phones. The TCPA prohibits using automatic dialing systems to call cellular phones. The reason why is that the TCPA sought to protect cellular phone users from additional charges. See 47 U.S.C. 227(b)(1)(A)(iii). It was not to provide greater solicitude from telemarketing.

Put another way, Congress addressed "annoying" calls through prohibitions on "robo-calls" and the do-not-call registry, not by prohibiting the use of automatic dialing systems.

In 1992, the FCC addressed requests for exemption from telephone service carriers that may call their own customers and did not charge the customers. The FCC concluded the plain language of the statute  was "that the TCPA did not intend to prohibit autodialer or prerecorded message calls to cellular customers for which the called party is not charged" from the cellular service provider. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket, No. 92-90, Report and Order, 7 FCC Rcd 8752, ¶ 43-45. <https://transition.fcc.gov/Bureaus/Common_Carrier/Orders/1994/fcc92443.txt>  In contrast, calls by market research firms were prohibited because they might result in charges. *Id.*

### 2.   Plaintiff does not have standing because she cannot show she suffered any actual, concrete harm contemplated by Congress.

In order to have standing to allege a violation of this provision of the TCPA, a plaintiff must allege more than a mere statutory violation. *Spokeo*, 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation"). There must be "real harm." *Supply Pro Sorbents, LLC v. Ringcentral, Inc.*, No. C 16-02113 JSW, 2016 WL 5870111, at *3 (N.D. Cal. Oct. 7, 2016).

When evaluating issues of standing based upon a call to a cellular phone using an automatic dialer, the "concrete" harm that Congress was concerned about was suffering out-of-pocket charges. The TCPA prohibits several different activities, but with respect to the provision at issue in this case, 47 U.S.C. 277(b)(1), Congress was concerned with indiscriminate calling that would tie-up emergency phone systems and cost cellular phone users out-of-pocket expenses.

To be clear, Defendants do *not* argue that the TCPA only prohibits calls that result in charges. Cf. *Gutierrez v. Barclays Grp.,* No. 10CV1012 DMS BGS, 2011 WL 579238, at *6 (S.D.

Cal. Feb. 9, 2011).  Rather, for standing purposes, the Plaintiff must show *some harm* that Congress was actually attempting to address in 47 U.S.C. 277(b)(1)(A)(iii).

Here, Plaintiff's claim rests on a "bare procedural violation" "divorced" from the "concrete harm" contemplated by Congress.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016).

Plaintiff has not established any other cognizable, concrete harm.  Plaintiff asserts she received three phone calls from MSI or IVT—calls that may not even have been answered.

Congress was concerned about cell phone charges.  Congress was also concerned about annoying robocalls, or calls that tie up phone lines.  But, Plaintiff cannot say if these three phone calls caused her any harm.  Plaintiff cannot say she even knew about the calls when they were made. As noted above, Plaintiff cannot even say these calls were related to Global Exchange Vacation Club.

Because Plaintiff cannot show that MSI or IVT harmed Plaintiff in any concrete way contemplated by Congress, she does not have standing.

### 3. Plaintiff does not have standing because she cannot trace any harm she may have suffered to the manner in which she was called.

Even if Plaintiff could show cognizable harm, Plaintiff cannot show her harm is *traceable* to the statutory violation at issue.  See *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549–50 (2016).

In *Ewing v. SQM US, Inc.*, No. 3:16-CV-1609-CAB-JLB, 2016 WL 5846494, at *2 (S.D. Cal. Sept. 29, 2016), the court concluded "Plaintiff does not, and cannot, allege that Defendants' use of an ATDS to dial his number caused him to incur a charge that he would not have incurred had Defendants manually dialed his number, which would not have violated the TCPA. Therefore, Plaintiff did not suffer an injury in fact traceable to Defendants' violation of the TCPA and lacks standing to make a claim for the TCPA violation here."

"'A plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court.' *McNamara v. City of Chicago*, 138

1  F.3d 1219, 1221 (7th Cir. 1998)." *Id.*

2  In *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 96 (1976), plaintiffs were denied

3  medical treatment from hospitals.  They asserted they could not receive treatment because the IRS

4  issued a ruling (wrongfully) allowing favorable tax treatment to hospitals that provided emergency

5  services for those unable to pay, but did not provide other services to the indigent.  The Court held

6  that the plaintiffs were unable to show standing because the injury—denial of treatment—could not

7  be traced to the IRS taxation ruling.  It was speculative to conclude the hospitals' non-emergency

8  admission policies would be different if the tax ruling was changed.  *Id.* at 44-45.

