JOSEPH EHRLICH - #84359
MARK R. MEYER - #238231
Losch & Ehrlich - Attorneys at Law
425 California Street, Suite 2025
San Francisco CA 94104
Telephone:    (415) 956-8400
Facsimile:    (415) 956-2150
Email:        je@losch-ehrlich.com
              mm@losch-ehrlich.com

Attorneys for Defendants
Resort Vacations, Inc.;
Global Exchange Marketing Corp.;
Global Exchange Development Corp.; and
Global Exchange Vacation Club.

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRCT OF CALIFORNIA
SOUTHERN DISTRICT

| | |
|---|---|
| MICHELE DEL VALLE,<br><br>                    Plaintiff,<br><br>          v.<br><br>GLOBAL EXCHANGE VACATION CLUB;<br>RESORT VACATIONS, INC.;<br>GLOBAL VACATIONS MARKETING CORP.;<br>GLOBAL EXCHANGE DEVELOPMENT<br>CORP.;<br>and DOES 1 through 100, inclusive,<br><br>                    Defendants. | CASE NO.<br>8:16-cv-02149-DOC (JCGx)<br><br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION;**<br><br>**DECLARATION OF MARK R. MEYER IN SUPPORT OF OPPOSITION**<br><br>Date:          January 9, 2017<br>Time:         8:30 a.m.<br>Courtroom:  9C<br>Judge:        David O. Carter |

# DECLARATION

1.     I am an attorney of record for defendants in this action.

2.     Except for matters asserted on information and belief, which I am informed and believe to be true, I make this declaration of my personal knowledge and, if called as a witness, I could and would testify competently to the facts set forth herein.

3.     **Exhibit A**, attached, is Plaintiff's response to Special Interrogatories, Set One, in which Plaintiff states the phone calls she claims defendants are responsible for.

4.     **Exhibit B**, attached, is selected pages from the deposition of Miles Bryson, the former Senior Vice President of Marketing for Resort Vacations, Inc. ("RVI").

5.     **Exhibit C**, attached, is selected pages from the deposition of Plaintiff Ms. Del Valle taken in the action prior to removal.

6.     The Depositions were completed in April 2016.  On May 19, 2016, defendant Global Exchange Vacation Club served a supplemental interrogatory which required plaintiff to provide any later acquired information. Plaintiff responded in June 2016 that she had no information to supplement.

7.     **Exhibit D**, attached, is a copy of Plaintiff's Complaint against Great Destinations, Inc., a timeshare company doing business in Southern California.  According to the pleadings of Plaintiff prior to removal, Plaintiff entered into a confidential settlement with Great Destinations.  Plaintiff refused to produce any records related to her claims in that case or what claims may have been released.

8.     **Exhibit E**, attached, is a copy of business records obtained by subpoena from Great Destinations.  It is a copy of a letter from Plaintiff to Great Destinations, Inc. asserting that Great Destinations made certain phone calls to Plaintiff, including some of the phone calls she accuses defendants of being responsible for.

9.     **Exhibit F,** attached, is a copy of portions of the web page obtained from the website Yelp! that contain the reviews obtained by searching for "Michele Del Valle" and copying the reviews that refer to Great Destinations.

//

1   I declare under penalty of perjury under the laws of the United States of America that the foregoing
2   is true and correct.

3   Executed on: December 19, 2016   /s/ Mark R. Meyer
             By:  Mark R. Meyer

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

1  R. Rex Parris (SBN 96567)
   Alexander R. Wheeler (SBN 239541)
2  Kitty Szeto (SBN 258136)
   John M. Bickford (SBN 280929)
3  **R. REX PARRIS LAW FIRM**
   43364 10th Street West
4  Lancaster, California 93534
   Telephone: (661) 949-2595
5  Facsimile:  (661) 949-7524

6  Attorneys for Plaintiff and the Putative Class

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                          **COUNTY OF ORANGE**

10
   MICHELE DEL VALLE; an individual, for herself )   Case No. 30-2014-00745279-CU-MC-CXC
11 and all members of the putative class,          )
                                                    )  [Assigned for All Purposes to the Honorable
12           Plaintiff,                             )  Thierry Patrick Colaw Department CX105]
                                                    )
13      v.                                          )  **CLASS ACTION**
                                                    )
14 GLOBAL EXCHANGE VACATION CLUB, a               )  **PLAINTIFF'S OBJECTIONS AND**
   California Corporation, and DOES 1 through 100, )  **RESPONSES TO DEFENDANT'S**
15 inclusive,                                       )  **SPECIAL INTERROGATORIES**
                                                    )  **(SET ONE)**
16           Defendants.                            )
                                                    )
17                                                  )
                                                    )
18                                                  )
                                                    )
19                                                  )

20

21

22

23

24

25

26

27

28

1    PROPOUNDING PARTY:       Defendant Global Exchange Vacation Club

2    RESPONDING PARTY:        Michele Del Valle

3    SET NO.:                One

4       Plaintiff Michele Del Valle ("Plaintiff") hereby objects and responds to Defendant Global

5  Exchange Vacation Club's ("Defendant") Special Interrogatories (Set One) as follows:

## PRELIMINARY STATEMENT

7       The following objections and responses to Defendant's Special Interrogatories are made on the

8  basis of information that is presently known and available to Plaintiff, and may include documents

9  containing hearsay information and other information inadmissible at trial although it may be

10  discoverable. Plaintiff's discovery, investigation, and preparation for trial is not yet completed and is

11  continuing as of the date of these objections and responses. Plaintiff expressly reserves the right to

12  continue its discovery and investigation and to supplement or modify these responses at any time in

13  light of subsequently discovered information or documents. Accordingly, the objections and responses

14  set forth below represent only information currently known following a reasonable investigation in

15  responding to these Special Interrogatories. Plaintiff specifically reserves the right to use at trial, and in

16  connection with any motion, additional information that may be discovered or disclosed through its

17  continuing investigation and discovery.

18       The following objections and responses are made without waiving and while preserving: (a) the

19  right to raise in any subsequent proceeding or at the trial of this or any other action all questions of

20  authenticity, foundation, relevancy, materiality, privilege, and evidentiary admissibility of any

21  information or document identified or produced in response to the instant Special Interrogatories; (b)

22  the right to object on any ground to the use or introduction into evidence of any information or

23  document in any subsequent proceeding or at the trial of this or any other action on any ground; and (c)

24  the right to object on any ground at any time to additional discovery.

## GENERAL OBJECTIONS

26      The following General Objections are made with respect to each and every Special

27  Interrogatory, and are incorporated into each Specific Objections set forth below, regardless of whether

28  they are explicitly mentioned in a given Specific Objection. Notwithstanding these General Objections,

1

1   without waiving them and consistent with them, Plaintiff will respond to Defendant's Special

2   Interrogatories, to the extent not objected to, in accordance with California Code of Civil Procedure

3   sections 2030.210 *et seq.*

4        1.    Plaintiff objects to each and every Special Interrogatory to the extent it attempts to

5   require Plaintiff to identify each document or source of information in specified categories. Each of

6   these Special Interrogatories is vague, ambiguous, unintelligible, overbroad, and unduly burdensome.

7   In response to Defendant's Special Interrogatories, to the extent not objected to, Plaintiff will use

8   reasonable diligence to locate responsive information.  To the extent that Defendant seeks to require

9   Plaintiff to do more than the foregoing, Plaintiff objects to each and every Special Interrogatory as

10  vague, ambiguous, unintelligible, overbroad, seeking information not reasonably calculated to lead to

11  the discovery of admissible evidence, and subjecting Plaintiff to oppression, harassment, and undue

12  burden and expense.

13       2.    Plaintiff objects to each and every Special Interrogatory to the extent it purports to call

14  for the production of information protected by the attorney-client privilege, the work-product doctrine,

15  or any other applicable privilege, protection or immunity from discovery recognized in case law or

16  conferred by statute.

17       3.    Plaintiff objects to each and every Special Interrogatory to the extent that it is replete

18  with terms and/or phrases that are undefined and are, therefore, vague, ambiguous, and capable of

19  various interpretations.

20       4.    Plaintiff objects to each and every Special Interrogatory to the extent that said Special

21  Interrogatory seeks information outside of Plaintiff's possession, custody, or control.

22       5.    Plaintiff objects to each and every Special Interrogatory to the extent that said Special

23  Interrogatory seeks the production of sensitive and confidential information, the production of which

24  would infringe upon the legitimate, reasonable privacy interests of third party nonlitigants to an extent

25  incommensurate with the Defendant's legitimate discovery needs.

26       6.    Plaintiff also objects to each and every Special Interrogatory to the extent that it purports

27  to require the disclosure of information for a time period in excess of the Class Period.

28  ////

1          7.     Plaintiff has not completed her factual and legal investigation, discovery, or trial

2    preparation.  Accordingly, the answers and objections set forth below relate only to information

3    currently known following a reasonable search in responding to these Special Interrogatories.  Subject

4    to the above general objections, which are hereby incorporated in the specific responses to each and

5    every Special Interrogatory, Plaintiff submits the following specific responses and objections.

6    **SPECIAL INTERROGATORIES**

7    **SPECIAL INTERROGATORY NO. 1:**

8         IDENTIFY each call you contend you received from GEVC in violation of 47 USC 227

9    (IDENTIFY means to state the **date, time,** and **phone number** dialed for each call.)

10   **RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

11        Plaintiff objects to this Interrogatory on the grounds and the extent that it is vague and

12   ambiguous, both as to a whole and through its incorporation of words and phrases such as "received"

13   and "phone number dialed"—each of which is susceptible to multiple interpretations and any one of

14   which might change the nature of the question posed.  Plaintiff also objects to this Interrogatory on the

15   grounds and to the extent that it seeks information that is not relevant to the subject matter of the

16   litigation and is not reasonably calculated to lead to the discovery of admissible evidence and, without

17   limiting the generality of the foregoing, is particularly overbroad as to time and scope.  Furthermore,

18   Plaintiff objects to this Interrogatory on the ground and to the extent that it seeks information protected

19   by the attorney-client privilege, the attorney work product doctrine, the joint defense common interest

20   doctrines, and/or any other applicable privilege or protection.  Plaintiff further objects to this

21   Interrogatory on the grounds and to the extent that it seeks private privileged, and confidential,

22   financial, and/or proprietary business information.  Plaintiff also objects to this Interrogatory on the

23   grounds and to the extent that responding to this Interrogatory, in whole or in part, would impose an

24   unfair, unnecessary and/or costly burden on Plaintiff.

25        Subject to and without waiving the forgoing objections, and to the extent she understands this

26   Interrogatory, Plaintiff responds as follows:  Within the four years prior to filing this action, Plaintiff

27   received countless calls from Defendant.  Therefore, in order for Plaintiff to provide a full and complete

28   list of each and every time she received a call, Defendant will first need to provide a full and complete

3

1    list of all the telephone numbers it and its vendors used during the class period.   Plaintiff will

2    supplement her response once this information has been provided.

3           Nevertheless, in an effort to provide a meaningful response at this time, Plaintiff states that she

4    was called on her (949) 439-8867 cellular telephone number on May 27, 2014 at 6:46 p.m. PST from

5    ██████████; September 30, 2014 at 7:02 p.m. PST from ██████████; and November 4, 2014 at

6    8:08 p.m. PST from ██████████.   She was also called on her (949) 287-2405 cellular telephone

7    number on December 4, 2014 at 7:22 p.m. PST from ██████████ and on December 14, 2014 at

8    7:58 p.m. PST from ██████████.

9    **SPECIAL INTERROGATORY NO. 2:**

10          For each call you contend you received from GEVC in violation of 47 USC 227, IDENTIFY

11   each "Caller ID" number provided for the call received.   (IDENTIFY means to state the phone number

12   indicated as the caller and the date, time, and phone number of the phone dialed for each call.) (If

13   Caller ID information was/is not available for each call, please state so.)

14   **RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

15          Plaintiff objects to this Interrogatory on the grounds and the extent that it is vague and

16   ambiguous, both as to a whole and through its incorporation of words and phrases such as " 'Caller ID'

17   number", "received", and "number provided for the call received"—each of which is susceptible to

18   multiple interpretations and any one of which might change the nature of the question posed.   Plaintiff

19   also objects to this Interrogatory on the grounds and to the extent that it seeks information that is not

20   relevant to the subject matter of the litigation and is not reasonably calculated to lead to the discovery

21   of admissible evidence and, without limiting the generality of the foregoing, is particularly overbroad

22   as to time and scope.   Furthermore, Plaintiff objects to this Interrogatory on the ground and to the

23   extent that it seeks information protected by the attorney-client privilege, the attorney work product

24   doctrine, the joint defense common interest doctrines, and/or any other applicable privilege or

25   protection.   Plaintiff further objects to this Interrogatory on the grounds and to the extent that it seeks

26   private privileged, and confidential, financial, and/or proprietary business information.   Plaintiff also

27   objects to this Interrogatory on the grounds and to the extent that responding to this Interrogatory, in

28   whole or in part, would impose an unfair, unnecessary and/or costly burden on Plaintiff.

4

1        Subject to and without waiving the forgoing objections, and to the extent she understands this

2    Interrogatory, Plaintiff responds as follows:  Within the four years prior to filing this action, Plaintiff

3    received countless calls from Defendant.  Therefore, in order for Plaintiff to provide a full and complete

4    list of each and every time she received a call, Defendant will first need to provide a full and complete

5    list of all the telephone numbers it and its vendors used during the class period.  Plaintiff will

6    supplement her response once this information has been provided.

7        Nevertheless, in an effort to provide a meaningful response at this time, Plaintiff states that she

8    was called on her (949) 439-8867 cellular telephone number on May 27, 2014 at 6:46 p.m. PST from

9    ▮▮▮▮▮▮▮; September 30, 2014 at 7:02 p.m. PST from ▮▮▮▮▮▮▮; and November 4, 2014 at

10   8:08 p.m. PST from ▮▮▮▮▮▮.  She was also called on her (949) 287-2405 cellular telephone

11   number on December 4, 2014 at 7:22 p.m. PST from ▮▮▮▮▮▮ and on December 14, 2014 at

12   7:58 p.m. PST from ▮▮▮▮▮▮.

13   **SPECIAL INTERROGATORY NO. 3:**

14       For each call you contend you received from GEVC in violation of 47 USC 227, for which

15   "Caller ID" information is not available, IDENTIFY the call and DESCRIBE IN DETAIL the reasons

16   why the information is not available.

17   **RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

18       Plaintiff objects to this Interrogatory on the grounds and the extent that it is vague and

19   ambiguous, both as to a whole and through its incorporation of words and phrases such as " 'Caller ID'

20   number" and "received"—each of which is susceptible to multiple interpretations and any one of which

21   might change the nature of the question posed. Plaintiff also objects to this Interrogatory on the grounds

22   and to the extent that it seeks information that is not relevant to the subject matter of the litigation and

23   is not reasonably calculated to lead to the discovery of admissible evidence and, without limiting the

24   generality of the foregoing, is particularly overbroad as to time and scope.  Furthermore, Plaintiff

25   objects to this Interrogatory on the ground and to the extent that it seeks information protected by the

26   attorney-client privilege, the attorney work product doctrine, the joint defense common interest

27   doctrines, and/or any other applicable privilege or protection.  Plaintiff further objects to this

28   Interrogatory on the grounds and to the extent that it seeks private privileged, and confidential,

5

1  financial, and/or proprietary business information.  Plaintiff also objects to this Interrogatory on the

2  grounds and to the extent that responding to this Interrogatory, in whole or in part, would impose an

3  unfair, unnecessary and/or costly burden on Plaintiff.

