1  R. Rex Parris (SBN 96567)
        rrparris@parrislawyers.com
2  Kitty K. Szeto (SBN 258136)
        kszeto@ parrislawyers.com
3  John M. Bickford (SBN 280929)
        jbickford@parrislawyers.com
4  Eric N. Wilson (SBN 291815)
        ewilson@parrislawyers.com
5  **PARRIS LAW FIRM**
   43364 10th Street West
6  Lancaster, California 93534
   Telephone:(661) 949-2595
7  Facsimile: (661) 949-7524

8  Attorneys for Plaintiff and the Putative Class

9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

13  MICHELE DEL VALLE; an individual,  )   Case No.:  8:16-cv-02149
    for herself and all members of the putative)
    class,                              )   **CLASS ACTION**
14                                      )
                                        )   **PLAINTIFF'S REPLY IN SUPPORT**
15              Plaintiff,              )   **OF MOTION FOR CLASS**
                                        )   **CERTIFICATION**
16      v.                              )
                                        )   Date:       January 9, 2017
17  GLOBAL EXCHANGE VACATION            )   Time:       8:30 a.m.
    CLUB, a California corporation;     )   Courtroom:  9C
18  RESORT VACATIONS, INC., a Nevada    )   Judge:      David O. Carter
    corporation; GLOBAL VACATIONS       )
19  MARKETING CORP., a Nevada           )
    corporation, GLOBAL EXCHANGE        )
20  DEVELOPMENT, CORP., a Nevada        )
    corporation, and DOES 1 through 100,)
21  inclusive,                          )
                                        )
22              Defendants.             )
                                        )
23  _____)

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**PAGE**

**SUMMARY OF REPLY** ...................................................................................... 1

**ARGUMENT** ..................................................................................................... 2

   I. DEFENDANTS' STANDING ARGUMENTS DO NOT RELATE

     TO CLASS CERTIFICATION, BUT FAIL IN ANY EVENT. ........................... 2

       A. Standing is a jurisdictional prerequisite, not an element of

         class certification. ................................................................................ 2

       B. Plaintiff has standing. ........................................................................ 3

          1. Standing does not require a plaintiff to prove the

            merits of her claim. ..................................................................... 3

          2. Plaintiff suffered an injury in fact. ............................................. 5

          3. Plaintiff's injury is "fairly traceable" to the alleged

            violation. ..................................................................................... 8

   II. PLAINTIFF IS A MEMBER OF THE CLASS SHE SEEKS

     TO REPRESENT. ........................................................................................ 10

   III. THE CLASS IS ASCERTAINABLE. ............................................................ 12

       A. VICIdial automatically records which account a call

         is made for. ......................................................................................... 12

       B. Defendants entirely ignore Plaintiff's alternative method

         for ascertaining the class. ................................................................ 13

   IV. COMMON ISSUES PREDOMINATE. ........................................................ 15

       A. The class members have standing. ................................................ 15

       B. Common issues predominate on the issue of apparent

         authority because it is based on how a reasonable person

         would interpret the calls. .................................................................. 16

i

# **<u>TABLE OF CONTENTS</u>**

**PAGE**

C. Common issues predominate on the issue of consent because Defendants have admitted they have no evidence that either IVT or MSI obtained prior express consent to call cell phones................................................................18

V. PLAINTIFF IS CREDIBLE AND THEREFORE AN ADEQUATE CLASS REPRESENTATIVE. ...............................................................20

VI. CLASS TREATMENT IS SUPERIOR ...........................................23

**CONCLUSION**................................................................................24

ii

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**Cases**

*Agne v. Papa John's Int'l, Inc.,*
    No. C10-1139-JCC, 286 F.R.D. 559 (WD. Wash. Nov. 9, 2012) ................................. 18

*Aranda v. Caribbean Cruise Line, Inc.,*
    ___ F. Supp. 3d ___,  2016 WL 4439935, at (N.D. Ill. Aug. 23, 2016) ...................... 1, 9

*Bee, Denning, Inc. v. Capital All. Grp.,*
    310 F.R.D. 614 (S.D. Cal. 2015) .................................................................................. 23

*Birchmeier v. Caribbean Cruise Line, Inc.,*
    302 F.R.D. 240 (N.D. Ill. 2014) .............................................................................. 14, 15

*Booth v. Appstack, Inc.,*
    No. C13-1533JLR, 2016 WL 3030256, (W.D. Wash. May 25, 2016) ................ 7, 14, 16

*Cabiness v. Educ. Fin. Solutions, LLC,*
    No. 16-cv-01109-JST, 2016 WL 5791411, (N.D. Cal. Sept. 1, 2016) ......... 6, 7, 8, 10, 16

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
    598 F.3d 1115 (9th Cir. 2010) ........................................................................................ 2

*Ewing v. SQM US, Inc.,*
    ___ F. Supp. 3d ___, ___, 2016 WL 5846494, (S.D. Cal. 2016) .................................... 9

*Friends of the Earth, Inc. v. Laidlaw Env't Servs.*
    *(TOC), Inc.,* 528 U.S. 167 (2000) .................................................................................. 3

*Grant v. Capital Mgmt. Servs., L.P.,*
    449 Fed. App'x 598 ...................................................................................................... 18

*Gutierrez v. E. & J. Gallo Winery,*
    No. C-75-0001 SW, 1975 WL 982, (N.D. Cal. Nov. 25, 1975) ...................................... 2

*Harris v. Vector Mktg. Corp.,*
    753 F. Supp. 2d 996 (N.D. Cal. 2010) .............................................................. 20, 21, 22

iii

# TABLE OF AUTHORITIES

**PAGE(S)**

*In re ChinaCast Education Corp. Securities Litigation*,

   809 F.3d 471 (9th Cir. 2015) ..................................................................18

*Juarez v. Citibank, N.A.*,

   No. 16-CV-01984-WHO, 2016 WL 4547914, at *2–*3 (N.D. Cal. Sept. 1, 2016) ....... 10

*Krakauer v. Dish Network L.L.C.*,

   311 F.R.D. 384 (M.D.N.C. 2015) ..........................................................15, 16

*Kristensen v. Credit Payment Srvs.*,

   12 F. Supp. 3d 1292 (D. Nev. 2014) ......................................................1, 17

*LaVigne v. First Community Bancshares, Inc.*,

   ___ F. Supp. 3d ___, 2016 WL 6305992 (D.N.M. Oct. 19, 2016) ..................................9

*Lofton v. Verizon Wireless (VAW) LLC*,

   No. 13-CV-05665-YGR, 2015 WL 1254681, at (N.D. Cal. Mar. 18, 2015)..................16

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,

   No. 13-cv-01180-BLF, 2014 WL 4774611, (N.D. Cal. Sept. 22, 2014) ........................2