9  Similarly, Plaintiff cannot show harm traceable to the use of an automated dialing system.

10  There is no reason to believe that IVT and MSI would not have called Plaintiff three times if they

11  were using a different phone system, or that Plaintiff would cease to receive any phone calls from

12  IVT or MSI if they changed their phone system.

13  **D.    Certification should be denied because the class cannot be currently and**

14  **readily ascertainable based upon objective criteria.**

15  The class must be currently and readily ascertainable based on objective criteria.  *John v.*

16  *Nat. Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir.2007); *In re Initial Pub. Offerings Sec. Litig.*,

17  471 F.3d 24, 30 (2d Cir.2006).  The ascertainability inquiry requires "a reliable and administratively

18  feasible mechanism for determining whether putative class members fall within the class definition."

19  *Byrd v. Aaron's Inc.*, 784 F. 3d 154 (3rd Cir. 2015).  "This is not to say that the identities of class

20  members must be known at this stage, but rather that there must be some administratively

21  manageable method of determining whether a person is a class member."  *In re POM Wonderful*

22  *LLC* (C.D. Cal., Mar. 25, 2014, No. ML 10-02199 DDP RZX) 2014 WL 1225184, at *5.

23  As set forth in the declaration from MSI and IVT, these companies do not track telephone

24  calls in a manner that lets them know which calls are related to RVI and Global Exchange Vacation

25  Club.

26  Contrary to the speculative declaration submitted by the plaintiff's bar expert, MSI and IVT

27  are not able to obtain this information.  Even if the plaintiff's declaration was not contradicted by

28  MSI and IVT, speculation as to what records might show do not meet Plaintiff's burden.  *Carrera v.*

*Bayer Corp.*, 727 F. 3d 300 (3rd Cir. 2013). Speculation is particularly inappropriate where Plaintiff has had *two years* to investigate whether MSI and IVT's phone systems and records *actually* have the ability to produce relevant reports rather than merely have the *potential* to produce these reports.

Thus, the only way to establish whether a call from MSI and IVT was related to RVI and Global Exchange Vacation Club—as required by the class definition—would be to have *every single person* called by MSI and IVT *separately testify* as to the specific content of the phone calls. Specifically, each potential member would need to recall whether "Sunset Getaways" or "Celebration Vacations" were mentioned on each.[1]

Because calls related to Global Exchange Vacation Club make up a minority of their business, this would require contacting and testimony from far more people that are within the class. Without the ability to ascertain the class, it will be impossible to provide adequate notice to satisfy due process considerations regarding resolution of non-present class members. See *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974).

The class is not currently and readily ascertainable and makes class treatment inappropriate.

**E.     Certification should be denied because common factual issues do not predominate.**

Based upon the factual background, and the relevant TCPA standards, the issues that will drive resolution of this litigation are: (1) whether any calls caused *actual harm* to Plaintiff or another class member to establish standing, (2) whether IVT or MSI called Plaintiff or class members *in connection with Global Exchange Vacation Club*, (3) whether IVT or MSI were acting as the *apparent agents* of a defendant, and (4) whether any class members provided consent to be called.

**1.     Standing requirements will require each class member to provide evidence of actual harm that is separately established.**

---

[1]  While MSI and IVT are largely treated together in this motion, there would also need to be subclasses as to each in order to allocate damages between them and address any distinct application of agency law.

Assuming Plaintiff has standing, eventually the absent class members will need to satisfy standing requirements in order to obtain the relief sought in this action. *O'Shea v. Epson Am., Inc.,* No. CV 09-8063 PSG CWX, 2011 WL 4352458, at *8 (C.D. Cal. Sept. 19, 2011); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 497–98 (C.D. Cal. 2011); see also *In re Nexium Antitrust Litigation,* 777 F. 3d 9, 32 (1st Cir. 2015) ("only injured class members will recover"); *Halvorson v. Auto-Owners Ins. Co.*, 718 F. 3d 773 (8th Cir.2013).

The requirement of standing applies to each person who seeks "to invoke the judicial power." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 575 (1992). In this case, Plaintiff seeks to certify a class in which each member would necessarily invoke the judicial power of this court to obtain a payment of $500 per phone received. Arguably, class members might not need standing where Plaintiff only seeks injunction relief for their benefit, but individuals must invoke federal judicial power to obtain money judgments against the defendants.