4      Subject to and without waiving the forgoing objections, and to the extent she understands this

5  Interrogatory, Plaintiff responds as follows:  At this time, Plaintiff is unaware of any call she received

6  from Defendant for which the "Caller ID" information is not available.  Discovery and investigation

7  continue.

8  **SPECIAL INTERROGATORY NO. 4:**

9      For each call you contend you received from GEVC in violation of 47 USC 227, state the model

10  and serial number of the phone that received the call.

11  **RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

12      Plaintiff objects to this Interrogatory on the grounds and the extent that it is vague and

13  ambiguous, both as to a whole and through its incorporation of words and phrases such as "received"

14  and "model and serial number"—each of which is susceptible to multiple interpretations and any one of

15  which might change the nature of the question posed.  Plaintiff also objects to this Interrogatory on the

16  grounds and to the extent that it seeks information that is not relevant to the subject matter of the

17  litigation and is not reasonably calculated to lead to the discovery of admissible evidence and, without

18  limiting the generality of the foregoing, is particularly overbroad as to time and scope.  Furthermore,

19  Plaintiff objects to this Interrogatory on the ground and to the extent that it seeks information protected

20  by the attorney-client privilege, the attorney work product doctrine, the joint defense common interest

21  doctrines, and/or any other applicable privilege or protection.  Plaintiff further objects to this

22  Interrogatory on the grounds and to the extent that it seeks private privileged, and confidential,

23  financial, and/or proprietary business information.  Plaintiff also objects to this Interrogatory on the

24  grounds and to the extent that responding to this Interrogatory, in whole or in part, would impose an

25  unfair, unnecessary and/or costly burden on Plaintiff.

26      Subject to and without waiving the forgoing objections, and to the extent she understands this

27  Interrogatory, Plaintiff responds as follows: Plaintiff received calls to two cell phones.  The cell phone

28

6

1  with the number (949) 439-8867 is a Nokia Lumina and the cell phone with the number (949) 287-2405

2  is an AT&T GoPhone.

3  **SPECIAL INTERROGATORY NO. 5:**

4      For each call you contend you received from GEVC in violation of 47 USC 227, IDENTIFY

5  each person who was paying for the cellular phone service for that phone.  (IDENTIFY means to state

6  the name and all latest known contact information).

7  **RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

8      Plaintiff objects to this Interrogatory on the grounds and the extent that it is vague and

9  ambiguous, both as to a whole and through its incorporation of words and phrases such as "received"

10  and "paying"—each of which is susceptible to multiple interpretations and any one of which might

11  change the nature of the question posed.  Plaintiff also objects to this Interrogatory on the grounds and

12  to the extent that it seeks information that is not relevant to the subject matter of the litigation and is not

13  reasonably calculated to lead to the discovery of admissible evidence and, without limiting the

14  generality of the foregoing, is particularly overbroad as to time and scope.  Furthermore, Plaintiff

15  objects to this Interrogatory on the ground and to the extent that it seeks information protected by the

16  attorney-client privilege, the attorney work product doctrine, the joint defense common interest

17  doctrines, and/or any other applicable privilege or protection.  Plaintiff further objects to this

18  Interrogatory on the grounds and to the extent that it seeks private privileged, and confidential,

19  financial, and/or proprietary business information.  Plaintiff also objects to this Interrogatory on the

20  grounds and to the extent that responding to this Interrogatory, in whole or in part, would impose an

21  unfair, unnecessary and/or costly burden on Plaintiff.

22      Subject to and without waiving the forgoing objections, and to the extent she understands this

23  Interrogatory, Plaintiff responds as follows:  Plaintiff received calls to two cellular phones, one with the

24  number (949) 439-8867 and the other with the number (949) 287-2405.  She paid for the cellular phone

25  service for both of these cellular phones.  She can be contacted through her counsel, John M. Bickford,

26  Esq. of R Rex Parris Law Firm, Lancaster, California 93534 (661) 949-2595.

27  ////

28  ////

7

1 **SPECIAL INTERROGATORY NO. 6:**

2       For each call you contend you received from GEVC in violation of 47 USC 227, DESCRIBE IN

3 DETAIL any harm or expense caused to you.

4 **RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

5       Plaintiff objects to this Interrogatory on the grounds and the extent that it is vague and

6 ambiguous, both as to a whole and through its incorporation of words and phrases such as "received",

7 "DESCRIBE IN DETAIL", and "harm or expense"—each of which is susceptible to multiple

8 interpretations and any one of which might change the nature of the question posed.  Plaintiff also

9 objects to this Interrogatory on the grounds and to the extent that it seeks information that is not

10 relevant to the subject matter of the litigation and is not reasonably calculated to lead to the discovery

11 of admissible evidence and, without limiting the generality of the foregoing, is particularly overbroad

12 as to time and scope.  Furthermore, Plaintiff objects to this Interrogatory on the ground and to the

13 extent that it seeks information protected by the attorney-client privilege, the attorney work product

14 doctrine, the joint defense common interest doctrines, and/or any other applicable privilege or

15 protection.  Plaintiff further objects to this Interrogatory on the grounds and to the extent that it seeks

16 private privileged, and confidential, financial, and/or proprietary business information.  Plaintiff also

17 objects to this Interrogatory on the grounds and to the extent that responding to this Interrogatory, in

18 whole or in part, would impose an unfair, unnecessary and/or costly burden on Plaintiff.

19       Subject to and without waiving the forgoing objections, and to the extent she understands this

20 Interrogatory, Plaintiff responds as follows:  Defendant made countless calls to Plaintiff's cellular

21 telephones using an automated telephone dialing system without her prior express consent.  All of these

22 calls invaded her personal privacy and were billed to her cellular telephone bill.

23 **SPECIAL INTERROGATORY NO. 7:**

24       For each call you contend you received from GEVC in violation of 47 USC 227, DESCRIBE IN

25 DETAIL the content of the call (DESCRIBE IN DETAIL means to state all of the statements made

26 during the call by any party to the call.)

27 ////

28 ///

8

1   <u>**RESPONSE TO SPECIAL INTERROGATORY NO. 7:**</u>

2        Plaintiff objects to this Interrogatory on the grounds and the extent that it is vague and

3   ambiguous, both as to a whole and through its incorporation of words and phrases such as "received"

4   and "DESCRIBE IN DETAIL"—each of which is susceptible to multiple interpretations and any one of

5   which might change the nature of the question posed. Plaintiff also objects to this Interrogatory on the

6   grounds and to the extent that it seeks information that is not relevant to the subject matter of the

7   litigation and is not reasonably calculated to lead to the discovery of admissible evidence and, without

8   limiting the generality of the foregoing, is particularly overbroad as to time and scope. Furthermore,

9   Plaintiff objects to this Interrogatory on the ground and to the extent that it seeks information protected

10   by the attorney-client privilege, the attorney work product doctrine, the joint defense common interest

11   doctrines, and/or any other applicable privilege or protection. Plaintiff further objects to this

12   Interrogatory on the grounds and to the extent that it seeks private privileged, and confidential,

13   financial, and/or proprietary business information. Plaintiff also objects to this Interrogatory on the

14   grounds and to the extent that responding to this Interrogatory, in whole or in part, would impose an

15   unfair, unnecessary and/or costly burden on Plaintiff.

16        Subject to and without waiving the forgoing objections, and to the extent she understands this

17   Interrogatory, Plaintiff responds as follows: Unless the calls in question were recorded, it is impossible

18   for Plaintiff (or anyone else for that matter) to "state all of the statements made during [a] call by any

19   party to the call." Nevertheless, in an effort to provide a meaningful response, Plaintiff states that each

20   of the calls she received from Defendant were more or less the same. Each were made by individuals

21   with non-American accents (possibly Filipino) speaking English, and seemed scripted. In each call, the

22   caller invited Plaintiff and a partner of her choosing to attend an in-person 90-minute timeshare

23   presentation in Southern California. Usually, the caller stated that if Plaintiff attended the presentation

24   she would receive a free or discounted trip to various vacation destinations, such as Las Vegas, Hawaii,

25   or Florida. Most of the time, Plaintiff told the caller to stop calling her or she simply hung up on the

26   caller mid-sentence. Nevertheless, Plaintiff continued to receive calls from Defendants.

27   ////

28   ////

1  **SPECIAL INTERROGATORY NO. 8:**

2      IDENTIFY each time YOU have called GEVC or a business or person you believe is associated

3  with GEVC.  (IDENTIFY means to state the **date, time,** and **phone number** dialed for each call.)

4  **RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

5      Plaintiff objects to this Interrogatory on the grounds and the extent that it is vague and

6  ambiguous, both as to a whole and through its incorporation of words and phrases such as "associated

7  with GEVC," which is susceptible to multiple interpretations and any one of which might change the

8  nature of the question posed.  Plaintiff also objects to this Interrogatory on the grounds and to the extent

9  that it seeks information that is not relevant to the subject matter of the litigation and is not reasonably

10  calculated to lead to the discovery of admissible evidence and, without limiting the generality of the

11  foregoing, is particularly overbroad as to time and scope.  Furthermore, Plaintiff objects to this

12  Interrogatory on the ground and to the extent that it seeks information protected by the attorney-client

13  privilege, the attorney work product doctrine, the joint defense common interest doctrines, and/or any

14  other applicable privilege or protection.  Plaintiff further objects to this Interrogatory on the grounds

15  and to the extent that it seeks private privileged, and confidential, financial, and/or proprietary business

16  information.  Plaintiff also objects to this Interrogatory on the grounds and to the extent that responding

17  to this Interrogatory, in whole or in part, would impose an unfair, unnecessary and/or costly burden on

18  Plaintiff.

19      Subject to and without waiving the forgoing objections, and to the extent she understands this

20  Interrogatory, Plaintiff responds as follows:  At this time, Plaintiff is unaware of ever calling GEVC or

21  a business or person she believes is associated with GEVC.  Discovery and investigation continue.

22  **SPECIAL INTERROGATORY NO. 9:**

23      IDENTIFY each time YOU have consented orally to receive telephone calls from GEVC or a

24  business or person you believe is associated with GEVC.  (IDENTIFY means to state the **date, time,**

25  and **manner of consent.**)

26  **RESPONSE TO SPECIAL INTERROGATORY NO. 9:**

27      Plaintiff objects to this Interrogatory on the grounds and the extent that it is vague and

28  ambiguous, both as to a whole and through its incorporation of words and phrases which are susceptible

10

1  to multiple interpretations and any one of which might change the nature of the question posed.

2  Plaintiff also objects to this Interrogatory on the grounds and to the extent that it seeks information that

3  is not relevant to the subject matter of the litigation and is not reasonably calculated to lead to the

4  discovery of admissible evidence and, without limiting the generality of the foregoing, is particularly

5  overbroad as to time and scope.  Furthermore, Plaintiff objects to this Interrogatory on the ground and

6  to the extent that it seeks information protected by the attorney-client privilege, the attorney work

7  product doctrine, the joint defense common interest doctrines, and/or any other applicable privilege or

8  protection.  Plaintiff further objects to this Interrogatory on the grounds and to the extent that it seeks

9  private privileged, and confidential, financial, and/or proprietary business information.  Plaintiff also

10  objects to this Interrogatory on the grounds and to the extent that responding to this Interrogatory, in

11  whole or in part, would impose an unfair, unnecessary and/or costly burden on Plaintiff.

12       Subject to and without waiving the forgoing objections, and to the extent she understands this

13  Interrogatory, Plaintiff responds as follows:  Plaintiff never orally consented to receive telephone calls

14  from GEVC or a business or person she believes is associated with GEVC.

15  **SPECIAL INTERROGATORY NO. 10:**

16       IDENTIFY each time YOU have consented in writing to receive telephone calls from GEVC or

17  a business or person you believe is associated with GEVC.  (IDENTIFY means to state the **date, time,**

18  **and manner of consent.**)

19  **RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

20       Plaintiff objects to this Interrogatory on the grounds and the extent that it is vague and

21  ambiguous, both as to a whole and through its incorporation of words and phrases which are susceptible

22  to multiple interpretations and any one of which might change the nature of the question posed.

23  Plaintiff also objects to this Interrogatory on the grounds and to the extent that it seeks information that

24  is not relevant to the subject matter of the litigation and is not reasonably calculated to lead to the

25  discovery of admissible evidence and, without limiting the generality of the foregoing, is particularly

26  overbroad as to time and scope.  Furthermore, Plaintiff objects to this Interrogatory on the ground and

27  to the extent that it seeks information protected by the attorney-client privilege, the attorney work

28  product doctrine, the joint defense common interest doctrines, and/or any other applicable privilege or

11

1  protection. Plaintiff further objects to this Interrogatory on the grounds and to the extent that it seeks
2  private privileged, and confidential, financial, and/or proprietary business information. Plaintiff also
3  objects to this Interrogatory on the grounds and to the extent that responding to this Interrogatory, in
4  whole or in part, would impose an unfair, unnecessary and/or costly burden on Plaintiff.

5        Subject to and without waiving the forgoing objections, and to the extent she understands this
6  Interrogatory, Plaintiff responds as follows:  Plaintiff never consented in writing to receive telephone
7  calls from GEVC or a business or person she believes is associated with GEVC.

8  **SPECIAL INTERROGATORY NO. 11:**

9        IDENTIFY each time YOU have consented electronically to receive telephone calls from
10 GEVC or a business or person you believe is associated with GEVC. (IDENTIFY means to state the
11 **date, time,** and **manner of consent.**)

12 **RESPONSE TO SPECIAL INTERROGATORY NO. 11:**

13       Plaintiff objects to this Interrogatory on the grounds and the extent that it is vague and
14 ambiguous, both as to a whole and through its incorporation of words and phrases which are susceptible
15 to multiple interpretations and any one of which might change the nature of the question posed.
16 Plaintiff also objects to this Interrogatory on the grounds and to the extent that it seeks information that
17 is not relevant to the subject matter of the litigation and is not reasonably calculated to lead to the
18 discovery of admissible evidence and, without limiting the generality of the foregoing, is particularly
19 overbroad as to time and scope. Furthermore, Plaintiff objects to this Interrogatory on the ground and
20 to the extent that it seeks information protected by the attorney-client privilege, the attorney work
21 product doctrine, the joint defense common interest doctrines, and/or any other applicable privilege or
22 protection. Plaintiff further objects to this Interrogatory on the grounds and to the extent that it seeks
23 private privileged, and confidential, financial, and/or proprietary business information. Plaintiff also
24 objects to this Interrogatory on the grounds and to the extent that responding to this Interrogatory, in
25 whole or in part, would impose an unfair, unnecessary and/or costly burden on Plaintiff.

26       Subject to and without waiving the forgoing objections, and to the extent she understands this
27 Interrogatory, Plaintiff responds as follows:   Plaintiff never electronically consented to receive
28 telephone calls from GEVC or a business or person she believes is associated with GEVC.

12

1   (AS TO OBJECTIONS ONLY)

2   Date: January 12, 2015             **R. REX PARRIS LAW FIRM**

3

4

5                         By: _____

6                            John M. Bickford, Esq.

7                          Attorneys for Plaintiff and the
                               Putative Class

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES (SET ONE)

# Exhibit B

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA
2                    COUNTY OF ORANGE
3
4    MICHELE DEL VALLE, an           )
     individual, for herself and    )
5    all members of the putative    )
     class,                         )
6                                    )
                Plaintiff,           )
7                                    )
          vs.                        )    CASE NO.30-2014-
8                                    )    00745279-CU-MC-CXC
     GLOBAL EXCHANGE VACATION CLUB, )
9    a California Corporation, and   )
     DOES 1 THROUGH 100, inclusive, )
10                                   )
                Defendants.          )
11   _____)
12
13
14              DEPOSITION OF MYLES BRYSON
15              Wednesday, April 13, 2016
16                Los Angeles, California
17
18
19
20
21   REPORTED BY:
22   JULIA A. DOUVILLE
     CSR 9446 (Pages 1-133)
23
     -and-
24
     LEESA DURRANT
25   CSR 11899 (Pages 134-252)

1    between RVI and GEDC?