*Lujan v. Defs. of Wildlife*,

   504 U.S. 555 (1992) ..................................................................2, 3, 5

*Lushe v. Verengo Inc.*,

   No. CV 13-07632 AB RZ, 2015 WL 500158 (C.D. Cal. Feb. 2, 2015) ..................17, 18

*Maya v. Centex Corp.*,

   658 F.3d 1060 (9th Cir. 2011)..................................................................4

*Mbazomo v. Etourandtravel, Inc.*,

   No. 2:16-CV-02229-SB, 2016 WL 7165693, (E.D. Cal. Dec. 8, 2016) ..........................9

*Mey v. Got Warranty, Inc.*,

   ___ F. Supp. 3d ___, 2016 WL 3645195, (N.D. Cal. 2016) ..................................7, 8, 16

*Meyer v. Portfolio Recovery Assocs., LLC*,

   707 F.3d 1036 (9th Cir. 2012)..................................................................22

iv

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

*O'Connor v. Uber Techs., Inc.*,
   No. C-13-3826 EMC, 2015 WL 5138097, (N.D. Cal. Sept. 1, 2015) ....................21, 22

*Olney v. Job.com, Inc.*,
   No. 1:12-CV-01724-LJO, 2013 WL 5476813, (E.D. Cal. Sept. 30, 2013) ....................9

*Pena v. Taylor Farms Pac., Inc.*,
   305 F.R.D. 197 (E.D. Cal. 2015)....................................................................20

*Polo v. Innovations Int'l, LLC*,
   833 F.3d 1193 (9th Cir. 2016)........................................................................2

*Quity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*,
   548 F.3d 1184 (9th Cir. 2008)........................................................................4

*Romero v. Department Stores National Bank*,
   ___ F. Supp. 3d ___, 2016 WL 4184099 (S.D. Cal. Aug. 5, 2016)................................9

*Ross v. RBS Citizens, N.A.*,
   No. 09 CV 5695 WL 3980113, (N.D. Ill. Oct. 8, 2010) ................................................20

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 (9th Cir.2009)...........................................................................8

*Soppet v. Enhanced Recovery Co., LLC*,
   679 F.3d 637 (7th Cir. 2012)..........................................................................7

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .............................................................3, 5, 6, 7, 8

*Tatum v. Schwartz*,
   No. CIV S-06-01440DFLEFB, 2007 WL 419463, (E.D. Cal. Feb. 5, 2007) ................14

*Thomas v. Taco Bell Corp.*,
   582 F. App'x 678 (9th Cir. 2014)....................................................................17

*Torres v. Goodyear Tire & Rubber Co.*,
   867 F.2d 1234 (9th Cir. 1989).........................................................................17

v

# TABLE OF AUTHORITIES

**PAGE(S)**

*Tyler v. Cuomo*,

   236 F.3d 1124 (9th Cir. 2000) .......................................................................9

*Warth v. Seldin*,

   422 U.S. 490 (1975) .......................................................................................4

**FCC Orders**

*In re Rules & Regulations Implementing the TCPA*

   (2008) 23 F.C.C.R. 559, at ¶ 7.) ..................................................................7

*In re Rules & Regulations Implementing the TCPA*,

   23 FCC Rcd. 559 (Jan. 4, 2008) .................................................................18

**Other Authorities**

13A Richard D. Freer & Edward H. Cooper, Federal Practice and Procedure

   (3d ed. 2004) ..................................................................................................3

Telephone Consumer Protection Act of 1991, Pub. L. No 102-243,

   105 Stat 2394 (1991) .....................................................................................8

**Statutes**

47 U.S.C. § 207(b)(1) ......................................................................................22

**Rules**

Fed R. Civ P. 23 ..............................................................................................24

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................14

Rule 12(b)(1) .....................................................................................................2

## SUMMARY OF REPLY

Plaintiff moved to certify a class of all individuals residing in the United States who were called by IVT or MSI (without their prior express consent) for the purpose of marketing Defendants' timeshares with an ATDS.  The class meets all the requirements of certification: (1) the class can be ascertained through IVT and MSI's VICIdial call records or through self-identification; (2) common issues predominate because the critical issues hinge on an objective, reasonable person standard; (4) Plaintiff is a typical and adequate class representative; and (5) class treatment of the claims is superior because Defendants admit to using deceptive names and DBAs in order to make it difficult to find the right entity to sue.

Nevertheless, Defendants oppose certification, primarily because they believe Plaintiff failed to establish she and the class members have standing to pursue their claims—a requirement not found in Rule 23 but clearly satisfied in this action anyway. *See Aranda v. Caribbean Cruise Line, Inc.*, ___ F. Supp. 3d ___, ___, 2016 WL 4439935, at *5–*6 (N.D. Ill. Aug. 23, 2016) (explaining that "unsolicited telephonic contact constitutes an intangible, concrete harm" which is "traceable to defendants' conduct").

Defendants' arguments that actually concern certification are similarly misguided. For example, Plaintiff is clearly a member of her class because the undisputed evidence shows she was called by IVT or MSI at least three times; the class is ascertainable because the software IVT or MSI use automatically records the numbers they call; and common issues predominate on whether MSI and IVT were apparent agents of Defendants because the question hinges on whether a reasonable person would believe that IVT and MSI's representation that they *were* Defendants meant they had authority to act on behalf of Defendants.  *See Kristensen v. Credit Payment Srvs*., 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (explaining the question "depends on whether a reasonable person would believe that the [telemarketer] . . . had authority to act on behalf of [GEVC]" (emphasis added)).  Plaintiff's class should be certified.

1

## ARGUMENT

I.   **DEFENDANTS' STANDING ARGUMENTS DO NOT RELATE TO CLASS CERTIFICATION, BUT FAIL IN ANY EVENT.**

First, Defendants argue the Court should deny class certification because Plaintiff lacks standing.  Opp. at 15:11–16:6, 19:12–22:12.  But as explained below, standing is not an element of class certification; rather, it is a jurisdictional prerequisite that would result in remand if not satisfied.  And to the extent standing were an element, it is easily met here.

A.   **Standing is a jurisdictional prerequisite, not an element of class certification.**

As an initial matter, Rule 23 does not require a plaintiff to establish standing in addition to the other elements of class certification.  Rather, "the appropriate vehicle" for challenging a named plaintiff's standing is a motion brought under Rule 12(b)(1) for lack of subject-matter jurisdiction.  *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13-cv-01180-BLF, 2014 WL 4774611, at *2 n.1 (N.D. Cal. Sept. 22, 2014) (citing *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010)).  This is because standing is typically "the first matter to which [a court] should address . . . , not as [D]efendants perceive it, as a question appropriately raised as a 'defense' to [a] motion for class certification."  *Gutierrez v. E. & J. Gallo Winery*, No. C-75-0001 SW, 1975 WL 982, at *1 (N.D. Cal. Nov. 25, 1975).  After all, if the Court were to find Plaintiff lacks standing, the appropriate remedy is to *remand* this case back to state court, not deny certification.  *See Polo v. Innovations Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).