Accordingly, the arguments above addressing Plaintiff's standing come into play with respect to each class member. Thus—even though the TCPA does not require injury—a standing analysis will require individual treatment and testimony regarding whether each class member actually suffered from any cognizable harm. For example, if a class member received a phone call while the phone was on silent and no charges were applied, there can hardly be a claim of harm.

The individual issues overwhelm any common issues to be litigated.

## 2. The issue of apparent authority agency will require an individual inquiry.

This case depends upon the named defendants being responsible for calls made by IVT and MSI. In order for there to be liability, there must be a finding that IVT and MSI were acting as *agents* each time they made a phone call. It is not enough that the calls are related to Global Exchange Vacation Club or that the defendants are responsible in some moral sense; there must be an *agency relationship* to impose the out-sized and harsh $500 per call penalty on a defendant.

Plaintiff's only evidence of agency is that IVT and MSI use "dba" names provided by Defendant Resort Vacations, Inc. Thus, Plaintiff's case will likely depend upon a finding that the named defendants are responsible under principals of "apparent authority." Pltf. Mem. in Supp. p.

21:27-22:28; see *Kristensen v. Credit Payment Services Inc.* (D. Nev., July 20, 2015, No. 2:12-CV-00528-APG) 2015 WL 4477425, at *5 [purchasing leads from a contractor is not enough to establish agency]; *Makaron v. GE Sec. Mfg., Inc.* (C.D. Cal., May 18, 2015, No. CV-14-1274-GW AGRX) 2015 WL 3526253, at *7 [use of name not sufficient for actual agency].

Apparent authority depends upon the *representations* made to the plaintiff and the plaintiff's *reliance*. (See, *Thomas v. Taco Bell Corp.* (9th Cir. July 2, 2014) No. 12-56458, 2014 WL 2959160, at *2.)

To establish the representations in question, each *individual class member* would be required to provide evidence as to "apparent agency." Each member will need to testify as to the content of the calls.

To establish the representations in question, each *individual class member* would be required to provide evidence as to their *reliance* on the representations.

This action can be contrasted with cases involving mass text messages, fax messages, or robo-calls. In those situations, the actual substance of each representation to a class member is identical. Under some circumstances, it could even be argued reliance can be presumed because the sender is using a well-known, identical brand name to the alleged principal.

But here, those facts simply do not exist. Even if Plaintiff was able to present some evidence that all of the phone calls were made with an identical script—there is no such evidence—there would be no common way to determine how much, if any, of the script was spoken to each class member without individual testimony.

Plaintiff relies upon *Kristensen v. Credit Payment Services*, 12 F. Supp. 3d 1292 (D. Nev. 2014) for the proposition that because apparent authority requires reliance based upon what "a reasonable person would believe," "there is no need to determine how individual class members perceived the" messages. *Kristensen* cites to *In Re Fresh and Process Potatoes Antitrust, Lit.*, 834 F. Supp. 2d 1141 (D. Idaho 2011) for this proposition.

But as explained by that court, "Apparent authority focuses on third parties. It arises when a third party reasonably believes that the putative agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations. See Restatement (Third) Agency

§ 2.03 & cmts. c, d.  Apparent authority is "basically an estoppel principle which operates in favor of third parties seeking to bind a principal for unauthorized acts of its agents."  2A C.J.S. Agency § 391."  *Id.* at 1167-1167.  See also *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 477 (9th Cir. 2015) citing to Restatement (Second) of Agency § 262 & cmt. a (1958) (explaining how apparent authority protects third-party reliance); see also s agent, *Torres v. Goodyear Tire & Rubber Co.*, 867 F.2d 1234, 1237 (9th Cir. 1989) (applying Arizona law, even assuming representation made, plaintiff required to show reliance); see also *Lushe v. Verengo Inc.*, No. CV 13-07632 AB RZ, 2015 WL 500158, at *5-*6 and fn. 2.(C.D. Cal. Feb. 2, 2015) (disagreeing with *Thomas v. Taco Bell Corp.* (9th Cir. July 2, 2014) No. 12-56458, 2014 WL 2959160 that reliance is required, but confirming that apparent authority only exists when a third party reasonably *believes* the actor has authority).