2        A    No.

3        Q    Okay.  So how do you know what GEDC is?

4        A    I just know that its name is in some -- some

5    details of participation.

6        Q    What's a detail of participation?

7        A    Explains to the client what we're doing, so

8    what we disclose to them.

9        Q    Who's the client?

10       A    The consumer public.

11       Q    Okay.  The individual selling -- you're

12   selling timeshares too; correct?

13       A    Or just the public.

14       Q    General public?  Okay.

15            Is there any other company -- and you don't

16   have to tell me how the relation is -- any other company

17   that's related, to your knowledge, to GEVC, GEDC, or

18   RVI?

19       A    I have no idea.

20       Q    Okay.  No other company has popped up in those

21   documents referred to the general public?

22       A    No.

23       Q    Okay.  As a Senior Vice President of Marketing

24   for RVI, who do you report to?

25       A    Rick Sargent.

```
 1    the two; that's all.

 2         MR. BICKFORD:  Okay.

 3         THE WITNESS:  They're basically the same questions,

 4    just a different graphic.

 5         MR. EHRLICH:  Right.

 6         Q    BY MR. BICKFORD:  So, to your knowledge, RVI

 7    began using its own touch screen interface in March of

 8    2014?

 9         A    Correct.

10         Q    Have you seen the equipment, the touch screen

11    interfaces?

12         A    Yes.

13         Q    And where are they stored?

14         A    Various locations.

15         Q    RVI offices?

16         A    Some of them, yeah.  Some of them stay at the

17    Staples Center.

18         Q    I see.  Okay.  So some of them --

19         A    Remain in the venue.

20         Q    Okay.

21         A    Yeah.

22         Q    And can you give me a brief -- I went over

23    this a little bit with -- with Mr. Sargent yesterday,

24    but can you give me a brief location of the venues RVI

25    uses.  Not Fortitude Media.  RVI.
```

1    actually be other screenshots of surveys that the venues

2    have asked you to perform?

3         A    Very rarely.

4         Q    Okay.  So it's not always the case?

5         A    Yeah.

6         Q    Okay.  So with that exception, the way you've

7    produced Exhibit 4 to me is the order and how it would

8    appear when someone interacts with the touch screen

9    interface?

10        A    Correct.

11        Q    Okay.  And you just -- just so I know you're

12   clear, can you go through and make sure that it's in the

13   correct order.

14        A    Now, once I get into here and you get into

15   just these questions, I -- I can only make an assumption

16   they stayed in the right order.  I -- I honestly don't

17   know.

18        Q    Okay.

19        A    But I believe so.  But there's no relevance to

20   the order.  It's just a series of nine or ten questions.

21   But I believe this is the correct order.

22        Q    Okay.  No reason to believe it's not the

23   correct order?

24        A    Correct.

25        Q    Okay.  And do you have any reason to believe

```
 1    that any screenshot is missing, other than those surveys
 2    that the venues will sometimes ask you to perform?
 3         A    No.
 4         Q    Okay.  Now, where within here does RVI obtain
 5    prior express consent to call cellphones?
 6         A    Page 3.
 7         Q    Can you read to me what RVI contends is prior
 8    express consent to call a cellphone.
 9         A    "By clicking on the 'I agree' box, this will
10         serve as my electronic signature.  I verify the
11         following information is true and agree to be
12         contacted by Resort Vacations Inc., Solar Savings
13         America, and/or Take2/GI at the address entered,
14         by text or voice contact to my cellular or home
15         telephone numbers provided by me in or on this
16         electronic entry, or to my e-mail address by way
17         of manual or automated telephone dialing system
18         regarding this and future promotional offers,
19         regardless of any prior election to the contrary.
20         I consent that any contact by phone may be
21         recorded.  I understand that I'm not required to
22         sign this agreement directly or indirectly or agree
23         to enter into such an agreement as a condition of
24         purchasing any property, goods, or services."
25         Q    Do you know who wrote that language?
```

1        A      I would -- I -- I would assume I probably had

2     something to do with writing it, and then we would have

3     had it reviewed by an attorney.

4        Q      Okay.  Do you know when approximately you

5     wrote that?

6        A      It would have been somewhere around March of

7     2014.  But it's been amended since.

8        Q      Okay.  Who is Solar Savings of -- Solar

9     Savings America?

10        A      It was a group that we were going to work with

11     with data but we chose not to.

12        Q      Okay.  And what -- what did they do?  When you

13     say "work with data," what sort of things would they do?

14        A      They sell solar.

15        Q      Like solar panels?

16        A      I just know that they sell solar services.

17     What they sell, I have no idea.

18        Q      So how would you work with them to provide

19     data?

20        A      They -- they were asking if they could acquire

21     leads from us.

22        Q      Okay.  Did that ever occur?

23        A      No.

24        Q      Okay.  So at some point in time, Solar Savings

25     of America asked you to include their name in there in

1    order to get prior express consent to allow them to call

2    people entering this competition or this sweepstakes,

3    whatever this is?

4         A    Correct.

5         Q    What exactly is this, by the way?  It looks

6    like a contest.

7         A    Yeah.  It's -- it's a sweepstakes.

8         Q    And what -- what would they win?

9         A    Four VIP tickets.

10        Q    To what?

11        A    An upcoming event.

12        Q    At the Staples Center?

13        A    Depends.  That just happens to be one of the

14   venues.

15        Q    I see.  So at the top where it says, "Win four

16   VIP tickets," and then it says, "Staples Center," you

17   could pretty much input any of those forums and venues

18   you listed in there?

19        A    Correct.

20        Q    Okay.  And who's Take2/GI?

21        A    They are another group that is interested in

22   purchasing data from us.

23        Q    Okay.  And what do they do?

24        A    Travel, I believe.

25        Q    What do you mean by "Travel"?

1    someone enters the -- their input, their data, into this

2    touch screen interface.

3            So I'm just going to ask:  If someone comes

4    up, they enter their information into the touch screen

5    interface, what happens then?

6       A    They go to the event.

7       Q    What happens to their data?

8       A    Oh, it's stored inside the machine until the

9    end of the event.

10      Q    And then what happens?

11      A    It's removed from the machine and brought into

12   the -- the I.T. department.

13      Q    How is it removed?

14      A    Through a thumb drive.

15      Q    Okay.  And then it's brought into the data

16   department?  What's the data department?  What are you

17   referring to?

18      A    I.T. department.

19      Q    I.T. department.  Where is the I.T.

20   department?

21      A    At 17682 Mitchell.

22      Q    Irvine?

23      A    Yes.

24      Q    And then what happens to it?

25      A    It's decrypted, and then it's put into our

```
 1    into a campaign and be submitted out to the call

 2    centers.

 3         Q    And then they're called?

 4         A    Yes.

 5         Q    Okay.  How do the call centers work?

 6         A    I don't understand the question.

 7         Q    Sure.  It's a little confusing.  Well, you

 8    said there's been two systems.  One was the old

 9    database, the time -- what was it called? --

10         A    Trackmaster.

11         Q    -- Trackmaster, and the new one, which was

12    custom.

13              Let's talk about the new one.

14         A    Okay.

15         Q    And, again, what are the dates for this again

16    approximately?

17         A    I think somewhere in 2013.

18         Q    Okay.  So how does a telemarketer make calls

19    since -- when -- when the new database came into effect?

20         A    So the new -- again, you're -- you're asking a

21    mixed question.  So you're asking me about a database,

22    and then you're asking me about telemarketers.  I don't

23    understand your question.

24         Q    Okay.  So -- so, well, let's talk about today.

25    How does a telemarketer make calls today?
```

1        A    A telemarketer sits down at their station,

2    they log into a phone, and then they will then ask for a

3    lead.

4        Q    How do they do that?

5        A    They push "Get Next."

6        Q    "Get Next"?

7        A    Yes.

8        Q    What do they push that on?

9        A    On a telephone.

10        Q    What kind of telephone?

11        A    A Mitel.

12        Q    So they push a button called "Get Next," and

13    what happens?

14        A    A name pops up with a phone number.

15        Q    Where does it pop up?

16        A    On the screen.

17        Q    On the telephone screen?

18        A    Yes.

19        Q    And then what happens?

20        A    They push "Dial."

21        Q    And then it connects them through?

22        A    Then it dials the phone.  It doesn't connect

23    anything.  Just dials the phone.

24        Q    It dials the number?

25        A    Yeah.

1      Q      Okay.  And let's say someone doesn't pick up.

2  What happens next?

3      A      They disposition the call.

4      Q      Hang up?

5      A      Well, whatever it was.  So if no one answered

6  the phone, they would disposition it as a no -- no

7  answer.

8      Q      I guess I'm confused as to what "disposition"

9  means.  What does that mean?

10      A      An outcome of a call.

11      Q      Okay.  And how do they do that?

12      A      On the screen, they push a button, says "Show

13  Dispositions."

14      Q      How big is the screen on these phones?

15      A      3 inches by five inches, 2 1/2 inches by 5

16  inches.

17      Q      So larger probably than a typical phone but

18  not huge?

19      A      Yeah.  It's just a normal desk phone like you

20  see all over today.

21      Q      Okay.  I'm looking at that phone over there.

22      A      That was the old ones.

23      Q      Okay.  Okay.  And yesterday Mr. Sargent said

24  that there's some sort of algorithm to determine when to

25  call people back.  Is -- is that correct?

1        A     Correct.

2        Q     And how does that happen?  How does that

3    number end up on their screen simply by pressing "Get

4    Next"?

5        A     Yeah, so our I.T. department selects data that

6    we want to call that day.  And they will create a list,

7    and that list will be put into the system that the

8    production assistant will then apply to specific

9    telemarketers.

10       Q     Okay.  And what happens when --

11             Or does it ever happen where the telemarketers

12   call everybody on the list for that day?

13       A     No.

14       Q     Okay.  So what happens when someone doesn't

15   pick up and the disposition is "Didn't Pick Up."  Are

16   they put back into that list for the day and possibly

17   re-called that day?

18       A     No.

19       Q     And how does that happen?  How do we -- that

20   not happen, I mean?

21       A     Okay.  So the -- the system can only call a

22   number once until it's put back into the system as a new

23   record.

24       Q     Okay.  So if someone is -- does not pick up --

25       A     Yeah.

1        A      I have a GVEC.net e-mail address and I have a

2    Resort Vacations e-mail address.

3        Q      What was the other one?

4        A      Resort Vacations, Inc.

5        Q      So that's your e-mail there, Myles Bryson?

6        A      I use the Resort Vacations one primarily, yes,

7    but that's the one Steve sends it to.

8        Q      Who's Jeff Brown?

9        A      IT manager.

10       Q      Do you know what VPT, Inc. stands for?

11       A      No, have no idea.

12       Q      All right.  Earlier we discussed how the

13   telemarketers function now with the Mitel phones; right?

14       A      Okay.

15       Q      How long have the Mitel phones been in use?

16       A      I don't have an exact date.

17       Q      That's fine.

18       A      Probably sometime in 2014, I believe.

19       Q      And they're in current use today; right?

20       A      Yes.

21       Q      What was used before the Mitel phones?

22       A      Polycom's.

23       Q      So how did the telemarketers work with the

24   Polycom phones?  What was the difference?

25       A      The leads were handed to them on paper.

```
 1        Q      Then what would happen?

 2        A      They would dial the phone number.

 3        Q      Did they have a computer at their desks?

 4        A      No, they still don't.

 5        Q      How would they mark the disposition of the

 6   call?

 7        A      If you want to show me one of the -- that lead

 8   form there, I can show you.

 9        Q      You're pointing to something in my stack here.

10        A      Right under your phone.

11        Q      This?

12        A      Your phone.

13        MR. EHRLICH:  He's talking about the little lead

14   slips.

15        THE WITNESS:  The little white ones there.  That's

16   a lead slip.  That's how they would be handed out.

17   BY MR. BICKFORD:

18        Q      I'll give them to you.  Let's talk about them

19   now.

20        MR. EHRLICH:  Don't write on them.

21   BY MR. BICKFORD:

22        Q      You can write on this one.

23        MR. EHRLICH:  Do you want to make a copy of it and

24   then write on it?

25        MR. BICKFORD:  No.  No.  I don't think anyone needs
```

1    to write on anything actually come to think of it

2    because you have a copy of it already.  So this will be

3    Exhibit 7.

4              (Whereupon Plaintiffs' Exhibit 7 was marked

5         for identification by the Court Reporter.)

6    BY MR. BICKFORD:

7         Q    This is what the witness was just pointing to?

8         A    Correct.

9         Q    I think I have an extra one.  Here you go.

10        MR. EHRLICH:   Thank you.

11    BY MR. BICKFORD:

12        Q    So what are we looking at here?

13        A    This would be a lead slip.  These would be

14    produced for each number that we were going to put out

15    into the call center that day and you would see here

16    that they would have the ability to put a final outcome

17    or disposition on the lead following a call.

18        Q    Okay.  So this is -- looks like it was cut.

19    It was probably part of a larger sheet of paper.

20        A    Correct.

21        Q    Would it have been precut by the time that it

22    was given to them?

23        A    Absolutely.

24        Q    Okay.  So they would receive a stack of these

25    smaller pieces of paper; correct?

1      A      Twenty in a pile.

2      Q      Twenty in a pile.  They would call the number

3   located up in the upper right-hand corner?

4      A      Correct.

5      Q      So in this case we have Michelle Del Valle;

6   correct?

7      A      Correct.

8      Q      And attached Brian Delaware?

9      A      Correct.

10      Q      Separate number for both; right?

11      A      Correct.

12      Q      Okay.  And so the telemarketers would receive

13   this slip of paper, along with others?

14      A      Correct.

15      Q      They would call the number.  And where do they

16   put the disposition?  Can you point me to where that

17   would be?

18      A      Right beside where it says, "circle status"

19   and "Q status."

20      Q      So let's go over what all of these mean.

21   Circle status is "TOL," what does that mean?

22      A      Take off list.

23      Q      What does that mean?

24      A      It's a request by a client to not receive

25   further phone calls.

1    Q    So in this case, what would that stand for?

2    A    October.

3    Q    October.  Okay.  Because ten is October?

4    A    I believe so.

5    Q    Then what's the six and the three?

6    A    I don't know.  It may be nothing.  There's a

7    source code as well that's inside here that would just

8    identify the venue.

9    Q    Okay.  Then next to that is -- what else do

10   you know?

11   A    Twenty-seven, I believe, is the date that the

12   event took place on, either the 27th or the 24th.

13   Q    Okay.

14   A    Then from there, the other letter down to the

15   NB is where we would say that the data is to the closest

16   showroom.  That would he Newport Beach, NB would be

17   Newport Beach.

18   Q    Oh, so the closest sales center, Newport

19   Beach?

20   A    Correct.

21   Q    Okay.  What's RVI's current sales locations?

22   A    Newport Beach, Encino and Ontario.

23   Q    How long has the Newport Beach sales center

24   been open?  You can do month and year, year, whatever

25   you've got.