Indeed, Defendants' argument is particularly troublesome seeing as how *they* were the ones who invoked federal jurisdiction by removing this case to federal court.  *See* Def.'s Notice of Removal, ¶ 9 ("This action is a civil action which this Court has original jurisdiction . . . .").  As a result, *Defendants*—not Plaintiff—have the burden to establish Plaintiff has Article III standing to assert her claims.  *See Lujan v. Defs. of Wildlife*, 504

2

U.S. 555, 561 (1992). And by arguing Plaintiff lacks standing, Defendants have essentially admitted they cannot meet their burden. As a result, the Court should remand this case back to state court.[1]

## B. Plaintiff has standing.

In any event, even if standing were an element of class certification, it is satisfied. Standing has three requirements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61 & *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

### 1. Standing does not require a plaintiff to prove the merits of her claim.

First, Defendants argue "Plaintiff cannot establish she ha[d] standing at the time she filed [her original] complaint." Opp. at 15:11–12. Specifically, they point out that Plaintiff has only been able to identify calls that occurred *after* she filed the complaint, not before. *See id.* at 15:15–17. As a result, Defendants claim Plaintiff's allegation that IVT and MSI called her before is merely "speculation," which purportedly does not establish standing. *Id.* at 15:18–20. This argument, however, misunderstands the basic principles of standing.

"Standing doctrines are employed to refuse to determine the merits of a legal claim, on the ground that even though the claim may be correct the litigant advancing it is not properly situated to be entitled to its judicial determination. The focus is on the party, not the claim itself." 13A Richard D. Freer & Edward H. Cooper, Federal Practice and Procedure § 3531 (3d ed. 2004) (footnotes omitted). Put differently, since standing "is distinct from the merits of [a] claim," it does not require an " 'analysis of the

---

[1]   Plaintiff will be filing a Motion to Remand based on the arguments set forth in Defendants' opposition.

merits.' " *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Quity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008)). Rather, in determining whether a plaintiff has standing, "courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Here, Plaintiff's complaint alleges: "Within *four years prior to the filing of this action*, Defendants contracted with Philippine-based telemarketing vendors [IVT] and [MSI] to use [an ATDS] to dial the cellular telephone number of potential customers, *including Plaintiff*, in order to invite them to a sales presentation on vacation timeshares." FAC, ¶ 18; *see also id.*, ¶ 19. It also alleges "Plaintiff and the class members did not provide 'prior express consent' to receive these calls," *id.*, ¶ 21, and that they were injured as a result, *id.* ¶ 22. Accordingly, Plaintiff has alleged sufficient facts to establish she had standing at the time she filed her original complaint.

Additionally, to the extent the Court looks beyond the pleadings, Plaintiff's current inability to identify pre-complaint calls is likely the result of Defendants' failure to provide all the numbers its vendors used during the class period. This is supported by the fact that Defendants admit that IVT "called [Plaintiff's] 949-287-2405 [cell phone on] January 15, 2015," but claims to not know "what the outgoing Caller ID for this was." PA 195 [Ex. 2.G] (GEVC's Further Resps. to Pl.'s Special Interrogs., Set Two at 4:16–18); *see also* Arroz Decl., ¶ 22. When Plaintiff's January 15th cell phone records are examined, however, they do not show a call from any of the numbers Defendants identified as belonging to IVT. *Compare* PA 178 [Ex. 2.E] (GEVC's Further Resps. to Pl.'s Special Interrogs., Set One at 10:6–28) *with* PA 190 [Ex. 2.F] (Pl.'s Jan 15, 2014 Phone Records). This suggests IVT used *other* outbound numbers not identified by Defendants, meaning there are likely additional unidentified calls that occurred before the filing of the complaint. This will be confirmed when Defendants produce IVT and MSI's VICIdial records during the merits phase of discovery.

/ / / /

4

### 2. Plaintiff suffered an injury in fact.

Next, Defendants argue Plaintiff did not suffer an "injury in fact." *See* Opp. at 20:15–21:14. The Supreme Court in *Spokeo* recently reiterated what injury in fact means. First, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). Second, the injury must be both "particularized" (i.e., it must "affect the plaintiff in a personal and individualized way") and "concrete" (i.e., it must be "real" and "actually exist"). *Id.* Lastly, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.' " *Id.* at 1549 (quoting *Lujan*, 504 U.S. at 578) (alteration in original). Put differently, " 'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.' " *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)).

The Court also reaffirmed that "intangible injuries can nevertheless be concrete." *Id.* To determine whether an intangible injury is concrete, there are two important considerations: (1) historical practice and (2) Congressional judgment. *Id.* First, the Court noted "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* Second, "[Congress'] judgment is also instructive and important" because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.*

*Spokeo* clarified, however, that the mere violation of a statutory right created by Congress is not always sufficient on its own to constitute an "injury in fact." *See id.* (explaining a plaintiff cannot "allege a bare procedure violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III"). In other words, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff *automatically* satisfies the injury-in-fact requirement whenever a statute grants a

5

person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* (emphasis added).

For example, the plaintiff in *Spokeo* alleged the defendant's search engine had published inaccurate information about him in violation of the Fair Credit Reporting Act ("FCRA"). *Id.* at 1546. Although the information was inaccurate such that it constituted a technical violation of the plaintiff's statutory rights, the Court noted that a statutory violation of the FCRA "may result in no harm" because "not all inaccuracies cause harm or present any material risk of harm." *Id.* at 1550. After all, "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.*

Nevertheless, the Court suggested that in other cases the statutory violation at issue could present an inherent "risk of real harm" such that the statutory violation will be sufficient on its own to constitute an injury in fact. *Id.* at 1549. In doing so, the Court analogized to the common law, which has permitted tort suits to proceed as long as there is a "risk of real harm," even if that harm is "difficult to prove or measure." *Id.* Similarly, the Court explained, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," and "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* (emphasis in original).