Thus, each class member must *believe* the agent is acting with authority, and that belief must be *reasonable*.  *Both* are required.  There is no avoiding that individuals would need to provide testimony as to their individual perception and beliefs.  And, separately, each may need to show some reliance.  *Thomas v. Taco Bell Corp.* (9th Cir. July 2, 2014) No. 12-56458, 2014 WL 2959160; see also *Rogers v. Epson Am., Inc.*, 648 F. App'x 717, 719 (9th Cir. 2016) ["Where a claim is based upon product advertising and the like, it is critical that the representation in question be made to all of the class members"].

There would need to be evidence that each class member actually *answered* the phone, and *listened* to the person who called, and had some *belief* originating in statements traceable to the defendants.

This issue cannot be decided upon a class-wide basis.

### 3.   The issue of consent may need to be established individually based upon records located in unrelated third parties.

While TCPA cases are not "'per se' unsuitable for class resolution," class certification is warranted only when the "unique facts" of a particular case indicate that individual adjudication of the pivotal element of prior express consent is unnecessary.  *Gene & Gene*, 541 F.3d at 326.  Thus, predominance in TCPA cases primarily turns on whether a class-based trial on the merits could

actually be administered.  *Connelly v. Hilton Grand Vacations Co*., LLC, 294 F.R.D. 574, 577 (S.D. Cal. 2013), 577.

There is no evidence consent can be determined on a class-wide basis.  If a class was ascertained, it would raise issues of how each independent contractor obtained the specific phone numbers at issue, including what manner of consent was obtained.  The proposed class covers a four year period in which phone numbers were likely obtained from a variety of sources and under a variety of different conditions of consent.  The issue of consent would need to be separately litigated as to each individual class member.

Plaintiff cites to *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1042 (9th Cir. 2012) for the position that—in the absence of evidence that consent will be a contested issue—class certification may be appropriate.  The court reasoned that the defendant "did not show a single instance where express consent was given before the call was placed" and, given this, "it was reasonable" for the district court to conclude a class would be appropriate.  However, the defendant in *Meyer v. Portfolio Recovery Assocs., LLC* actually made the calls at issue and had access to records that would establish consent.  *Id*.

Here, Plaintiff complains about calls by third parties for which there has been no discovery on this issue of consent and only speculation as to what consent MSI and IVT obtained directly or whether the companies they obtained contact information from obtained consent.

Further, Plaintiff actually provided consent for one of her phone numbers in this action. Plaintiff initially provided discovery responses that she never consented to be called.  Meyer Dec. Ex. A, p. 10-12, Interrogatories, Nos. 10-11.  But during her deposition, she admitted that on September 28, 2014, she let her brother sign her up for a give-a-way with one of her cell phone numbers (949-439-8867).  Meyer Dec., Ex. B, 116:4-24, Ex. C, 19:11-18, 20:22-21:2, 24:15-24. This phone number was never provided by a defendant to MSI or IVT, but that is irrelevant. Whether or not IVT or MSI knew they had consent, Plaintiff provided consent to be called at that number for purposes of marketing the Global Exchange Vacation Club.

Relevant to this motion, Plaintiff's individual consent is an issue that is distinct and time consuming.  Her deposition shows that she—like many others—may be providing their phone

numbers and agreeing to be called without reading what they are agreeing to, or even remembering what they did.

If a class could even be ascertained, there is no way of knowing how many different members would raise consent issues that would need to be addressed individually. This is not like *Meyer v. Portfolio Recovery Assocs.* where there it could be inferred from the absence of evidence of consent at the time for certification that no such evidence existed.

Here, Plaintiff—the only identified potential class member—actually provided consent for at least one of her phone numbers. And it required her *personal deposition* to establish this fact.

**F.      Additional factors do not favor class certification.**

**1.      Plaintiff is not an adequate representative.**

Besides not being a member of the class, there is evidence that Plaintiff is not an adequate representative. Adequacy "depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970 (9th Cir. 2011).

Here, Plaintiff lacks credibility. See, *Harris v. Vector Marketing Corp.* (N.D. Cal. 2010) 753 F.Supp.2d 996, 1015 ["questions of personal integrity are but one factor the Court must consider in making the adequacy determination"]. As discussed above, Plaintiff's testimony does not match up with her written discovery responses, is contradicted by her own public statements, and conflicts with indisputable facts. Further, whether Plaintiff has signed for other give-a-ways and provided her phone numbers creates a special distraction and unique position of Plaintiff as opposed to potential class member.