142

```
 1      A    I think it's close to a year, I think.

 2      Q    What about the Encino location?

 3      A    A little bit longer than a year.

 4      Q    Ontario?

 5      A    A very new -- probably somewhere right around

 6  July.

 7      Q    So this lead was generated -- well, let's

 8  claim this.  I believe that in one of your discovery

 9  responses you said Del Valle signed up sometime in 2014.

10  It also says "Newport Beach" here.

11           Was there another Newport Beach location?

12      A    No.  I may have the date wrong when Newport

13  opened.  I apologize.  I don't have the dates.

14      Q    Since September 2010, have there been other

15  sales locations?

16      A    Since September -- well, Ontario was new.  So

17  San Dimas was there before that and Long Beach was prior

18  to that.

19      Q    Any others?

20      A    I don't believe so.

21      Q    How long was San Dimas opened for?

22      A    A long time.  I don't know the exact dates.

23  Before I arrived.

24      Q    But while you were there as well?

25      A    Correct.
```

1        A     Rick or Tim.

2        Q     Okay.  Who did your job -- well, did someone

3     do your job before you arrived at RVI?

4        A     No.

5        Q     So why were you brought onboard?

6        A     To grow the business.

7        Q     Grow the business how?

8        A     Make the business bigger, more revenue.

9        Q     I guess every employee is brought on to grow

10    the business.  I guess I'm looking for were you brought

11    on to develop a new marketing system?

12       A     Just to perfect things better.

13       Q     Okay.  So who was performing your job duties

14    before you got there?

15       A     No one.  They didn't do all of the things that

16    we do now.

17       Q     So what are the things that they do now that

18    they didn't do before?

19       A     Collecting data.  We didn't have the touch

20    screens prior.

21       Q     One of your biggest -- I don't know if it's

22    your biggest contributions.  One of your contributions

23    was the touch screen interface?

24       A     Correct.

25       Q     And anything else?

1      A     No.

2      Q     You checked the database which contains

3   dispositions filled out by telemarketers as to what

4   happened when the call was made?

5      A     Or shows us there's no phone number in the

6   database.

7      Q     Got you.  In this case you looked on the

8   database and you didn't see any disposition of call for

9   this number and, therefore, you believe that RVI did not

10  call this number?

11     A     There was no number.  This number was put in

12  for our internal DNC list.

13     Q     I see.

14     A     We got the number on the 28th or 27th of

15  October when she went to the Gordon Lightfoot concert.

16  The lead never went to the floor.

17     Q     I see.  So this was done before she inputted

18  her number at the Gordon Lightfoot concert?

19     A     No, after.

20     Q     Okay.  I understand that it's RVI's contention

21  that the plaintiff entered her number at a Gordon

22  Lightfoot concert; correct?

23     A     Correct.

24     Q     What happened with her number then?

25     A     It was entered into the system.

1      Q      Then what happened?

2      A      It would have been put through as a number,

3   whether it was able to be called or not, and then as it

4   was sitting in the records ready to be called, we

5   received a notification that she was unhappy about

6   something and the number was looked up and then it was

7   suppressed.

8      Q      Okay.  This is Exhibit 15.

9             (Whereupon Plaintiffs' Exhibit 15 was marked

10            for identification by the Court Reporter.)

11  BY MR. BICKFORD:

12     Q      What are we looking at here?

13     A      A search for a number.

14     Q      That number is the (949) 287-2405 number?

15     A      Correct.

16     Q      And it says "no record found," what does that

17  mean?

18     A      Pretty self-explanatory, no record found.

19     Q      So RVI never came into possession of this

20  number through some sort of lead list?

21     A      Correct.

22     Q      Okay.  So earlier you stated that it's your

23  understanding that there are training materials for

24  telemarketers?

25     A      I believe there should be.

1    Q    There should be.  Yeah.  That's right.  Okay.

2    Approximately how many calls does RVI's call centers

3    make in a day?

4        A    10,000.

5        Q    Approximately how many calls does MSI make in

6    a day for RVI?

7        A    No idea.

8        Q    Have you ever asked?

9        A    No.

10       Q    Do you know how many telemarketers MSI has?

11       A    No.

12       Q    How many tours do the RVI telemarketers on

13   average provide?

14       A    Per person or total?

15       Q    Total.

16       MR. EHRLICH:  Excuse me.  Vague and ambiguous as to

17   time.  Do you mean in a day?  Week?  Month?

18   BY MR. BICKFORD:

19       Q    How do you do it?

20       A    We measure it all.

21       Q    Well, I want to compare it to MSI and IVT.  So

22   how many qualified tours on average, I understand it's

23   going to fluctuate, does IVT provide?

24       A    In what period?

25       Q    You know it by day, you know it by week or you

1        know it by month?

2                A        We tend to go by week.

3                Q        Let's go by week.   So by week, how many does

4        IVT provide?

5                A        Around 50.

6                Q        What about MSI?

7                A        Fifty to 60.

8                Q        What about RVI?

9                A        About 130.

10               Q        Do you know why RVI has more qualified tours

11       produced than IVT or MSI?

12               A        No, I don't know.   Probably allocation of

13       staff but it would be an assumption.

14               Q        Do you know how many telemarketers IVT has?

15               A        No.

16               Q        Do you know how many telemarketers MSI has?

17               A        No.

18               Q        What's the telephone service that RVI uses?

19               A        Telephone service?

20               Q        Is it 8x8?

21               A        No.

22               Q        What is it?

23               A        Intelepeer.

24               Q        Say that again.

25               A        Intelepeer.

1     certainly -- for the record, he's not putting them in

2     random order, he's putting them in order based upon your

3     knowledge; right?

4          A     Best knowledge I have.

5          Q     Yeah.  That's fine.

6          A     So really the only two I can tell you about is

7     17 and 18, and 17 would have been used during the time

8     when we were recording calls and No. 18 has been since

9     we opened Ontario.

10         Q     When did you open Ontario again?

11         A     I believe it was last July.

12         Q     What about 19, which is an outbound Hawaii

13    script?

14         A     I don't know.  I don't know if it was before

15    or during or after this other outbound one.  I don't

16    know.

17         Q     Do you ever recall an outbound Hawaii

18    promotion?

19         A     Sure.

20         Q     You do it a lot?  So it's hard to place --

21         A     Hawaii is a very popular destination.

22         Q     Okay.  Are you aware of any scripts used

23    between September 2010 and the present?

24         A     This is what the requests asks.  No.  I asked

25    for the scripts from 2010 forward and that's what I was

1    those are more of openers, getting people to see if

2    they're interested?

3         A    Correct.

4         Q    Then once someone is interested, they would

5    use a script like this or this to set the appointment as

6    it says at the top; right?

7         A    Correct.

8         Q    Okay.  Place that one to the side.  Does RVI

9    provide scripts to MSI?

10        A    No.

11        Q    But RVI does require that MSI state that it is

12   Celebration Vacations; correct?

13        A    Correct.  Request.

14        Q    Okay.  Does RVI provide call scripts to Sunset

15   Getaways?

16        A    No.

17        Q    But RVI does request that IVT -- let me

18   rephrase that.  I'm using the dba's.

19             Does RVI provide scripts to IVT?

20        A    No.

21        Q    RVI does ask IVT to use the name Sunset

22   Getaways in its calls; correct?

23        A    Correct.

24        Q    Okay.  Are there any documents that reflect

25   what you want IVT to be saying on these calls?

```
 1      A    No.

 2      Q    Are there any documents that require what RVI

 3  wants MSI to be saying on these calls?

 4      A    No.

 5      Q    There's no e-mail correspondence that would

 6  say what we expect -- RVI expects in these calls?

 7      A    Not that I'm aware of.

 8      Q    Okay.  If you were looking for these

 9  documents, where would you go to try to see if they

10  existed?

11      A    I would have assumed they would have been

12  submitted to me and so I -- I don't know where I would

13  go from here.

14      Q    Okay.

15      MR. EHRLICH:  Just to check up on that, I'll check

16  to see if it was done but it would be prior to his time.

17  If anything was used, I will let you know.

18      MR. BICKFORD:  Very well.  These things -- he's

19  saying it doesn't exist.  It might not exist.

20      MR. EHRLICH:  It might not.  I'll check and let you

21  know.

22      MR. BICKFORD:  Okay.  We're about to switch to some

23  different things.  Let's take a break.

24      VIDEOGRAPHER:  We're now going off the record.  The

25  time is approximately 2:35 p.m.
```

| Name: | MICHELE | Name: | | | Phone 1: | | 949-439-8867 |
|---|---|---|---|---|---|---|---|
| Last: | DEL VALLE | Last: | | | Phone 2: | | |
| Address: | | | | | Phone 3: | | |
| City: | | State: | Zip: | | Status: | | |
| Email: | | | | | Income: | | |

EXHIBIT _7_
WIT: BRYSON
DATE: 4-13-16
Leesa Durrant, CSR 11689, RPR

CIRCLE STATUS:   TOL   WN   DIS   NI   CB DATE _____

NQ STATUS:   AG   INC   S

Name 1: _____

Name 2: _____   6 3 10   2 7 77   2 4 01   NB

*Resort Vacations* INCORPORATED

---

| Name: | BRIAN | Name: | | | Phone 1: | ▬▬▬▬ |
|---|---|---|---|---|---|---|
| Last: | DEL VALLE | Last: | | | Phone 2: | |
| Address: | | | | | Phone 3: | |
| City: | | State: | Zip: | | Status: | |
| Email: | | | | | Income: | |