This reasoning "suggests that, unlike a statutory violation of the FCRA which 'may result in no harm,' a statutory violation of . . . the TCPA inherently presents a 'risk of real harm,' even if that harm is 'difficult to prove or measure,' such that the statutory violation is sufficient on its own to constitute an injury in fact." *Cabiness v. Educ. Fin. Solutions, LLC*, No. 16-cv-01109-JST, 2016 WL 5791411, *5 (N.D. Cal. Sept. 1, 2016) (quoting *Spokeo*, 136 S. Ct. at 1549–50). After all, "[e]very unconsented call through the use of an ATDS to a consumer's cellular phone results in actual harm: the recipient wastes her time and incurs charges for the call if she answers the phone, and her cell

6

phone's battery is depleted even if she does not answer the phone."[2]  *Id.* (citing *Mey v. Got Warranty, Inc.*, ___ F. Supp. 3d ___, ___, 2016 WL 3645195, at *3 (N.D. Cal. 2016).   Additionally, "unsolicited calls also cause intangible harm by annoying the consumer."  *Id.* (citing *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012)).   "For this reason, [several] district court have . . . distinguished statutory violations of the TCPA from statutory violations of the FCRA in the wake of the Court's *Spokeo* decision."  *Cabiness*, 2016 WL 5791411 at *5; *see, e.g., Mey*, 2016 WL 3645195 at *2 (noting the Court's concern in *Spokeo* about a " 'bare procedural violation, divorced from any concrete harm' . . . has little application to claims under the TCPA, since those claims are not based on 'bare procedural' rights, but rather on substantive prohibitions of actions directed toward specific consumers" (quoting *Spokeo*, 136 S. Ct. at 1549)); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 WL 3030256, at *7 (W.D. Wash. May 25, 2016) (distinguishing the "merely procedural" injury in *Spokeo* from the alleged TCPA violations in that case because the "TCPA . . . violations alleged here, if proven, required Plaintiffs to waste time answering or otherwise addressing widespread robocalls" and "such an injury is sufficiently concrete to confer standing").   Therefore, the mere allegation of a TCPA "violation . . . [is] sufficient to constitute injury in fact," so Plaintiff need not allege any additional facts of injury.  *Spokeo*, 136 S. Ct. at 1549.

Nevertheless, even if a statutory violation of the TCPA is not sufficient on its own to establish a concrete injury, Plaintiff could easily allege facts to support such an injury.  "After all, Congress enacted the TCPA because it recognized that constant, unsolicited phone calls necessarily intrude on consumers' privacy interests and are a nuisance."

---

[2]   Notably, Plaintiff's complaint expressly alleges she was charged for these calls: "Plaintiff and the class members have incurred charges for these calls because the FCC has made clear that 'wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.' "  FAC, ¶ 22 (quoting *In re Rules & Regulations Implementing the TCPA* (2008) 23 F.C.C.R. 559, at ¶ 7.)

*Cabiness*, 2016 WL 5791411 at *6 (citing Telephone Consumer Protection Act of 1991, Pub. L. No 102-243, 105 Stat 2394 (1991)).  As the Ninth Circuit explained:

> The TCPA was enacted to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers.  The TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls.  The consumers complained that such calls are a nuisance and an invasion of privacy.  The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of ATDSs to communicate with others by telephone in a manner that would be an invasion of privacy.

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir.2009) (internal citations and quotation marks omitted).  Additionally, a violation of the TCPA and the privacy interests here have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"—namely invasion of privacy.  *Spokeo*, 136 S. Ct. at 1549; *see also Mey*, 2016 WL 3645195 at *3 (holding unwanted calls in violation of the TCPA caused concrete harm under *Spokeo* because "[i]nvasion of privacy is . . . an intangible harm recognized by the common law").  In this case, Plaintiff has testified that Defendants' repeated calls "frustrated" her and caused her to go to great lengths to try to get them to stop.  *See* PA 122–25 [Ex. 1.C] (Del Valle Depo. at 38:19–125:19); PSA 1329–31 [Ex. 6.C] (Del Valle Depo. at 51:20–52:4, 53:11–17).  It would therefore not be hard for her to add these allegations to her complaint to specifically allege this injury.

### 3.     Plaintiff's injury is "fairly traceable" to the alleged violation.

Third, Defendants argue Plaintiff's injury isn't "fairly traceable" to the alleged violation of the TCPA.  *See* Opp. at 21:18–19.  This argument goes to causation, which

8

"requires that the injury be 'fairly traceable' to the challenged action of the defendant, and not be 'the result of the independent action of some third party not before the court.' "   *Olney v. Job.com, Inc.*, No. 1:12-CV-01724-LJO, 2013 WL 5476813, at *5 (E.D. Cal. Sept. 30, 2013) (quoting *Tyler v. Cuomo*, 236 F.3d 1124, 1132 (9th Cir. 2000)).   This is easily met.   "Defendant[s'] calls to Plaintiff were the cause of Plaintiff's harm."   *Id.*; *see also Aranda*, 2016 WL 4439935, at *5–*6 (explaining that "unsolicited telephonic contact constitutes an intangible, concrete harm" which is "traceable to defendants' conduct").

Defendants dispute the straightforwardness of this issue, and instead rely solely on a decision from Judge Bencivengo to claim Plaintiff's injuries are not fairly traceable because they would exist regardless of whether an ATDS was used to make the violative calls.   *See* Opp. at 21:21–25 (citing *Ewing v. SQM US, Inc.*, ___ F. Supp. 3d ___, ___, 2016 WL 5846494, at *2 (S.D. Cal. 2016)).   But Judge Bencivengo's understanding of the TCPA has been widely criticized by other courts.

For example, in *Romero v. Department Stores National Bank*, ___ F. Supp. 3d ___, 2016 WL 4184099 (S.D. Cal. Aug. 5, 2016), Judge Bencivengo held the plaintiff failed to "offer any evidence of a concrete injury caused by the use of an ATDS, as opposed to a manually dialed call," and therefore failed to show the violative calls "actually caused her concrete harm."   *Id.* at *3.   But in *LaVigne v. First Community Bancshares, Inc.*, ___ F. Supp. 3d ___, 2016 WL 6305992 (D.N.M. Oct. 19, 2016), the court explained *Romero* "is hardly convincing" because, "[u]nder its rather draconian analysis, a plaintiff would find it almost impossible to allege a harm as a result of . . . robocalls."   *Id.* at *6.   The *Lavigne* court found it "worse" still because it "ignores the existence of intangible harms that have been recognized in the legislative history and in the case law" and " 'conflates the *means* through which it (allegedly) violated the TCPA with the *harm* resulting from that alleged violation.' "   *Id.* (emphasis in original and internal citation omitted); *see also Mbazomo v. Etourandtravel, Inc.*, No. 2:16-CV-02229-SB, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016) (rejecting *Romero* and

9

explaining Judge Bencivengo "reads requirements into the TCPA that are not plainly in the statute" (citing *Cabiness*, 2016 WL 5791411, at *1)); *Juarez v. Citibank, N.A.*, No. 16-CV-01984-WHO, 2016 WL 4547914, at *2–*3 (N.D. Cal. Sept. 1, 2016) (recognizing circuit split on the issue before rejecting *Romero*). The Court should likewise reject Judge Bencivengo's "draconian analysis" and find Plaintiff's injury traceable to Defendants' violation of the TCPA.