**2.      Class-wide resolution is not required in the interest of justice or to fulfill the goals of Congress.**

This is also not a case where a class action is required in order to vindicate the rights of those who are injured. Congress provided a $500 to $1500 per call remedy. Anyone who receives calls

taking up one hour of time, or just $6 worth of charges, would have a claim above $30,000.[2]

The TCPA provides a lopsided per-call statutory damage award that makes filing individual suits worthwhile when the calls actually caused real annoyance or otherwise caused harm.  Even for a few calls, small claims court is a reasonable alternative.  See *Mims v. Arrow Fin. Servs*., LLC, 132 S. Ct. 740, 752, 181 L. Ed. 2d 881 (2012) (discussing congressional intent contemplating small claims court actions); *Smith v. Microsoft Corp.,* 297 F.R.D. 464, 469 (S.D. Cal. 2014); see also *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

**V.    Conclusion**

Plaintiff cannot show she is a class member or has standing.  IVT and MSI are independent companies that are involved in marketing related to many different businesses, including other vacation timeshare developers.  Calls related to the Global Exchange Vacation Club are likely to be a small minority of calls these companies make.

Plaintiff asks the court to *speculate* that the three phone calls from IVT or MSI were related to Global Exchange Vacation Club.  Plaintiff asks the court to *speculate* that she received additional calls from IVT or MSI (calls she cannot identify in her phone records) and these calls were related to Global Exchange Vacation Club.  Speculation is not warranted and cannot support the certification of a class.

To the contrary, when IVT and MSI call related to the Global Exchange Vacation Club, they use the names "Sunset Getaways" and "Celebration Vacations."  Plaintiff never received a call from "Sunset Getaways" or "Celebration Vacations."

Moreover, the "important questions apt to drive the resolution of the litigation" (*Torres v. Mercer Canyons Inc.,* 835 F.3d 1125, 1134 (9th Cir. 2016) require an individual assessment for each class member.

Standing requirements will require each class member to provide evidence of actual harm.  Trial of issues of apparent authority agency will require individual inquiries.  The issue of consent is likely to require individual inquiries for each class member.  Plaintiff, herself, has a unique issue of

---

[2]  1 min per call x 60 calls x $500 = $30,000 per hour of calls.  $0.10 per minute x 60 min = $6.00

1   consent to be tried individually.  And, as a threshold matter, documents are not available to readily

2   ascertain the class.

3        Plaintiff's inconsistent testimony and consent issues do not make her an adequate

4   representative.  Class-wide resolution is not required to fulfill the goals of Congress in passing the

5   TCPA.

6        The motion should be denied.

8   Dated: December 19, 2016                    LOSCH & EHRLICH

10                                   By:   /s/ Mark R. Meyer
                                          Joseph Ehrlich
                                          Mark R. Meyer
11                                        Attorneys for Defendant
                                          Resort Vacations, Inc.;
12                                        Global Exchange Marketing Corp.; and
                                          Global Exchange Development Corp.

1

**PROOF OF SERVICE**

2

    I, the undersigned, declare:

3

    I am employed in the City and County of San Francisco.  I am over the age of eighteen (18)

4

and not a party to the within cause.  My business address is 425 California Street, Suite 2025, San Francisco, California, 94104.

5

    On December 19, 2016, I served the attached document(s):

6

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION;**

7

**MEMORANDUM OF POINTS AND AUTHORITIES**

8

On the party(s) to this action by sending a true copy thereof, addressed as follows:

9

/ X /    (BY ELECTRONIC SERVICE) The documents were served electronically by filing via the Court's CM/ECF electronic filing system.

10

11

    R. Rex Parris, Esq.                  R. Rex Parris, Esq.
    John Bickford, Esq.                rrparris@parrislawyers.com
    Kitty Szeto, Esq.

12

    Eric Wilson, Esq.                  John Bickford, Esq.
    PARRIS LAW FIRM             jbickford@parrislawyers.com

13

    43364 10th Street West
    Lancaster, CA 93534             Kitty Szeto, Esq.

14

    kszeto@parrislawyers.com

15

    Eric Wilson, Esq.
    ewilson@parrislawyers.com

16

    I declare under penalty of perjury, under the laws of the United States, that the foregoing is

17

true and correct.  Executed on December 19, 2016, at San Francisco, California.

18

19

                            _____

20

                            Chia-Hui Sze

21

22

23

24

25

26

27

28