CIRCLE STATUS:   TOL   WN   DIS   NI   CB DATE _____

NQ STATUS:   AG   INC   S

Name 1: _____

Name 2: _____   6 3 10   2 7 77   2 4 01   NB

*Resort Vacations* INCORPORATED

# Exhibit C

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                         COUNTY OF ORANGE
 3
 4
 5
                                          )
 6   MICHELE DEL VALLE, ON BEHALF OF )
     HERSELF AND ALL OTHERS SIMILARLY)
 7   SITUATED,                            )
                                          )
 8                    PLAINTIFFS,    )   CASE NO.
                                     )   30-2014-00745279-
 9      VS.                          )   CU-MC-CXC
                                     )
10   GLOBAL EXCHANGE VACATION CLUB, A)
     CALIFORNIA CORPORATION; AND DOES)
11   1 THROUGH 100, INCLUSIVE,       )
                                     )
12                    DEFENDANTS.    )
     _____)
13
14
15
16
17            DEPOSITION OF MICHELE DEL VALLE
18               THURSDAY, APRIL 14, 2016
19
20
21
22
23
24   REPORTED BY:
     CLAUDIA BADANO, CSR 8974
25
```

1          ARE YOU FAMILIAR WITH A PLACE CALLED THE

2     GROVE?

3          A.   YES.

4          Q.   WHAT IS THE GROVE?

5          A.   I THINK IT'S A SHOPPING CENTER UP HERE.  OH,

6     NO.  THERE'S ONE HERE AND ONE IN ORANGE COUNTY; RIGHT?

7          Q.   OKAY.

8          A.   YEAH.  THE SHOPPING CENTER HERE AND THEN

9     SOMETHING AT THE ANAHEIM STADIUM.

10         Q.   DO YOU REMEMBER EVER GOING UP TO A COMPUTER

11    SCREEN AND FILLING OUT SOMETHING AT THE GROVE FOR A

12    SWEEPSTAKES?

13         A.   YES.

14         Q.   AND APPROXIMATELY WHEN WAS THAT, IF YOU CAN

15    RECALL?  MONTHS AND YEARS ARE FINE.

16         A.   MAYBE A YEAR.  MAYBE A LITTLE OVER A YEAR.  I

17    DON'T REMEMBER THE EXACT TIME.

18         Q.   AND THE ONE YOU WENT TO WHERE YOU DID -- YOU

19    FILLED OUT ON A COMPUTER SCREEN AN ENTRY FOR A

20    SWEEPSTAKES, WAS THAT IN ORANGE COUNTY OR IN

21    LOS ANGELES?

22         A.   ORANGE COUNTY.

23         Q.   ANAHEIM STADIUM?

24         A.   RIGHT.  I JUST DON'T KNOW IT AS THE GROVE.

25    THAT'S WHY IT GOT ME CONFUSED.

1     Q.    UNDERSTOOD.

2           MR. EHRLICH:   LET'S MARK THIS NUMBER 1.

3           (DEFENDANTS' EXHIBIT 1 WAS MARKED FOR

4           IDENTIFICATION AND ATTACHED TO AND

5           MADE A PART OF THIS DEPOSITION.)

6           THE WITNESS:   AM I SUPPOSED TO LOOK AT THIS?

7    BY MR. EHRLICH:

8     Q.    IF YOU WOULD TAKE A SECOND AND JUST REVIEW

9    WHAT WE'VE MARKED AS NUMBER ONE.

10    A.    OKAY.

11    Q.    DOES THIS LOOK FAMILIAR LIKE YOU'VE SEEN ON

12   THE COMPUTER SCREEN BEFORE?

13    A.    YES.

14    Q.    YOU HAVE A RECOLLECTION OF FILLING OUT AN

15   ENTRY INTO THIS SWEEPSTAKES?

16    A.    I DIDN'T FILL IT OUT.  MY BROTHER DID.  I WAS

17   WITH MY BROTHER.  I REMEMBER SEEING IT BECAUSE I WAS

18   STANDING NEXT TO HIM.

19    Q.    WHAT'S YOUR BROTHER'S NAME?

20    A.    BRIAN.  SAME LAST NAME.

21    Q.    WHERE DOES BRIAN LIVE?

22    A.    IN COSTA MESA.  SAME AREA AS ME.

23    Q.    DO YOU KNOW HIS ADDRESS?

24    A.    YEAH.

25          I HAVE TO GIVE HIS ADDRESS?

1        MR. BICKFORD:  WE'LL TAKE CARE OF IT.  DON'T

2   WORRY.  YOU CAN TELL HIM.

3   BY MR. EHRLICH:

4        Q.   I CAN TELL YOU WE'RE NOT GOING TO USE IT FOR

5   ANYTHING; IF WE HAVE TO DEPOSE HIM OR MAYBE SEND SOME

6   QUESTIONS TO HIM.

7        MR. BICKFORD:  AND, MICHELE, THERE'S A

8   PROTECTIVE ORDER IN THIS CASE SO WE CAN KEEP

9   CONFIDENTIAL INFORMATION PRIVATE.  WE'LL DEEM RIGHT NOW

10  THAT HIS ADDRESS IS CONFIDENTIAL.

11        GO AHEAD AND GIVE IT.

12

13                    *Redacted*

14

15

16   Q.   OLDER BROTHER OR YOUNGER BROTHER?

17   A.   YOUNGER.

18   Q.   THE DAY THAT YOU FILLED THAT OUT, WERE YOU

19   WORKING OR WERE YOU ATTENDING AN EVENT?

20   A.   NO.  WE WERE ATTENDING AN EVENT.  A DINNER.  A

21   DINNER SHOW.

22   Q.   WHEN YOUR BROTHER FILLED OUT THE SWEEPSTAKES

23   ENTRY FOR YOU, WERE YOU ABLE TO WATCH HIM DO SO?

24   A.   YEAH.  PRETTY MUCH SO.  I DIDN'T WATCH EVERY

25   SCREEN, I GUESS, THAT HE DID.  I MEAN, I SAW SOME OF

1   THESE SCREENS.  AND THEN HE HAD ASKED ME SOME OF THE

2   THINGS FOR QUESTIONS.

3       Q.   SO I ASSUME AS WE GO THROUGH IT, LET'S GO TO

4   THE FIRST PAGE WHERE IT SAYS, "HOW DID YOU FIND OUT

5   ABOUT TODAY'S EVENT OR LOCATION?"  DO YOU RECALL WHAT,

6   IF ANYTHING, HE PUT ON THAT?

7       A.   NO, I DON'T REMEMBER.

8       Q.   AND HE -- DO YOU RECALL WHETHER HE ALSO FILLED

9   OUT AN ENTRY FOR HIMSELF?

10      A.   YES, YES.

11      Q.   OKAY.  SO ON THE FIRST PAGE HERE WHERE IT

12  SAYS, "TV, RADIO, NEWSPAPER," YOU DON'T RECALL?

13      A.   NO, I DON'T RECALL, NO.

14      Q.   AND I REALIZE IT WAS SOME TIME AGO.

15      A.   RIGHT.

16      Q.   THE SECOND PAGE HERE HAS THE ACTUAL

17  SWEEPSTAKES.  DO YOU RECALL EVER READING --

18      A.   NO.

19      Q.   -- IT?

20      A.   NO.

21      Q.   LET ME JUST FINISH THE QUESTION SO WE HAVE A

22  CLEAR RECORD.

23      A.   SORRY.  SORRY.

24      Q.   IT'S JUST HUMAN NATURE.  IT'S OKAY.  EVERYBODY

25  DOES IT.

1          MR. BICKFORD:  YOU SAID AS A RESULT OF THE --

2          MR. EHRLICH:  FILLING OUT THIS ENTRY.

3          MR. BICKFORD:  FILLING OUT THIS, YEAH.  I

4   THINK YOU KNOW THAT SHE SAID THE 714 AND WE KNOW WHICH

5   NUMBER WAS ACTUALLY ENTERED ON THE SWEEPSTAKES.

6          MR. EHRLICH:  THAT'S WHY WE'LL CLARIFY.

7   AGAIN, I'M NOT HERE TO TRICK YOU.  THAT'S FINE.  IF

8   SOMETHING DOESN'T SOUND RIGHT TO ME, YOU GUYS CAN TALK

9   ABOUT IT ON A BREAK AND WE'LL CLARIFY.

10         THE WITNESS:  OKAY.

11         MR. EHRLICH:  BECAUSE I WANT TO HAVE A CLEAN

12  RECORD.

13         THE WITNESS:  OKAY.

14  BY MR. EHRLICH:

15      Q.   SO WHEN YOUR BROTHER WAS FILLING OUT THE ENTRY

16  FOR THE SWEEPSTAKES TO WIN FOUR VIP TICKETS, DID YOU

17  GIVE HIM THE NUMBERS TO PUT IN?  I SHOULD SAY PHONE

18  NUMBER.

19      A.   I GAVE HIM THE ONE PHONE NUMBER, CORRECT.

20      Q.   PHONE NUMBER.  OKAY.  THE NEXT PAGE, IF YOU

21  TAKE A LOOK AT THE NEXT PAGE, IT HAS PERSONAL

22  INFORMATION.  AND, AGAIN, DID YOUR BROTHER FILL THIS

23  OUT FOR YOU?

24      A.   YES.

25      Q.   AND I DIDN'T ASK YOU BEFORE.  ARE YOU

1      YOU COULD LOOK AT THE THIRD PAGE.

2             MR. BICKFORD:  JUST REAL QUICK, JOE, IF I

3      COULD NOTE AGAIN FOR THE RECORD, ALL HIGHLIGHTS WERE

4      MADE BY PLAINTIFFS' COUNSEL.

5             MR. EHRLICH:  CORRECT.  THANK YOU.

6        Q.   ON THE THIRD PAGE OF THIS DOCUMENT

7      HIGHLIGHTED, IT APPEARS THAT ON THURSDAY, DECEMBER 4TH,

8      THERE WAS AN INCOMING CALL AT 7:22 P.M. FROM █████

9      ██████.  DO YOU RECALL THAT PHONE NUMBER CALL OR ANY

10     PHONE CALL ABOUT THAT TIME I SHOULD SAY?

11       A.   YOU KNOW, I HAVE SO MANY PHONE CALLS COMING

12     IN, SO I CAN'T -- YEAH.  I WOULD HAVE TO SAY NO, I

13     DON'T.

14       Q.   OKAY.

15       A.   BUT I WOULDN'T REMEMBER ANY OF THESE.

16       Q.   I UNDERSTAND.

17       A.   OKAY.

18       Q.   JUST GIVE ME YOUR ANSWER AND I'LL TRY TO HELP

19     YOU OUT SO WE CAN GET TO THE TOPIC MATTER.

20       A.   I JUST WANT TO CLARIFY.

21       Q.   I UNDERSTAND.  SO LET'S KEEP GOING FOR A

22     SECOND.  IF YOU COULD TAKE A LOOK AT TWO PAGES LATER,

23     ON THAT PAGE IT SAYS AT THE BOTTOM "DEL VALLE 76."

24       A.   OKAY.

25       Q.   IT APPEARS ON 12-14 THERE WAS ANOTHER INCOMING

1    HAVE MADE CALLS TO THE COMPANY.

2         Q.   OKAY.  AND THAT'S WHAT I'M GOING TO GET INTO

3    IN A SECOND.

4         A.   OKAY.

5         Q.   AND, AGAIN, YOU WERE NOT CHARGED FOR THAT

6    CALL?

7         A.   NO.

8         Q.   WHEN I SAY "CHARGED," I MEAN ANYTHING EXTRA.

9         A.   RIGHT.

10        Q.   SO THE CALLS THAT ARE THE BASIS FOR YOUR

11   COMPLAINT -- YOUR CLAIM IN THIS CASE -- IN YOUR MIND

12   WHATEVER YOU CAN RECOLLECT, CAN YOU GIVE ME THE

13   SEQUENCE OF WHAT OCCURRED?  IN OTHER WORDS, DID SOMEONE

14   CALL AND LEAVE A MESSAGE?  DID SOMEONE TRY TO CALL YOU?

15   DID YOU GET A CALL?  DID YOU CALL SOMEONE BACK?  THAT'S

16   WHAT I'M TRYING TO ASCERTAIN.

17        A.   OKAY.  SO YOU WANT ME TO DESCRIBE WHAT -- WITH

18   THIS COMPANY.

19        Q.   AS BEST YOU CAN RECALL WHAT HAPPENED.

20        A.   OKAY.  I DID GET A CALL.  I SPOKE WITH

21   SOMEBODY.  THEN AFTER THE -- I DID GO SEE THE

22   PRESENTATION.  AND THEN AFTER THE PRESENTATION WAS

23   FINISHED, WITHIN I THINK A DAY OR TWO DAYS I WAS

24   GETTING CALLS AGAIN.  THEY ASKED ME TO GIVE THEM

25   NUMBERS OF FRIENDS OR FAMILY.  I SAID NO.  THEY KEPT

```
 1   CALLING.