## II.   PLAINTIFF IS A MEMBER OF THE CLASS SHE SEEKS TO REPRESENT.

Second, Defendants argue class certification should be denied because "Plaintiff cannot show she is a member of the proposed class." Opp. at 16:7–8. This is ridiculous. During the course of discovery, Plaintiff asked Defendants to "[i]dentify all outgoing telephone numbers, including area codes, used by [IVT and MSI] to place TELEMARKETING CALLS to individuals' cellular telephones." In response, Defendants provided the following telephone numbers:

| IVT | | MSI |
|---|---|---|
| (310) 356-0464 | (214) 269-4350 | (818) 478-8966 |
| (877) 276-5306 | **(909) 243-1147** | (909) 271-1857 |
| (877) 276-5320 | (818) 309-1147 | (909) 243-1157 |
| (877) 276-9713 | (818) 258-8307 | **(714) 912-6964** |
| (941) 200-3877 | (323) 205-1069 | **(949) 200-5342** |
| (909) 626-2316 | (323) 345-4756 | (909) 200-2358 |
| (909) 233-7055 | (888) 253-7639 | |

*See* PA 178 [Ex. 2.E] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set One at 10:6–28).

When these outgoing telephone numbers are compared to Plaintiff's cell phone records they show Plaintiff was called on her cell phone by either IVT or MSI *at least* three times:

10

| Vendor | Vendor Number | P's Cell Number | Date & Time |
|--------|---------------|-----------------|-------------|
| MSI | (949) 200-5342 | (949) 439-8867 | 09/30/14 @ 7:02 p.m. |
| IVT | (909) 243-1147 | (949) 287-2405 | 12/04/14 @ 7:22 p.m. |
| MSI | (714) 912-6964 | (949) 287-2405 | 12/14/14 @ 7:58 p.m. |

*Compare* PA 178 [Ex. 2.E] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set One at 10:6–28) *with* PA 187–90 [Ex. 2.F] (Pl.'s Phone Records).   When Defendants were confronted with this evidence, they agreed Plaintiff had been called by both IVT and MSI.  *See* PA 49–54 [Ex. 1.A] (Sargent Depo. at 164:13–166:19, 167:7–168:23, 169:2–10); PA 106–109 [Ex. 1.B] (Bryson Depo. at 227:16–230:22).

Additionally, Defendants identified a fourth call in their written discovery responses by stating IVT "called [Plaintiff's] 949-287-2405 [cell phone on] January 15, 2015," but claim to have "no knowledge as to what the outgoing Caller ID for this call was."  PA 195 [Ex. 2.G] (GEVC's Further Resp. to Pl.'s Special Interrogs., Set Two at 4:16–18).  IVT and MSI have since confirmed these calls occurred.  *See* Arroz Decl., ¶ 22; Daigle Decl., ¶ 22.

Defendants, however, completely ignore this evidence, and instead repeatedly claim "Plaintiff cannot show these [four] calls were made for the purposes of marketing membership in [GEVC]."  Opp at 16:18–19.  But Plaintiff testified she remembers that they were:

> Q.    Okay.  If you recall, did the Filipino men or the lady, where they trying to get you to go to the same place?
>
> A.    Yes.
>
> Q.    To this Global Exchange place?
>
> A.    Yes.

PSA 1330 [Ex. 6.C] (Del Valle Depo. at 52:5–10); *see also* PSA 1321–24, 1327–28, 1333–34 [Ex. 6.C] (Del Valle Depo. at 38:19–41:7, 46:22–47:5, 66:3–67:4).   And despite having direct access to IVT and MSI, Defendants have produced no records that

11

this wasn't the case.   Accordingly, there is more than enough evidence to support Plaintiff's assertion that she is a member of the class she seeks to represent.

## III.   THE CLASS IS ASCERTAINABLE.

Next, Defendants argue the Court should deny class certification because Plaintiff's class is not ascertainable.   They claim, without evidence, that VICIdial cannot be used to identify class members because neither MSI or IVT track the phone calls they make.   *See* Opp. at 22:23–25.   As explained below, this argument misunderstands VICIdial, which *automatically* records this information regardless of whether MSI or IVT know that it does or not.   And in any event, Defendants completely ignore Plaintiff's alternative method of ascertaining the class through a combination of Defendants' internal records and self-identification.

### A.   VICIdial automatically records which account a call is made for.

Defendants argue the class isn't ascertainable because, although it is undisputed that IVT and MSI make calls on their behalf, both vendors have other clients, and neither purportedly track the calls they make "in a manner that lets them know which calls are" made on Defendants' behalf.   Opp. at 22:23–25.   They then label Plaintiff's 1000-page expert's declaration "speculative," and cite declarations they obtained from IVT and MSI, which simply state:

> In connection with making marketing calls, IVT sets up separates [*sic*] daily campaigns for each account.   IVT does not separately track the phone calls related to campaigns.   IVT only tracks when the phone number is called to determine when it can be called again.

Arroz Decl., ¶¶ 17–18.

> In connection with making marketing calls, MSI set up separate daily campaigns for each account . . . .   MSI cannot track phone numbers by campaign.   Phone numbers were only tracked to determine when it can be called again.

12

1  Daingle Decl., ¶¶ 14, 16–17.

2       But users of VICIdial do not need to set up VICIdial in order to keep track of

3  which call is made on whose behalf.  Rather, VICIdial "*automatically* log[s] calls to

4  include 'Campaign_ID.' "  PSA 1350 [Ex. 8] (Hansen Supp. Decl., ¶ 4) (emphasis

5  added).   Since this "logging of the calls with the associated campaign name is

6  *automatic*" users do not have "control over ViciDial's ability to log campaign names

7  with each of the calls contained in the vicidial log table."  *Id.* (emphasis added).  Indeed,

8  Plaintiff's expert explains *exactly* how to extract this data:

9
10         ViciDial creates call logs in MySQL.  Reports can be generated
11         simply by clicking on "reports" and choosing the type of report
           to generate.   Additionally, one could query the ViciDial
12         database directly and export reports containing any or all
13         columns related to each call.  The ViciDial_Log table contains
           a record of every call made by the system. . . .  To export this
14         call detail record to a pipe delimited text file one only needs to
15         type in the command:

16              select * INTO OUTFILE '/path_to_file/lead_list.csv'

17              FIELDS TERMINATED BY '|'

18              ENCLOSED BY '^'

19
20              LINES TERMINATED BY '\n'

21              from vicidial_list;"

22  PA 237 [Ex. 5] (Hansen Decl., ¶ 45).  Nevertheless, neither IVT nor MSI attempted to

23  do this.  Accordingly, Defendants have failed to rebut Plaintiff's showing that the class

24  is ascertainable through IVT and MSI's VICIdial records.