 2            AND THEN I DON'T -- THERE CAME A TIME WHERE I

 3   WAS SO FRUSTRATED THAT I DID SOME RESEARCH TO TRY AND

 4   FIND A COMPANY -- WHAT I REMEMBER IS ASKING THE PEOPLE

 5   WHERE ARE YOU CALLING FROM.

 6       Q.   OKAY.

 7       A.   AND THEN THEY WOULD -- I DON'T REMEMBER IF

 8   THEY TOLD ME, BUT SINCE THEY ALL HAD A FILIPINO ACCENT,

 9   I KNEW THEY WERE FROM THE PHILIPPINES, SO I FINALLY

10   DECIDED THAT I WAS GOING TO DO SOME RESEARCH AND TRY

11   AND FIND THE COMPANY IN THE UNITED STATES.

12            I BELIEVE I DID RESEARCH ON THE INTERNET,

13   FINALLY CAME WITH A NUMBER THAT WAS LOCATED IN IRVINE.

14   AND I CALLED.  I ASKED FOR A SUPERVISOR.  I SPOKE WITH

15   A SUPERVISOR AND I TOLD HIM HOW FRUSTRATED I WAS THAT

16   THEIR COMPANY KEPT CALLING ME.  I ASKED THEM TO STOP

17   CALLING ME, AND I WANT MY NUMBER TAKEN OFF OF THEIR

18   CALL LIST.

19            AND HE ACTUALLY SAID HE WAS VERY SORRY.  HE

20   WOULD -- THAT HE WOULD GET AHOLD OF WHOEVER IS CALLING

21   AND HAVE MY PHONE NUMBER TAKEN OFF.

22       Q.   DID THE CALLS STOP?

23       A.   NO.

24       Q.   APPROXIMATELY HOW MANY MORE CALLS DID YOU GET?

25       A.   I CAN'T TELL YOU HOW MANY MORE, BUT I --
```

1        Q.    APPROXIMATELY.

2        A.    I COULDN'T GIVE YOU A NUMBER.

3        Q.    OKAY.

4        A.    HONESTLY.  YEAH, I COULDN'T GIVE YOU A NUMBER.

5   IT JUST -- THE VOLUME OF IT DIDN'T STOP.

6        Q.    OKAY.

7        A.    AND THEN I CALLED THE COMPANY AGAIN.

8        Q.    OKAY.

9        A.    I CALLED THE IRVINE COMPANY AGAIN.  GOT A

10  DIFFERENT SUPERVISOR.  ADVISED HIM AGAIN, AND HE ALSO

11  GAVE ME THE SAME STORY.  AND THE CALLS DIDN'T STOP.

12       Q.    SO THE CALLS YOU WERE GETTING ARE MORE THAN

13  THE CALLS YOU'VE SEEN SO FAR RIGHT HERE?

14       A.    YEAH.  WHAT I REMEMBER, YEAH.  I DO REMEMBER

15  MORE.

16       Q.    APPROXIMATELY IN TOTAL, WERE THERE MORE THAN

17  TEN CALLS?

18       A.    OVER THE WHOLE COURSE OF TIME?

19       Q.    YES.

20       A.    OH, GOSH, YES.

21       Q.    MORE THAN 20?

22       A.    I COULDN'T GIVE YOU -- OVER TEN I COULD SAY

23  YES.  BUT OVER ANOTHER NUMBER I CAN'T TELL YOU.

24       Q.    ALL ON THE SAME PHONE NUMBER?

25       A.    YOU KNOW, THAT I COULDN'T REMEMBER.  I

1    HONESTLY COULDN'T REMEMBER.

2        Q.    DO YOU KNOW THE NAME OF THE COMPANY THAT YOU

3    WENT TO WHEN YOU ATTENDED THE PRESENTATION?

4        A.    ISN'T IT GLOBAL -- GLOBAL, SOMETHING,

5    EXCHANGE.  I KNOW IT WAS A TIMESHARE.

6        Q.    OKAY.

7        A.    VACATION TIMESHARE.

8        Q.    AND WHERE WAS IT?

9        A.    I WENT TO ONTARIO.

10       Q.    DO YOU REMEMBER THE DATE YOU WENT?

11       A.    NO.

12       Q.    APPROXIMATELY MONTH?

13       A.    NO.

14       Q.    DID YOU GET A GIFT FOR ATTENDING?

15       A.    I DID.

16       Q.    DO YOU RECALL WHAT YOU RECEIVED?

17       A.    I RECEIVED A GIFT CERTIFICATE FOR

18   RESTAURANT.COM AND A VOUCHER FOR A FREE TRAVEL

19   SOMEWHERE.

20       Q.    DID YOU USE THE RESTAURANT.COM CERTIFICATE?

21       A.    I USED SOME OF IT.

22       Q.    OKAY.  DO YOU RECALL WHAT IT ENTAILED?

23       A.    I BELIEVE IT WAS GOING ON THE WEBSITE, I

24   THINK, AND CHOOSING A RESTAURANT AND THAT WAS IT.  AND

25   THEN JUST GETTING A COUPON TO GO INTO THAT RESTAURANT.

1      Q.    TO GET EITHER A FREE MEAL OR A DISCOUNT OR

2   SOMETHING LIKE THAT?

3      A.    RIGHT, YES.

4      Q.    AND HOW ABOUT THE TRAVEL CERTIFICATE, DO YOU

5   RECALL WHAT THAT ENTITLED YOU TO?

6      A.    I THINK IT WAS TO VEGAS OR SAN FRANCISCO.  I

7   DON'T KNOW WHAT THE WHOLE THING ENTITLED -- IT ALL

8   INCLUDED OR ANYTHING BECAUSE I NEVER USED IT.

9      Q.    WHEN YOU CALLED TWICE TO THE COMPANY TO STOP

10   THE CALLS, DO YOU RECALL ANY NAMES OF ANYONE YOU SPOKE

11   TO?

12      A.    I WISH I DID, BUT I DON'T.

13      Q.    LET'S JUST GO BACK TO EXHIBIT 4 FOR A SECOND.

14   THERE ARE A COUPLE MORE NUMBERS ON HERE OR ANOTHER

15   NUMBER THAT I ALSO WANT TO CHECK.  SO ON 10:54 -- LET'S

16   GO TO 766, I'M SORRY.  LET'S GO TO PAGE 766.

17      A.    OKAY.

18      Q.    ON DECEMBER 17 AT 10:54, THERE'S A CALL TO

19   ORANGE COUNTY, ███ ████.  IT LOOKS LIKE ONE

20   MINUTE.  WHEN YOU CALLED -- YOU DON'T RECOLLECT WHAT

21   THAT CALL WAS ALL ABOUT?

22      A.    I DON'T.

23      Q.    OKAY.  WHEN YOU CALLED TO -- STRIKE THAT.

24            PRIOR TO GOING TO THE PRESENTATION, DO YOU

25   RECALL WHETHER OR NOT YOU EVER CALLED ANYONE TO CONFIRM

1      Q.   OKAY.  PRIOR TO ATTENDING THE TIMESHARE

2   PRESENTATION, DID THE TIMESHARE COMPANY MAIL YOU

3   ANYTHING?

4      A.   I DON'T THINK SO.

5      Q.   PRIOR TO ATTENDING THE PRESENTATION, DID THE

6   TIMESHARE COMPANY E-MAIL YOU ANY INFORMATION?

7      A.   I DON'T REMEMBER ON THAT.

8      Q.   IF THEY DID, WOULD YOU STILL HAVE IT?

9      A.   PROBABLY NOT.

10      Q.   YOU PROBABLY WOULD HAVE COMPLETED IT?

11      A.   PROBABLY.  I THINK MY E-MAILS ONLY STAY FOR SO

12   LONG.

13      Q.   OKAY.  IF YOU CAN RECALL, PRIOR TO ATTENDING

14   THE PRESENTATION -- AND, AGAIN, I ASKED THIS BEFORE BUT

15   THIS IS A LITTLE MORE DETAIL -- DID ANYONE CALL YOU TO

16   CONFIRM YOUR AGE, YOUR INCOME, ANYTHING OF THAT NATURE?

17      A.   I DON'T.

18      Q.   YOUR ADDRESS?

19      A.   I DON'T REMEMBER THAT EVER HAPPENING.  FROM

20   WHAT I CAN REMEMBER, CALLING -- THE PERSON WHO CALLED

21   ME AND I SET UP THE TIME I BELIEVE WAS A VERY SHORT

22   TIME SPAN FROM ME GOING TO IT, SO THAT'S ALL I CAN

23   REMEMBER.

24      Q.   ON THAT CALL WHEN IT WAS SET UP, THAT WAS ONE

25   OF THESE -- WAS THAT PERSON FILIPINO THAT CALLED YOU?

1     A.   YES.

2     Q.   AND THEY HAD TO TELL YOU WHERE TO GO AND WHAT

3   TIME TO GO; CORRECT?

4     A.   RIGHT.

5     Q.   AND AS YOU SIT HERE TODAY, YOU DON'T RECALL

6   WHETHER THEY E-MAILED YOU OR THEY MAILED YOU ANY

7   INFORMATION PRIOR TO YOU ATTENDING?

8     A.   I DON'T RECALL, NO.

9     Q.   OKAY.  WHEN YOU SAY YOU DON'T RECALL, YOU

10   DON'T REMEMBER THAT HAPPENING OR YOU DON'T REMEMBER IF

11   IT DID ONE WAY OR THE OTHER?

12     A.   YEAH, I DON'T REMEMBER IF IT DID ONE WAY OR

13   THE OTHER.

14     Q.   AT THAT TIME, DID YOU WRITE SOMETHING DOWN TO

15   REMIND YOU OR IN YOUR APPOINTMENT BOOK OR YOUR CALENDAR

16   OR ANYTHING LIKE THAT TO TELL YOU WHERE TO GO WHEN?

17     A.   I'M SURE I WROTE SOMETHING DOWN, BUT IT

18   PROBABLY WAS ON A PIECE OF PAPER THAT I TOOK WITH ME

19   WITH DIRECTIONS.

20     Q.   OKAY.

21     A.   THAT'S THE ONLY THING I CAN THINK OF.

22     Q.   WHEN YOU ATTENDED THE TIMESHARE PRESENTATION,

23   DO YOU RECALL WHAT COMPANY THEY WERE SELLING THE

24   TIMESHARE FOR OR THE NAME OF THE TIMESHARE, ANYTHING

25   LIKE THAT?

1       A.   I KNOW IT HAD GLOBAL IN IT, THE GLOBAL -- ALL

2    I CAN REMEMBER IS THE TWO WORDS GLOBAL AND EXCHANGE.

3       Q.   OKAY.  GLOBAL EXCHANGE?

4       A.   SOMETHING LIKE THAT.  I ONLY REMEMBER THE TWO

5    WORDS.

6       Q.   YOU EARLIER TESTIFIED THAT YOU ATTENDED A

7    PRESENTATION AND THEN A DAY OR TWO LATER YOU STARTED

8    GETTING CALLS AGAIN.

9       A.   YES.

10       Q.   PRIOR TO ATTENDING THE PRESENTATION, WERE YOU

11    GETTING REGULAR CALLS?

12       A.   FROM --

13       Q.   FROM SOMEONE WITH A FILIPINO ACCENT?

14       A.   NO.

15       Q.   PRIOR TO ATTENDING THE PRESENTATION,

16    APPROXIMATELY HOW MANY CALLS THAT YOU ANSWERED AND

17    SPOKE TO?  WAS IT ONLY THAT ONE CALL WITH THE GENTLEMAN

18    WITH THE FILIPINO ACCENT?

19       A.   NO.

20       Q.   APPROXIMATELY HOW MANY CALLS?

21       A.   I DON'T REMEMBER HOW MANY CALLS, BUT WHAT I DO

22    REMEMBER IS I GAVE IN TO GOING TO THE PRESENTATION SO

23    HE WOULD STOP CALLING.

24       Q.   OKAY.  SO HE HAD CALLED YOU -- SOMEONE HAD

25    CALLED YOU A NUMBER OF TIMES?

1      A.   RIGHT, YES.

2      Q.   IF YOU RECEIVED ALL THOSE CALLS, THEY SHOULD

3   BE SOMEWHERE IN YOUR RECORDS; IS THAT CORRECT?

4      A.   THEY SHOULD BE, YES.

5      Q.   OKAY.  AND WERE THEY ALL IN THIS SAME TIME

6   FRAME OF NOVEMBER, DECEMBER 2014?

7      A.   FROM WHAT I REMEMBER, IT'S IN THE SAME EITHER

8   24 TO 48 HOURS.

9      Q.   ALL THE CALLS?

10     A.   WHEN I FINALLY SAID I WILL GO.  BECAUSE THEY

11  KEPT -- THEY KEPT CALLING.

12     Q.   OKAY.  SO I'M JUST GOING TO MAKE SURE I GET

13  THIS RIGHT.  WITHIN 24, 48 HOURS OF AGREEING OF GOING

14  TO THE TIMESHARE PRESENTATION, YOU RECEIVED A BARRAGE

15  OF CALLS?

16          MR. BICKFORD:  MISSTATES TESTIMONY.

17          MR. EHRLICH:  THAT'S WHAT I'M TRYING TO

18  CLARIFY.  ALL THESE CALLS YOU GOT, YOU FINALLY GAVE IN.

19          THE WITNESS:  RIGHT.

20  BY MR. EHRLICH:

21     Q.   ABOUT HOW MUCH TIME PASSED BEFORE YOU GAVE IN,

22  FROM THE FIRST CALL TO WHEN YOU GAVE IN ABOUT?

23     A.   I COULDN'T EVEN TELL YOU.

24     Q.   ARE WE TALKING WEEKS?  DAYS?

25     A.   OH, GOSH, NO.  WITHIN THOSE 28, 48 HOURS.

1    A.    TO GIVE YOU THE EXACT DATE OR MONTH IS VERY

2    HARD FOR ME TO REMEMBER.

3    Q.    RIGHT.  I'M LOOKING AT THE PHONE RECORDS AND

4    THE ONES THAT ARE UNDERLINED SEEM TO BE RELATED TO THIS

5    CASE.  OKAY.

6         LET'S GO BACK AND SEE WHAT YOU RECALL A LITTLE

7    BIT MORE.  YOU RECEIVED A NUMBER OF CALLS WITHIN 24, 48

8    HOURS.  ALWAYS A GENTLEMAN WITH A FILIPINO ACCENT?

9    A.    ALWAYS.

10    Q.    WAS IT THE SAME GUY?  CAN YOU TELL?

11    A.    I CAN'T TELL.

12    Q.    IT WAS A GENTLEMAN THOUGH?

13    A.    I DO REMEMBER A COUPLE OF TIMES OF A LADY, BUT

14    VERY RARELY.  AND I CAN'T SAY SPECIFICALLY IT WAS THAT

15    TIME.  OVER THE COURSE OF ALL THE CALLS THAT I'VE

16    GOTTEN, I DO REMEMBER THERE WERE A FEW TIMES THERE WERE

17    LADIES.

18    Q.    SO THE LADY MAY NOT HAVE BEEN AT THE VERY

19    BEGINNING?

20    A.    THE VERY BEGINNING THE GENTLEMAN OR THE --

21    THEY WERE MEN.

22    Q.    MEN.

23    A.    YES.