25       **B.    Defendants entirely ignore Plaintiff's alternative method for**

26       **ascertaining the class.**

27       Nevertheless, even if IVT and MSI's VICIdial records can't be used to ascertain

28  the class, Defendants made no attempt to respond to Plaintiff's alternative argument that

13

the class can be ascertained through a combination of Defendants' internal records and self-identification.  *See Tatum v. Schwartz*, No. CIV S-06-01440DFLEFB, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007) (holding the plaintiff "tacitly concede[d] [her] claim by failing to address [the] defendants' argument in her opposition").  As explained in Plaintiff's motion,

> when both IVT and MSI contact someone who is actually interested in attending one of Defendants' timeshare presentations, they send that person's contact information to Defendants so they know who to expect at their presentations. As a result, Defendants are in direct possession of at least *some* of the class members' contact information.  Plaintiff's expert would simply need to perform a cell phone scrub on this information to isolate which individuals were called on their cell phones.

Mot. at 11:18–25 (emphasis in original and citation omitted).  While "this doesn't identify individuals called by IVT or MSI that *weren't* interested in attending a presentation," *id.* at 11:26–27 (emphasis in original), these members will be able to self-identify "via affidavit or presentation of phone records from the relevant time period," *Booth*, 2016 WL 3030256 at *7.  This will be accomplished by sending out "the best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), which will "include [the class] definition, along with the outbound telephone numbers used by IVT and MSI." Mot. at 12:8–9.  Potential class members can then "check their cell phone records and determine whether they are part of the class." *Id.* at 12:10–11; *see also, e.g., Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 248 (N.D. Ill. 2014) (holding class ascertainable because members could be identified by submitting "telephone records, bills, and/or recordings of the calls").

Indeed, this method is particularly appropriate here since Defendants are claiming IVT and MSI "do not track telephone calls in a manner that lets them know which calls are related to [Defendants]." Opp. at 22:23–25.  After all, "declining to certify a class

14

altogether . . . would create an incentive for [Defendants] to violate the TCPA on a mass scale and keep no records of [their] activity, knowing that [they] could avoid legal responsibility for the full scope of [their] illegal conduct." *Birchmeier*, 302 F.R.D. at 250; *accord Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 393 (M.D.N.C. 2015) ("If the Court were to deny certification because Dish does not keep [accurate telemarketing records] it would create the perverse incentive for entities to keep poor records and to violate the TCPA's clear requirement that such a list be kept.").

## IV.  COMMON ISSUES PREDOMINATE.

Next, Defendants claim common issues do not predominate because it believes: (1) the class members will need to individually demonstrate standing; (2) apparent authority depends on the subjective belief of each class member, and (3) consent cannot be determined collectively.  As explained below, none of this is right: the class members have standing for the same reasons Plaintiff does; apparent authority hinges on a reasonable person (i.e., objective) standard; and Defendants produced zero evidence of consent, meaning this issue cannot defeat certification.

### A.  The class members have standing.

First, Defendants claim common issues do not predominate because, "eventually, the absent class members will need to satisfy standing requirements in order to obtain the relief sought." *See* Opp. at 24:1–6.  As Defendants admit, this argument is derivative of its arguments relating to Plaintiff's own standing in this action.  *See id.* at 24:13–17 (explaining its arguments "addressing Plaintiff's standing come into play with respect to each class member).  Plaintiff agrees the class members' standing will rise or fall with her own, and disagrees an individual determination will need to be made as to each class member.

For example, Defendants' sole argument in support of the need for individual testimony is that it is required to determine whether "a class member received a phone call while the phone was on silent and no charges were applied."  Opp. at 24:16–17. Preliminarily, Defendants produced zero evidence of such a situation occurring.  But in

15

any event, the argument fails for the same reasons articulated above. *See supra*, at 4:6–13, 5:1–10:6.  Namely, "every unconsented call through the use of an ATDS" results in actual harm because "the recipient wastes her time and incurs charges for the call if she answers the phone, and *her cell phone's battery is depleted even if she does not answer the phone*." *Cabiness*, 2016 WL 5791411 at *5 (emphasis added) (citing *Mey*, 2016 WL 3645195 at *3).  And just because a class member missed the call does not mean she wouldn't have to address it, in the form of removing the missed call from her notification list or deleting unwanted voicemails.  *See Booth*, 2016 WL 3030256 at *7 (indicating TCPA violations cause injury because they require individuals to "waste time answering *or otherwise addressing* widespread robocalls" (emphasis added)).  It is therefore unsurprising that Defendants' speculative claims are insufficient to preclude certification.  *See Lofton v. Verizon Wireless (VAW) LLC*, No. 13-CV-05665-YGR, 2015 WL 1254681, at *4–*5 (N.D. Cal. Mar. 18, 2015) (explaining in any TCPA class action, each class member would have received distinct calls on different dates and times, but this is irrelevant when the "conduct at issue as to each member of the class [i]s sufficiently related").

### B.   Common issues predominate on the issue of apparent authority because it is based on how a reasonable person would interpret the calls.

Next, Defendants claim "[t]he issue of apparent authority agency will require an individual inquiry" because "each individual class member [will purportedly] be required to individually provide evidence as to the 'apparent agency' that each 'relied' on." Opp. at 24:19–20, 25:11–12 (emphasis omitted).  Strangely, however, Defendants make no mention of actual authority or ratification—likely because common questions clearly predominate for these two forms of agency.  For example, since actual authority depends on the relationship Defendants have with IVT and MSI, the fact-finder simply needs to examine this relationship and determine whether IVT and MSI "had actual authority to make the calls at issue on [Defendants'] behalf." *Krakauer*, 311 F.R.D. at 395.  Ratification, on the other hand "depends on [Defendants'] post-[call] behavior

16

without concern for any conduct by the class members." *Kristensen*, 12 F. Supp. 3d at 1306.   The common question will be whether Defendants ratified IVT and MSI's conduct by accepting the customers IVT and MSI sent to attend their presentations.

Turning to apparent authority, it does not necessitate individual inquiries because apparent authority "depends on whether a *reasonable person* would believe that the [telemarketer], or the person that caused the [telemarketing], had authority to act on behalf of [GEVC]." *Id.* at 1306 (emphasis added).   Here, IVT and MSI are required to identify themselves using RVI's DBAs—i.e., Sunset Vacations and Celebration Vacations, respectfully—when making calls on Defendants' behalf.   Accordingly, the common question is whether a reasonable person would believe that IVT and MSI's representation that they *were* Defendants meant they had authority to act on behalf of Defendants.