24    Q.    OKAY.  AND THEN A SHORT PERIOD OF TIME PASSED.

25    YOU WENT TO THE PRESENTATION.

1      A.   YES.

2      Q.   AND THEN I HAVE HERE A DAY OR TWO LATER GOT

3    CALLS AGAIN.

4      A.   YES.

5      Q.   AND HOW OFTEN WERE THESE CALLS?

6      A.   I COULDN'T -- I COULDN'T GIVE YOU --

7      Q.   MORE THAN ONE A DAY?

8      A.   YES.  AND FROM WHAT I REMEMBER, THERE WERE

9    DIFFERENT NUMBERS THAT THEY WERE USING.  SOMETIMES THEY

10   WERE 949 NUMBERS, AND OF COURSE I WOULD PICK THOSE UP

11   BECAUSE IT WAS LOCAL.  THAT WAS MY AREA CODE.

12     Q.   RIGHT.

13     A.   SOMETIMES THERE WERE PRIVATE NUMBERS AND THEN

14   THE WEIRD NUMBERS.  BUT I THINK -- I THINK I STOPPED

15   TRYING TO ANSWER THOSE WEIRD NUMBERS, AND THEN THAT'S

16   WHEN I STARTED GETTING THE 949 NUMBERS.

17     Q.   WHEN YOU SAY "WEIRD NUMBERS," DOES THAT MEAN

18   AREA CODES YOU DIDN'T RECOGNIZE?

19     A.   YES.  YEAH.

20     Q.   AFTER YOU ATTENDED THE PRESENTATION AND YOU

21   STARTED GETTING CALLS AGAIN, WERE THEY TRYING TO GET

22   YOU TO ATTEND THE PRESENTATION OR WERE THEY ONLY ASKING

23   FOR NUMBERS OF FAMILY AND FRIENDS?

24     A.   I DO REMEMBER THAT THEY DID TRY TO GET ME TO

25   ATTEND A PRESENTATION BECAUSE THEN I WOULD HAVE TO TELL

1      THEM, "LOOK, I DID GO."  AND I'M REMEMBERING THAT I

2      THINK THAT'S WHERE LIKE FRUSTRATION STARTED SETTING IN

3      EVEN MORE SO BECAUSE I DID GO AND THEN THESE PEOPLE

4      WERE CALLING ME AGAIN.

5          Q.   OKAY.  IF YOU RECALL, DID THE FILIPINO MEN OR

6      THE LADY, WERE THEY TRYING TO GET YOU TO GO TO THE SAME

7      PLACE?

8          A.   YES.

9          Q.   TO THIS GLOBAL EXCHANGE PLACE?

10         A.   YES.

11         Q.   AND WHEN YOU SAY YOU DID RESEARCH ON THE

12     COMPANY, DO YOU RECALL WHAT YOU LOOKED UP?  EXCUSE ME.

13     LET ME ASK YOU ANOTHER QUESTION.

14              WHEN YOU SAY YOU DID RESEARCH, YOU WENT ONLINE

15     TO DO THE RESEARCH?

16         A.   RIGHT.

17         Q.   AND DO YOU RECALL WHAT YOU LOOKED UP?

18         A.   WELL, I LOOKED UP, I'M SURE, THE NAME OF THAT

19     COMPANY.  AND THEN I DON'T KNOW -- I KNOW THAT BACK

20     THEN I STILL WASN'T THAT COMPUTER SAVVY, SO IN THE WAY

21     OF RESEARCH I WOULD START TYPING IN DIFFERENT THINGS TO

22     BE ABLE -- YOU KNOW, LIKE THE AREA, ORANGE COUNTY,

23     THINGS LIKE THAT TO BE ABLE TO GET THE PHONE NUMBER.

24         Q.   AND DID YOU MAKE COPIES OR SAVE ANYTHING OF

25     WHAT YOU RESEARCHED?

1      A.    I DID NOT.

2      Q.    AND YOU FOUND A NUMBER IN IRVINE THAT YOU

3   CALLED AND SPOKE TO THE SUPERVISOR; RIGHT?

4      A.    RIGHT.

5      Q.    YOU DON'T RECALL HIS NAME?

6      A.    NO.

7      Q.    WAS THERE ANYTHING IN THE PHONE CALL THAT YOU

8   HAD WITH THE SUPERVISOR THAT STOOD OUT OTHER THAN WHAT

9   YOU'VE TESTIFIED TO ALREADY?

10      A.    SHORT AND SWEET.

11      Q.    SO MY NOTES -- THESE ARE MY NOTES, BUT JUST

12   SUMMARIZING WHAT YOU SAID:  YOU TOLD HIM HOW FRUSTRATED

13   YOU WERE.  HE SAID HE WAS SORRY AND HE SAID HE WOULD

14   HAVE YOU TAKEN OFF THE CALL LIST.  YOU RECALL THAT?

15      A.    THAT'S CORRECT.

16      Q.    BUT THE CALLS DIDN'T STOP?

17      A.    NO.

18      Q.    WHAT I'M LOOKING FOR RIGHT NOW IS JUST YOUR

19   BEST RECOLLECTION.  FROM THE TIME YOU ATTENDED THE

20   PRESENTATION TO WHEN YOU CALLED THE SUPERVISOR, ABOUT

21   HOW MUCH TIME HAD ELAPSED?  AND I KNOW, AGAIN, WE'RE

22   GOING BACK.  JUST YOUR BEST ESTIMATE.

23      A.    MY BEST ESTIMATE, TWO TO THREE MONTHS.

24      Q.    YOU WERE GETTING CALLS FOR THAT LONG?

25      A.    OH, YEAH, YEAH.

1        Q.    DURING THIS TIME.

2        A.    FROM WHAT I REMEMBER, THAT'S IT.

3        Q.    AMAZON, CRAIGSLIST?

4        A.    RIGHT.

5        Q.    WE'LL GET BACK TO THAT LATER.

6        A.    OKAY.

7        Q.    BEFORE AS I WAS GOING THROUGH THIS SUMMARY OF

8    WHAT YOU TOLD ME HAPPENED, YOU HAD SPOKEN TO THE

9    SUPERVISOR.  THE CALLS DID NOT STOP.  YOU CALLED IRVINE

10   AGAIN AND YOU SPOKE TO SOMEONE THERE AGAIN; CORRECT?

11       A.    YES.

12       Q.    DO YOU RECALL ABOUT HOW LONG THE SECOND PHONE

13   CALL WAS?

14       A.    I HONESTLY COULDN'T TELL YOU.

15       Q.    A FEW MINUTES?

16       A.    HOW LONG IT WAS?

17       Q.    YEAH.

18       A.    ALL I CAN REMEMBER, IT WAS LESS THAN THE FIRST

19   ONE.

20       Q.    OKAY.

21       A.    YEAH.

22       Q.    AND YOUR BEST RECOLLECTION IS HE SAID THAT HE

23   WOULD TAKE YOU OFF THE LIST AND TRY TO STOP THE CALLS?

24       A.    YES.

25       Q.    BUT THE CALLS DIDN'T STOP?

1       A.    NO.

2       Q.    AFTER THE SECOND CALL, I BELIEVE YOU TESTIFIED

3   YOU HAD MORE THAN TEN CALLS AFTER THAT.

4       A.    YES.

5       Q.    SO SPOKE TO THE SUPERVISOR FOR A SECOND TIME,

6   AT LEAST TEN CALLS?

7       A.    YES.

8       Q.    AND, AGAIN, ONLY BECAUSE I'VE MOVED FORWARD A

9   LITTLE BIT, THE CALLS THAT CAME AFTER THE SECOND TIME,

10  YOU DON'T SPECIFICALLY REMEMBER ON WHICH PHONE NUMBER?

11      A.    NO, I CAN'T.

12      Q.    CAN YOU RECALL WHETHER OR NOT YOU EVER

13  RECEIVED ANY OF THESE ANNOYING CALLS ON THE

14  (714) 325-7358 NUMBER?

15      A.    I CAN'T RECALL, NO.

16      Q.    AS FAR AS THE 8867 NUMBER OR THE 2405, DO YOU

17  HAVE ANY RECOLLECTION WHETHER YOU SEEMED TO GET MORE ON

18  ONE OR THE OTHER?

19      A.    THERE WAS ONE NUMBER, BUT I CAN'T TELL YOU

20  WHICH NUMBER IT WAS.

21      Q.    OKAY.

22      A.    BECAUSE I ALWAYS HAD THOSE PHONES WITH ME,

23  SO...

24      Q.    OKAY.

25      A.    TO REMEMBER THREE PHONE CALLS -- THREE PHONES

1    AS TO WHAT CALL WENT ON WHAT PHONE IS KIND OF

2    DIFFICULT.

3         Q.   DO YOU STILL HAVE YOUR RESTAURANT.COM

4    CERTIFICATE?

5         A.   NO.

6         Q.   DO YOU STILL HAVE ANYTHING THAT WOULD ALLOW

7    YOU TO USE THE REST OF IT?  I THINK YOU SAID YOU USED

8    PART OF IT.

9         A.   NO.

10        Q.   YOU HAVE NOTHING RELATED TO THAT?

11        A.   NO.

12        Q.   AND ONLINE, YOU DON'T HAVE ANYTHING?

13        A.   NO.

14        Q.   AND THE CERTIFICATE THAT ENTITLED YOU TO GO TO

15   EITHER LAS VEGAS OR SAN FRANCISCO, DO YOU STILL HAVE

16   THAT CERTIFICATE?

17        A.   NO.  I THREW IT OUT.  IT HAD AN EXPIRATION

18   DATE.

19        Q.   OKAY.  DO YOU HAVE ANYTHING ONLINE ANYWHERE

20   THAT REFERS TO IT THAT WOULD -- PERHAPS SOMETHING THAT

21   REFERS TO IT OR RELATED TO IT?

22        A.   NOT THAT I CAN RECALL.

23        Q.   OKAY.  LET'S MOVE ON TO -- OH, LET ME ASK YOU:

24   DID THERE COME A TIME WHEN THE PHONE CALLS FINALLY

25   STOPPED?

1       A.   YES.

2       Q.   AND APPROXIMATELY HOW LONG AFTER YOUR CALLS TO

3   THE SUPERVISOR THE SECOND TIME DID THAT OCCUR?

4       A.   I CAN'T REALLY THINK THAT THERE WAS ANY THAT

5   STOPPED -- I CAN'T -- HOW CAN I PHRASE THIS?  I CAN'T

6   SAY THAT THE CALLS HAD ANYTHING TO DO WITH THAT

7   PARTICULAR CALL.  I BELIEVE THEY STOPPED CALLING AFTER

8   I HAD SPOKEN WITH MY ATTORNEY.

9       Q.   OKAY.  AND ABOUT HOW -- IN YOUR MIND, CAN YOU

10  RECOLLECT APPROXIMATELY HOW MUCH TIME PASSED FROM WHEN

11  YOU SPOKE TO THE SUPERVISOR THE SECOND TIME AND THE

12  CALLS STOPPED OR YOU SPOKE TO YOUR ATTORNEY AND THE

13  CALLS STOPPED?

14      A.   YEAH, NO.  I WISH I COULD.

15      Q.   DO YOU RECALL ABOUT WHEN IT WAS THAT YOU

16  CALLED MR. BICKFORD?  OR WAS IT MR. BICKFORD THAT YOU

17  CALLED?

18      A.   YES.

19      Q.   JUST MONTH, YEAR, IF YOU COULD TELL ME.

20      A.   I DON'T.  THE ONLY WAY I COULD MAYBE EVEN

21  THINK OF WHEN THE TIME SPAN WAS IS WHEN I DID MY YELP

22  REVIEW.

23      Q.   DO YOU REMEMBER WHEN YOU DID THE YELP REVIEW?

24      A.   NO.  I'D HAVE TO LOOK ON MY YELP ACCOUNT.

25      Q.   I HAVE SOME YELP REVIEWS THAT I'LL SHOW YOU

1      WHEN WE TAKE A SHORT BREAK RIGHT BEFORE WE FINISH.

2      MAYBE YOU CAN FIND IT FOR ME.

3          A.   OKAY.

4          Q.   SO IT WAS AFTER YOU DID YOUR YELP REVIEW OR

5      ABOUT THAT TIME THAT YOU SPOKE TO MR. BICKFORD?

6          A.   YES.

7          Q.   IF I SAY A COMPLAINT WAS FILED WITH THE

8      COURTS, DO YOU UNDERSTAND WHAT I'M TALKING ABOUT?

9          A.   YES.

10         Q.   DO YOU RECALL WHETHER OR NOT THE CALLS STOPPED

11     AFTER THE COMPLAINT WAS FILED WITH THE COURT OR DID IT

12     STOP PRIOR TO THAT?

13         A.   I DON'T RECALL, NO.

14         Q.   IN THAT TIME PERIOD, THOUGH?

15         A.   YEAH.   AROUND, PROBABLY, YES.

16         Q.   IF YOU CAN RECALL FROM WHEN YOU FIRST SPOKE TO

17     MR. BICKFORD UNTIL THE COMPLAINT WAS FILED WITH THE

18     COURTS, IF YOU KNOW THAT, DO YOU KNOW ABOUT HOW MUCH

19     TIME PASSED?

20         A.   NO.

21         Q.   REGARDING CRAIGSLIST, DO YOU RECALL WHEN YOU

22     FIRST BEGAN PUTTING ADS ON CRAIGSLIST?

23         A.   OH, GOSH, 15 YEARS, MAYBE 20.

24         Q.   OKAY.

25              MR. EHRLICH:   OFF THE RECORD.

1      Q.   APPROXIMATELY HOW MANY ITEMS WOULD YOU HAVE ON

2   AMAZON AT THAT TIME AT ONE TIME?

3      A.   VERY FEW.  MAYBE FIVE AT THAT TIME.  FIVE TO

4   TEN.

5      Q.   OKAY.

6           MR. EHRLICH:  LET'S TAKE ANOTHER BREAK.  I'M

7   GOING TO FIND THE YELP REVIEW AND I CAN PRETTY MUCH

8   GUARANTEE YOU WE'LL BE DONE BEFORE 12:30.

9                     (RECESS TAKEN.)

10          MR. EHRLICH:  LET'S MARK THIS NEXT IN ORDER.

11          (DEFENDANTS' EXHIBIT 5 WAS MARKED FOR

12          IDENTIFICATION AND ATTACHED TO AND

13          MADE A PART OF THIS DEPOSITION.)

14   BY MR. EHRLICH:

15     Q.   I'D LIKE TO SHOW YOU WHAT'S BEEN MARKED AS

16   EXHIBIT 5, YELP REVIEWS FROM GLOBAL EXCHANGE.  DID YOU

17   COMPILE THAT?

18     A.   ARE YOU TALKING TO ME?

19     Q.   YES.  DID YOU MAKE THAT COMPILATION?

20     A.   NO.

21     Q.   THAT'S ALL I HAVE ON THAT.

22          I'D LIKE TO GO BACK TO WHEN YOU ATTENDED THE

23   PRESENTATION, TIMESHARE PRESENTATION.

24     A.   OKAY.

25     Q.   AS YOU SIT HERE TODAY, CAN YOU REMEMBER