Nevertheless, Defendants cite a string of cases to claim that "[t]here is no avoiding that individuals would need to provide testimony as to their individual perceptions and beliefs."  Opp. at 26:13–14.   According to them, "each class member must *believe* the agent is acting with authority, and that belief must be *reasonable* . . . .   And, separately, each may need to show some reliance." *Id.* at 26:12–15 (emphasis in original).   But the very cases Defendants cite support Plaintiff's position.   For example, Defendants cite *Lushe v. Verengo Inc.*, No. CV 13-07632 AB RZ, 2015 WL 500158 (C.D. Cal. Feb. 2, 2015), an opinion that straightforwardly states " 'reasonable reliance' refers to the reasonableness of the third party." *Id.* at *6.   And in *Torres v. Goodyear Tire & Rubber Co.*, 867 F.2d 1234 (9th Cir. 1989), which considers Arizona state law, the Court explains the "touchstone of apparent agency" is whether a third-party's belief is reasonable. *Id.* at 1236.

The remaining cases Defendants rely on are simply irrelevant.   For example, in *Thomas v. Taco Bell Corp.*, 582 F. App'x 678 (9th Cir. 2014) the reasonable person standard was never discussed.   Instead, the opinion turned on a mistaken belief that apparent agency requires proof of detrimental reliance. *See id.* at 679–80; *see also*

17

*Lushe*, 2015 WL 500158 at *4–*7 (breaking down the misunderstandings reflected in *Thomas* and explaining "detrimental reliance is not necessary to establish apparent authority").   And *In re ChinaCast Education Corp. Securities Litigation*, 809 F.3d 471 (9th Cir. 2015) has no application here because there it was *undisputed* the defendant-employee acted within the scope of his apparent authority.  *Id.* at 476.

**C.**   **Common issues predominate on the issue of consent because Defendants have admitted they have no evidence that either IVT or MSI obtained prior express consent to call cell phones.**

Finally, Defendants claim "the issue of consent must be established individually," Opp. at 26:23–24, because there are "issues of how [IVT and MSI] obtained the specific phone numbers at issue, including what manner of consent was obtained," *id.* at 27:4–5. According to them, "phone numbers were likely obtained from a variety of sources and under a variety of different conditions of consent" and therefore "Plaintiff would need to set forth the issue of consent as to each individual class member." *Id.* at 27:5–7.  But as Plaintiff already explained, *see generally* Mot. at 18:18–20:12, consent "is an affirmative defense for which the defendant bears the burden of proof," *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. App'x 598, 600 n.1 (citing *In re Rules & Regulations Implementing the TCPA*, 23 FCC Rcd. 559, 565 (Jan. 4, 2008)).  This is a problem for Defendants because, contrary to their claim that "no discovery on this issue" has occurred, Opp. at 27:16–18, they have already admitted: (1) they have no idea where IVT and MSI get their telemarking phone numbers from; (2) they take no steps to ensure cell phones aren't called; (3) their standardized vendor agreements include no restrictions on calls that violate the TCPA; and (4)  despite a "good faith effort," they could not obtain "information regarding the forms of consent obtained" by IVT and MSI.  *See* Mot. at 20:13–21:5.   Given these admissions, Defendants' unchecked "speculation that [individuals] may have given their express consent to receive [telemarketing calls] is not sufficient to defeat class certification." *Agne v. Papa John's Int'l, Inc.,* No. C10-1139-JCC, 286 F.R.D. 559, 567 (WD. Wash. Nov. 9, 2012).

18

Defendants also assert issues of consent will be inherently individualized because Plaintiff provided consent to call one of her phone numbers.  Opp. at 27:19–21. Specifically, they claim Plaintiff attended a concert on September 28, 2014 where her brother entered one of RVI's sweepstakes using Plaintiff's cell phone number.  *Id.* at 27:21–23.  The implication here is that Plaintiff—through her brother—consented to be called, and that "it required her personal deposition" to figure this out.  *Id*. at 28:7–8 (emphasis omitted).  There are two fundamental problems with Defendants' argument. First, Defendants do not share their touchscreen leads with IVT and MSI.  *Id.* at 27:24. This means that even though Plaintiff's brother entered her (949) 439-8867 cell phone number into RVI's touchscreen, that number was *never* provided to MSI by Defendants. Instead, it appears MSI independently obtained Plaintiff's (949) 439-8867 number though some other unknown means.  Indeed, GEVC and RVI's PMKs admitted they had no idea how MSI obtained that number:

> Q.   You'll see that on Tuesday, September 30th, 2014, plaintiff, Michelle Del Valle at 7:02 p.m. received a call and it went to her call waiting from a number (949) 200-5342?  Do you see that?
>
> A.   Yes.
>
> Q.   And is that one of the numbers listed that MSI uses?
>
> A.   Yes.
>
> Q.   So based on this, it appears that MSI made a call to plaintiff, Michelle Del Valle on September 30th at 7:02 p.m.?
>
> A.   It would appear.
>
> [¶] . . . [¶]
>
> Q.   If you'll go into Exhibit 41 that's the same number that Michelle Del Valle purportedly provided to RVI at one of the touch screen -- at the Gordon Lightfoot concert?

19

A.    Correct.

Q.    Yet RVI did not provide that number to [MSI]?

A.    Correct.

Q.    Does RVI know why [MSI] called Michelle Del Valle on September 30th at 7:02?

A.    No.

PSA 1312–13 [Ex. 6.B] (Bryson Depo. at 227:16–228:20); *see also* PSA 1303–04 [Ex. 6.A] (Sargent Depo. at 164:13–165:24).  Second, Plaintiff's brother entered Plaintiff's (949) 439-8867 cell phone number into RVI's touchscreen interface, not her (949) 287-2405 number.  Despite this, *both* IVT and MSI called her on her (949) 287-2405 number.  Therefore, even if Plaintiff somehow did consent to receive telemarketing calls on her (949) 439-8876 number, she did not consent to receive telemarketing calls on her (949) 287-2405 number.

## V.    <u>PLAINTIFF IS CREDIBLE AND THEREFORE AN ADEQUATE CLASS REPRESENTATIVE.</u>

Next, Defendants argue Plaintiff is not an adequate representative because she lacks credibility, *see* Opp. at 28:9–21, asserting her testimony is uncertain regarding who called her, *id*. at 17:5–18:3, and that she never attended a timeshare presentation relating to Defendants, *id*. at 18:4–19:11.  Although "credibility may be a relevant consideration with respect to the adequacy analysis," it does " 'not automatically render a proposed class representative inadequate.' "  *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (quoting *Ross v. RBS Citizens, N.A.*, No. 09 CV 5695, 2010 WL 3980113, at *4 (N.D. Ill. Oct. 8, 2010)).  Instead, "[j]eopardy to the represented class members must be 'sharp.' "  *Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 215 (E.D. Cal. 2015) (quoting *Harris*, at 1015).  As a result, " 'a finding of inadequacy based on the representative plaintiff's credibility problems is only appropriate where the representative's credibility is seriously "questioned [1] on issues directly relevant to the

20

litigation or [2] there are confirmed examples of dishonesty, such as criminal conviction for fraud." ' " *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2015 WL 5138097, at *11 (N.D. Cal. Sept. 1, 2015) (quoting *Harris*, at 1015).