```
 1    APPROXIMATELY WHAT MONTH IT WAS AND YEAR?

 2         A.   I'M SORRY, NO.

 3         Q.   OKAY.  YOU TESTIFIED EARLIER THAT YOU

 4    CONTACTED MR. BICKFORD AFTER YOU ATTENDED THE TIMESHARE

 5    PRESENTATION; CORRECT?

 6         A.   YES.

 7         Q.   YOU STARTED GETTING CALLS AGAIN?

 8         A.   RIGHT.

 9         Q.   YOU SPOKE TO A SUPERVISOR --

10         A.   YES.

11         Q.   --AT GLOBAL EXCHANGE?

12         A.   YES.

13         Q.   GOT CALLS AGAIN?

14         A.   YES.

15         Q.   SPOKE TO A SUPERVISOR AGAIN?

16         A.   CORRECT.

17         Q.   AND FINALLY WENT TO SEE MR. BICKFORD?

18         A.   YES.

19         Q.   AND THEN AFTER YOU SAW MR. BICKFORD, THE CALLS

20    STOPPED?  NOT COMPLETELY?

21         A.   NO.

22         Q.   DID YOU GET LESS CALLS WITH THE FILIPINO --

23         A.   YES.

24         Q.   CAN YOU RECALL WHETHER OR NOT THEY ALWAYS

25    SAID -- I'M TALKING ABOUT AFTER YOU SAW MR. BICKFORD.
```

1    DID THEY STILL REFERENCE GLOBAL EXCHANGE, IF YOU CAN

2    RECALL?

3         A.   NO.   BECAUSE IN MY MIND WHEN I HEARD A

4    FILIPINO, IT WAS LIKE I WAS PISSED.

5         Q.   RIGHT.

6         A.   SO I DON'T RECALL.   I STARTED YELLING AND

7    SCREAMING IN THE PHONE, SO SORRY.   I DON'T RECALL WHAT

8    THEY SAID.

9         Q.   SO YOU ATTENDED THE PRESENTATION FOR THE

10   TIMESHARE?

11        A.   RIGHT.

12        Q.   BEFORE YOU SAW MR. BICKFORD?

13        A.   YES.

14        Q.   APPROXIMATELY HOW MUCH TIME PASSED FROM THE

15   PRESENTATION, AGAIN, WHETHER IT'S THREE MONTHS, SIX

16   MONTHS, EIGHT MONTHS?

17        A.   YOU KNOW, IT WOULD BE A GUESS.

18        Q.   TOTAL GUESS?

19        A.   SO YOU ARE OKAY WITH A GUESS?

20        Q.   NO, I DON'T WANT A GUESS.   IF YOU CAN SAY IT

21   WAS PROBABLY MORE THAN THREE MONTHS BUT LESS THAN SIX

22   MONTHS OR SOMETHING LIKE THAT.   IT DOESN'T HAVE TO BE

23   EXACT OR EVEN CLOSE TO EXACT.   BUT IF YOU HAVE NO

24   RECOLLECTION --

25        A.   BUT THAT'S STILL A GUESS.

1        Q.    I UNDERSTAND.

2              MR. BICKFORD:  WHAT HE'S TRYING TO DO IS GET

3        YOUR BEST RECOLLECTION, SO CERTAINLY IT WASN'T TEN

4        YEARS, IT WASN'T THAT?

5              THE WITNESS:  OH, OKAY.

6              MR. BICKFORD:  SO IF THE BEST RANGE YOU CAN

7        GIVE IS --

8              THE WITNESS:  THREE TO SIX IS GOOD, I GUESS.

9        BY MR. EHRLICH:

10       Q.    ABOUT THAT?

11       A.    YES.

12       Q.    IT COULD BE A MONTH MORE, A MONTH LESS?

13       A.    EXACTLY.

14       Q.    THAT'S ALL I WAS ASKING.  AND YOU ARE VERY

15       SURE THIS TIMESHARE PRESENTATION YOU HAD TO GO TO

16       ONTARIO?

17       A.    THAT'S WHAT CITY -- YES.  BECAUSE I REMEMBER

18       DRIVING THERE AND THINKING WHAT DID I GET MYSELF INTO.

19       IT WAS FAR.

20       Q.    UNDERSTOOD.  UNDERSTOOD.  DO YOU REMEMBER WHAT

21       SEASON IT WAS WHEN YOU WENT OUT THERE?  IT'S HARDER

22       HERE BECAUSE THE WEATHER SEEMS TO BE THE SAME A LOT.

23       A.    YEAH.  ALL I CAN TELL YOU, IT WAS HOT AND DRY.

24       THAT'S ALL I CAN TELL YOU.

25       Q.    THAT COULD BE A GOOD PART OF THE YEAR.

# Exhibit D

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**02/06/2015** at 01:47:41 PM
Clerk of the Superior Court
By Sarah Loose, Deputy Clerk

1 | R. Rex Parris, Esq. (SBN 96567)
Alexander R. Wheeler, Esq. (SBN 239541)
2 | Kitty Szeto, Esq. (SBN 258136)
John M. Bickford, Esq. (SBN 280929)
3 | **R. REX PARRIS LAW FIRM**
43364 10th Street West
4 | Lancaster, California 93534
Telephone:    (661) 949-2595
5 | Facsimile:    (661) 949-7524

6 | Attorneys for Plaintiff and the Putative Class

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF ORANGE

10

11 | MICHELE DEL VALLE; an individual, for herself)    Case No.    30-2015-00771632-CU-MC-CXC
and all members of the putative class,              )
12 |                                                 )    **CLASS ACTION**    Judge Robert J. Moss
          Plaintiff,                                )
13 |                                                 )    **CLASS ACTION COMPLAINT FOR**
     v.                                             )    **DAMAGES AND INJUNCTIVE RELIEF**
14 |                                                 )    **PURSUANT TO THE TELEPHONE**
GREAT DESTINATIONS, INC., a Nevada                  )    **CONSUMER PROTECTION ACT, 47**
Corporation, and DOES 1 through 100, inclusive,     )    **U.S.C. § 227 ET SEQ.**
15 |                                                 )
          Defendants.                               )    **DEMAND FOR JURY TRIAL**
16 |                                                 )
17 |                                                 )
18 |                                                 )
19 |                                                 )

20

21

22

23

24

25

26

27

28

COMPLAINT & DEMAND FOR JURY TRIAL

1     Plaintiff MICHELE DEL VALLE on behalf of herself, all other similarly situated, and the

2     general public, files this Complaint against Defendant GREAT DESTINATIONS, INC., and DOES 1

3     through 100, inclusive.  Plaintiff's allegations are based upon information and belief and upon

4     investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which

5     are based upon Plaintiff's personal knowledge.

## INTRODUCTION AND NATURE OF ACTION

7     1.    Plaintiff MICHELE DEL VALLE brings this action for statutory damages, injunctive

8     relief, and any other available legal or equitable remedies, resulting from the illegal actions of

9     Defendant GREAT DESTINATIONS, INC. in negligently and/or willfully placing calls to Plaintiff's

10    and the class members' cellular telephones without their prior express consent and not for emergency

11    purposes, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA").

12    2.    In 1991, Congress enacted the TCPA in an effort to curb the invasion of privacy faced

13    by everyday Americans who received unwanted calls.  In relevant part, the TCPA prohibits the use of

14    an automatic telephone dialing system to call any telephone number assigned to a cellular telephone

15    service absent emergency purposes or the "prior express consent" of the called party.

16    3.    The Federal Communication Commission ("FCC"), the agency empowered to

17    implement the TCPA, mandates that the burden will be on the caller to show it obtained the necessary

18    prior express consent.  (In the matter of Rules and Regulations Implementing the Telephone

19    Consumer Protection Act of 1991 (2008) 23 F.C.C.R. 559, at ¶ 10; see also *Gutierrez v. Barclays*

20    *Group* (S.D. Cal. Feb. 9, 2011, No. 10-cv-1012-DMS (BGS)) 2011 WL 579238, at *2.)

21    4.    Additionally, a person or entity can be liable for calls made on its behalf even if that

22    person or entity did not directly dial those calls.  (In the matter of Rules and Regulations

23    Implementing the Telephone Consumer Protection Act of 1991 (2008) 23 F.C.C.R. 559, at ¶ 13

24    ["rules generally establish that the party on whose behalf a solicitation is made bears ultimate

25    responsibility for any violations"].)

## JURISDICTION AND VENUE

27    5.    This class action is brought pursuant to California Code of Civil Procedure section

28    382. The monetary damages and restitution sought by Plaintiff exceed the minimal jurisdiction limits

1

1   of the Superior Court and will be established according to proof at trial.  The amount in controversy

2   for each class representative or putative class member, including claims for compensatory damages,

3   interest, penalties, and attorneys' fees, is less than $75,000.

4       6.      This Court has jurisdiction over this action pursuant to the California Constitution,

5   Article VI, section 10, which grants the Superior Court "original jurisdiction in all causes except

6   those given by statute to other courts."   Additionally, the TCPA specifically grants state courts

7   original jurisdiction over TCPA cases.  (See 47 U.S.C. § 227(b)(3); accord, *Kaufman v. ACS Systems,*

8   *Inc.* (2003) 110 Cal.App.4th 886, 896–898.)

9       7.      This Court has jurisdiction over all defendants because each defendant is either a

10   citizen of California, has sufficient minimum contacts in California, or otherwise intentionally avails

11   itself of the California market so as to render the exercise of jurisdiction over it by the California

12   courts consistent with traditional notions of fair play and substantial justice.

13       8.      Venue is proper in this Court because, upon information and belief, Defendant

14   GREAT DESTINATIONS, INC. resides, transacts business, or has offices in this county and the acts

15   and omissions alleged herein took place in this county.

16                                    **PARTIES**

17       9.      Plaintiff MICHELLE DEL VALLE ("Plaintiff") is, and at all times mentioned herein

18   was, an individual residing in Orange County, in the State of California.  Plaintiff brings this action

19   on behalf of herself, all other similarly situated, and the general public.

20       10.     Defendant GREAT DESTINATIONS, INC. is a corporation formed under the laws of

21   the State of Arizona, having its principle place of business at 99 Convention Center Dr, Las Vegas,

22   Nevada 89109.

23       11.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as

24   DOES 1 through 100, inclusive, and therefore sued said Defendants by such fictitious names.

25   Plaintiff will amend this complaint to allege the true names and capacities of DOES 1 through 100

26   when ascertained.  Plaintiff is informed and believe, and based thereon allege, that each of these

27   fictitiously named defendants, participated or acted in concert with Defendant GREAT

28   DESTINATIONS, INC. and are therefore responsible in some manner for the acts, occurrences,

2

1    and/or omissions alleged herein, and have thereby proximately caused damages to Plaintiff, and are

2    liable to Plaintiff by reason of the facts alleged herein.

3        12.      At all times herein relevant, Defendant GREAT DESTINATIONS, INC. and DOES 1

4    through 100, and each of them, were the agents, partners, joint venturers, representatives, servants,

5    employees, successors-in-interest, co-conspirators and assigns, each of the other, and at all times

6    relevant hereto were acting within the course and scope of their authority as such agents, partners,

7    joint venturers, representatives, servants, employees, successors, co-conspirators and assigns, and

8    that all acts or omissions alleged herein were duly committed with the ratification, knowledge,

9    permission, encouragement, authorization and consent of each defendant designated herein.

10       13.      Defendant GREAT DESTINATIONS, INC. and DOES 1 through 100 will hereinafter

11    collectively be referred to as "Defendants."

12                            **FACTUAL ALLEGATIONS**

13       14.      Within four years prior to the filing of this action, Plaintiff had the following cellular

14    telephone numbers:  (714) 325-7358; ████ ████; (949) 287-2405; ████████; ████████

15    ████; (949) 439-8867; ████████; and ████████.

16       15.      Defendants—whether directly, through affiliated marketers, or otherwise—used

17    equipment to dial the cellular telephone numbers of potential customers, including Plaintiff, in order

18    to invite them to a sales presentation on vacation timeshares.

19       16.      On information and belief and investigation of counsel, the equipment used by

20    Defendants to place such calls had the capacity to store or produce telephone numbers and to dial

21    such numbers without any human intervention—i.e., an "automatic telephone dialing system—as

22    prohibited by 47 U.S.C. § 227(b)(1)(A).

23       17.      These calls were for the purpose of telemarking timeshare vacations and were not for

24    emergency purposes as set forth in 47 U.S.C. § 227(b)(1)(A).

25       18.      Plaintiff and the class members did not provide "prior express consent" to receive

26    these calls on their cellular telephone as required by 47 U.S.C. § 227(b)(1)(A).  In fact, before

27    receiving these calls, Plaintiff had never heard of Defendant GREAT DESTINATIONS, INC., and

28    has no idea how Defendants obtained her cellular telephone numbers.

3

1    19.    Plaintiff and the class members have incurred charges for these calls because the FCC

2    has made clear that "wireless customers are charged for incoming calls whether they pay in advance

3    or after the minutes are used."  (In the matter of Rules and Regulations Implementing the Telephone

4    Consumer Protection Act of 1991 (2008) 23 F.C.C.R. 559, at ¶ 7.)

5                                    **CLASS ACTION ALLEGATIONS**

6    20.    Plaintiff brings this action on her own behalf and on behalf of all other members of the

7    general public similarly situated, and thus, seeks class certification under Code of Civil Procedure

8    section 382.

9    21.    The proposed class is defined as follows:

10                        All persons within the United States to whom Defendants have

11                        placed a call to said persons' cellular telephone (without their prior

12                        express consent and not for emergency purposes) through the use of

13                        an automatic telephone dialing system within four years prior to the

14                        filing of this complaint.

15    22.    Excluded from the class are Defendants and any other entities in which Defendants

16    have a controlling interests, Defendants' agents and employees, the Judge to whom this action is

17    assigned and any member of the Judge's staff and immediate family.

18    23.    In addition, or in the alternative, to the above-defined class, Plaintiff reserves the right

19    to establish subclasses as appropriate to facilitate the effective management of the class; however,

20    Plaintiff is informed and believe, and based thereon allege, that the class as defined above is both

21    objectively and easily identifiable through Defendants' business records.

22    24.    Plaintiff reserves the right to establish subclasses as appropriate.

23    25.    The class is ascertainable and there is a well-defined community of interest in the

24    litigation:

25                    a.    The class members are so numerous that joinder of all class members is

26                        impracticable.  The membership of the entire class is unknown to Plaintiff at

27                        this time; however, the class is estimated to be ninety-nine (99) individuals or

28                        greater and the identity of such membership is readily ascertainable by

4.

1   inspection of Defendants' business records.

2   b.   Plaintiff's claims are typical of all other class members' as demonstrated

3   herein. Defendants have the same obligations to Plaintiff and the class with

4   respect to when calls may be lawfully placed to cellular telephones.

5   Furthermore, Plaintiff is informed and believes, and based thereon alleges, that

6   the nature of the damages and their causation will be the same for Plaintiff and

7   the other class members.

8   a)   Plaintiff will fairly and adequately represent and protect the interests of

9   the class because: (1) Plaintiff has retained experienced litigation

10   counsel with significant experience in class action litigation and counsel

11   will adequately represent the interests of the class; (2) Plaintiff and her

12   counsel are aware of no conflicts of interests between Plaintiff and

13   absent class members; and (3) Plaintiff is knowledgeable concerning the

14   subject matter of this action and will assist counsel in the prosecution of

15   this action; and

16   c.   Plaintiff is informed and believe, and based thereon alleges, that a class action

17   provides a fair and efficient method of adjudicating this controversy and is

18   superior to other available methods of adjudication in that (1) neither the size

19   of the class, nor any other factor, make it likely that difficulties will be

20   encountered in the management of this action as a class action; (2) the

21   prosecution of separate actions by individual class members or the individual

22   joinders of all class members in this action is impracticable, and would create a

23   massive and unnecessary burden on the resources of the courts, and could result

24   in inconsistent adjurations, while a single class action can determine, with

25   judicial economy, the rights of each member of the class; (3) because of the

26   disparity of resources available to Defendants verses those available to

27   individual class members, prosecution of separate actions would work a

28   financial hardship on many class members; (4) there is no plain, speedy, or

5

1  adequate remedy available to class members other than by maintenance of this

2  class action because the damages to each class member is relatively modest

3  compared to the costs of litigating the issues in this action, making it

4  economically unfeasible to pursue remedies other than in a class action; and (5)

5  the conduct of this action as a class action conserves the resources of the parties

6  and the court system and protects the rights of each members of the class and

7  meets all due process requirements as to fairness to all parties. A class action is

8  also superior to the maintenance of these claims on a claim by claim basis

9  because all of the claims arise out of the same circumstances and course of

10  conduct.

11      26.    There are common questions of law and fact as to the class members that predominate

12  over questions affecting only individual members. The following common questions of law or fact,

13  among others, exists as to the members of the class:

14      a.    whether Defendants made non-emergency calls to Plaintiff's and the class

15      members' cellular telephones using an automatic telephone dialing system;

16      b.    whether Defendants can meet their burden of showing they obtained prior

17      express consent—i.e., consent that is clearly and unmistakably stated;

18      c.    whether Defendants' conduct was knowing and/or willful;

19      d.    whether Defendants are liability for damages, and the amount of such damages;

20      and

21      e.    whether Defendant should be enjoined from engaging in such conduct in the

22      future.

23                  **FIRST CAUSE OF ACTION**

**(Negligent Violations of the TCPA)**

24  **(Against Defendant GREAT DESTINATIONS, INC. and DOES 1 through 100)**

25      27.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through

26  25, and each and every part thereof with the same force and effect as though fully set forth herein.

27  ////

28  ////

6

28.    The forgoing acts and omissions of Defendants constitutes numerous and multiple negligent violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

29.    As a result of Defendants' negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the class members are entitled to statutory damages of $500 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

30.    Plaintiff and the class members are also entitled to and seek injunctive relief prohibiting such conduct in the future, 47 U.S.C. § 227(b)(3)(A).

31.    Plaintiff and the class members are also entitled to an award of attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### (Knowing and/or Willful Violations of the TCPA)
### (Against Defendant GREAT DESTINATIONS, INC. and DOES 1 through 100)

32.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 30, and each and every part thereof with the same force and effect as though fully set forth herein.

33.    The forgoing acts and omissions of Defendants constitutes numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

34.    As a result of Defendants' negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the class members are entitled to treble damages, as provided by statute, up to $1,500 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and (C).

35.    Plaintiff and the class members are also entitled to and seek injunctive relief prohibiting such conduct in the future, 47 U.S.C. § 227(b)(3)(A).

36.    Plaintiff and the class members are also entitled to an award of attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other members of the general public similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

////

7

A.     An order, pursuant to Federal Rule of Civil Procedure 23(c) and (g), certifying the proposed class and appointing Plaintiffs' undersigned counsel of record to represent the class;

B.     An order issuing an injunction, pursuant to 47 U.S.C. § 227(b)(3)(A), enjoining Defendant GREAT DESTINATIONS, INC. from placing any further prohibited calls to class members;

C.     As a result of Defendant GREAT DESTINATIONS, INC.'s negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seek for herself and each class member $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

D.     As a result of Defendant GREAT DESTINATIONS, INC.'s willful and/or knowing violation of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each class member treble damages, as provided by statute, up to $1,500 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and (C);

E.     For reasonable attorneys' fees and costs of suit incurred herein; and

F.     For such other and further relief as the court may deem just and proper.


Date: February 6, 2015                 **R. REX PARRIS LAW FIRM**


By: _John Bickford_
        John M. Bickford, Esq.
        Attorneys for Plaintiff and
        the Putative Class

8

# Exhibit E



R. Rex Parris | LAW FIRM

43364 10th Street West
Lancaster, California 93534
T: 661.949.2595 | F: 661.949.7524

400 South Hope Street, Suite 1100
Los Angeles, California 90071
T: 310.824.5600 | F: 661.949.7524

February 26, 2015

**SENT VIA EMAIL**
Samantha F. Lamberg, Esq.
Greenberg Whitcombe Takeuchi Gibson & Grayver, LLP
21515 Hawthorne Blvd, Suite 450
Torrance, CA 90503
(310) 540-2000

Re:   *Michele Del Valle v. Great Destinations, Inc.*
      Orange County Superior Court, Case No. 30-2015-00771632-CU-MC-CXC

Dear Ms. Lamberg:

Per our conversation, below is a non-exhaustive list of specific times Plaintiff contends Defendant and/or its vendors called her on her cell phone using an automatic telephone dialing system without her prior express consent:

| Incoming Number | Plaintiff's Cell Number | Date & Time |
|---|---|---|
| ██████ | (949) 439-8867 | 10/25/2013 @ 5:07 pm |
| | ████ | 04/19/2013 @ 4:47 pm |
| | (949) 439-8867 | 11/05/2013 @ 2:55 pm |
| | (949) 439-8867 | 10/10/2014 @ 6:58 pm |
| | ████ | 11/26/2012 @ 7:15 pm |
| | (949) 287-2405 | 12/14/2014 @ 7:58 pm |
| | (949) 439-8867 | 11/04/2014 @ 3:03 pm |
| | (949) 439-8867 | 03/19/2013 @ 10:07 am |
| | (949) 439-8867 | 07/03/2014 @ 2:36 pm |

In order for Plaintiff to provide a full and complete list, Defendant will need to provide a list of all telephone numbers it and its vendors used during the class period.

Sincerely,

**R. REX PARRIS LAW FIRM**

John Bickford

John M. Bickford, Esq.
Attorneys for Plaintiff and the
Putative Class

LAWYERS PROTECTING YOU

R. Rex Parris | Robert A. Parris | Alexander R. Wheeler | Kitty K. Szeto | Jason P. Fowler | Patricia K. Oliver    GD004
Jacob L. Karczewski | Brendan P. Gilbert | Breanna L. Kenyon | John M. Bickford | Ryan K. Kahl

# Exhibit F

**Find** tacos, cheap dinner, Max's          **Near** San Francisco, CA

Home   About Me   Write a Review   Find Friends   Messages   Talk   Events

# yelp



Add friend

Compliment

Send message

Follow Michele D.

Similar Reviews

# Michele D.

Costa Mesa, CA

8 Friends    33 Reviews    0 Photos

---



**Great Destinations**
Resorts
3538 Concours Street
Ontario, CA 91764

          1/18/2015

I don't know where they got my brand new number but they call and are annoying.  I have told them time and time again stop calling me,.  I am tired of this!

---



**Great Destinations**
Travel Services
765 The City Dr S
Orange, CA 92868

★★★★★ 5/23/2014 · Updated review

Once again I have been called by those annoying telemarketers for this company.  I was assured by a manager that I would not have any more calls but once again this company has lied.

---

★★★★★ 5/12/2014 · **Previous review**

I am looking for an attorney to file a class action law suit against this company. I have been harassed for over a year now by their soliciting sales calls from the Philippines. Sometimes 2-3 times a day. I have asked and yelled at them to stop calling and take my name off their list only to be told "Ok miss" and then to be called again a month or so later. I even went so far as to call the Irvine office who also said they would remove my name and still I get the calls. I have had enough. This is bad business and I would not ever recommend for anybody.
Read less



---

 **Comment from Jeff G. of Great Destinations**
Business Manager

5/13/2014 - Michelle, thank you for your feedback and I am frustrated with the amount of calls you are receiving and the fact you have requested us to stop calling you. My email is jeff.grey@gdvacations.com please email me directly and provide the number you want taken off our calling list and I will do my best to stop the calls. If you could be kind enough to provide the number or numbers you are receiving calls from it would help me isolate where the calls originated. Thank you for your time and patients in resolving this matter. Read less

1

**PROOF OF SERVICE**

2
I, the undersigned, declare:

3
I am employed in the City and County of San Francisco. I am over the age of eighteen (18)

4
and not a party to the within cause. My business address is 425 California Street, Suite 2025, San Francisco, California, 94104.

5
On December 19, 2016, I served the attached document(s):

6
**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION;**

7
**DECLARATION OF MARK R. MEYER IN SUPPORT OF OPPOSITION**

8
On the party(s) to this action by sending a true copy thereof, addressed as follows:

9
/ X /    (BY ELECTRONIC SERVICE) The documents were served electronically by filing via the Court's CM/ECF electronic filing system.

10

11
R. Rex Parris, Esq.                  R. Rex Parris, Esq.
John Bickford, Esq.                  rrparris@parrislawyers.com
Kitty Szeto, Esq.

12
Eric Wilson, Esq.                    John Bickford, Esq.
PARRIS LAW FIRM                      jbickford@parrislawyers.com

13
43364 10th Street West
Lancaster, CA 93534                  Kitty Szeto, Esq.

14
                                     kszeto@parrislawyers.com

15
                                     Eric Wilson, Esq.
                                     ewilson@parrislawyers.com

16
I declare under penalty of perjury, under the laws of the United States, that the foregoing is

17
true and correct. Executed on December 19, 2016, at San Francisco, California.

18

19
_____

20
Chia-Hui Sze

21

22

23

24

25

26

27

28

Case No. 8:16-cv-02149-DOC (JCGx); *Del Valle v. Global Exchange Vacation Club, et al.*
Opp. to Mtn. for Class Certification – Meyer Dec.

91