None of Plaintiff's accused instances of dishonesty rise to such a level. For example, Defendants repeatedly claim Plaintiff isn't credible because she purportedly "lost or destroyed" evidence regarding her attendance of a timeshare presentation. Opp. at 18:15–16; *see also id.* at 18:21–23. But when Plaintiff's actual testimony is examined, she merely stated that:

- she couldn't remember if Defendants had emailed her something, but if they did, she "probably" didn't have the e-mail anymore because her "e-mails only stay for so long" before they are automatically deleted, PSA 1326 [Ex. 6.C] (Del Valle Depo. at 45:1–12);

- she "probably" wrote down directions to the presentation "on a piece of paper," PSA 1327 [Ex. 6.C] (Del Valle Depo. at 46:14–21); and

- she "received a gift certificate for restaurant.com and a [free travel] voucher," but threw them away because they "had an expiration date," PSA 1324–25 [Ex. 6.C] (Del Valle Depo. at 41:14–42:3), PSA 1332 [Ex. 6.C] (Del Valle Depo. at 60:3–22).

None of this testimony evidences an active attempt by Plaintiff to "destroy" evidence in this action, let alone disqualify her from representing the class. Indeed, Plaintiff has produced her cell phone records, which support her claims. For example, Defendants argue "Plaintiff testified she received many phone calls," but "she [cannot] identify a single call from MSI or IVT before she filed the action." Opp. at 17:15–17. However, as stated through, these records show Plaintiff was called on her cell phone by either IVT or MSI *at least* three times. *See supra*, at 10:25–11:9.

Similarly, Defendants assert Plaintiff is "confused and mistaken" regarding her attendance of a timeshare presentation related to GEVC. Opp. at 18:17–23. They argue

21

they didn't have a sales center in Ontario in 2014 and therefore Plaintiff must be mistakenly suing them for calls that she allegedly received from Great Destinations, a timeshare company she recently settled similar TCPA claims against. *See id.* at 18:24–19:1. Again, there are several problems with Defendant's argument. First, although Defendants didn't have a sales center in Ontario in 2014, it did have a sales center there during the class period. Indeed, Defendants have had sales centers in multiple locations throughout California, including Mission Viejo, Newport Beach, Ontario, Encino, San Dimas, Long Beach, and Orange. PSA 1309–11 [Ex. 6.B] (Bryson Depo. at 141:21–143:10); PSA 1300–02, [Ex. 6.A] (Sargent Depo. at 15:14–16:1, 80:9–13). It is therefore possible Plaintiff mistook the date she attended the sale presentation, or confused the Ontario sales center with the one located in nearby San Dimas. Second, although Defendants claim Plaintiff must have attended a Great Destinations timeshare presentation, Great Destinations stated she did not. PSA 1338–39 [Ex. 7.A] (Great Destinations' declaration). Finally, and most importantly, even if Plaintiff were mistaken about whose presentation she attended, it would not disqualify her from representing the proposed class. After all, inadequacy based on credibility requires " 'issues directly relevant to the litigation.' " *O'Connor*, 2014 WL 5138097 at *11 (quoting *Harris*, 753 F.Supp.2d at 1015). What matters in a TCPA claim is whether "(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036, 1042 (9th Cir. 2012), (citing 47 U.S.C. § 207(b)(1)). Whether the plaintiff attended a timeshare presentation is irrelevant.

Defendants also claim that Plaintiff must be confused because she allegedly "submitted on-line Yelp! Reviews . . . show[ing] that she was actually contacting [*sic*] Great Destinations." Opp. at 19:2–8. As an initial matter, the Yelp! reviews attached to the Declaration of Mark R. Meyer were never authenticated. Mr. Meyer admits he obtained them simply by "searching for 'Michele Del Valle' and copying the reviews that refer to Great Destinations." Meyer Decl., ¶ 9. Mr. Meyer submitted no evidence

that Plaintiff wrote them.  But even assuming she did, the same "Michele Del Valle" *also* posted a complaint on Global Exchange Vacation Club's Yelp! page.  PSA 1344–47 [Ex. 7.B] (Plaintiff's other Yelp! complaint).  This makes sense.  Just because she complained about Great Destinations' telemarketing doesn't mean she couldn't have also complained about Defendants'.  Plaintiff received violative calls from both, and therefore filed a TCPA claim against both.

Defendants also claim "whether Plaintiff signed for other give-a-ways [asking for] her [phone] numbers creates a special distraction" unique to Plaintiff.  Opp. at 28:19–21. But Defendants present no evidence this has ever occurred, and Plaintiff already testified she only ever participated in one such give-a-away—the one identified by Defendants. *See* PSA 1319–20 [Ex. 6.C] (Del Valle Depo. at 28:15–29:4).

## VI.   CLASS TREATMENT IS SUPERIOR

Finally, Defendants argue "[c]lass-wide resolution is not required in the interest of justice or to fulfill the goals of Congress."  Opp. at 28:22–23.  Specifically, they claim the statutory damages $500 to $1,500 "makes filing individual suits worthwhile." *Id.* at 29:2–3.  But as Plaintiff already explained, there are more factors at play than simply how much each putative class member is entitled to receive.  Despite the fact that over 11,000 individuals have complained about Defendants' telemarketing, no "individual suits" have been filed—presumably because Defendants' use deceptive trade names to make it difficult to find the correct entity to sue. *See* Mot. at 23:18–24:5.  Since this "requires something beyond a basic reading of the TCPA," the claims here are "ill-suited for small claims litigation." *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015).

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

23

## <u>CONCLUSION</u>

As explained, Plaintiff has satisfied the procedural requirements for certification under Federal Rule of Civil Procedure 23.  And, although not an element of Rule 23, Plaintiff has established she has standing to bring her claims.   The Court should therefore grant Plaintiff's motion and certify the class.

Date:  December 23, 2016                    **PARRIS LAW FIRM**


By:___/s/ *John M. Bickford*_____
             R. Rex Parris
             John M. Bickford

Attorneys for Plaintiff and
the Putative Class

24

## CERTIFICATE OF SERVICE

I, John M. Bickford, an attorney, certify that on December 23, 2016, I served the above and foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**, by causing true and accurate copies of such paper to be filed and transmitted to the persons shown below via the Court's CM/ECF electronic filing system, on this the 23rd day of December 2016.

Joseph Ehrlich, Esq.
Mark R. Meyer, Esq.
**LOSCH & EHRLICH**
425 California Street, Suite 2025
San Francisco, California 94104
Telephone:  (415) 956-8400
Facsimile:  (415) 956-2150
Email: je@losch-ehrlich.com
mm@losch-ehrlich.com


/s/   *John M. Bickford*

John M. Bickford