UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| **MICHELE DEL VALLE,**<br>     **Plaintiffs,**<br><br>     vs.<br><br>**GLOBAL EXCHANGE VACATION CLUB; RESORT VACATIONS, INC.; GLOBAL VACATIONS MARKETING CORP.;**<br>     **Defendants.** | **Case No.: SA CV 16-2149-DOC (JCGx)**<br><br>**ORDER DENYING MOTION TO CERTIFY CLASS [11]; DENYING MOTION TO REMAND [20]** |

Before the Court are Plaintiff Michele Del Valle's ("Del Valle" or "Plaintiff") Motion for Class Certification ("Motion") (Dkt. 11) and Motion to Remand (Dkt. 20). After considering the moving papers, the Court DENIES both Motions.

### I. BACKGROUND

#### A. Gravamen of Plaintiff's Claim

On December 2, 2016, Defendants Global Exchange Vacation Club ("GEVC"), Resort Vacations, Inc. ("RVI"), and Global Vacations Marketing Corp. ("GVMC") (collectively, "Defendants") removed this action to federal court. *See* Notice of Removal (Dkt. 1). The gravamen of Plaintiff's First Amended Complaint ("FAC") (Dkt. 1-3) is that Defendants violated the Telephone Consumer Protection Act ("TCPA"), 27 U.S.C. §§ 227 *et seq.*, by hiring two telemarketing companies who used an automatic telephone dialing system to call Plaintiff's cellular phone numbers without her express consent, and for the purpose of marketing Defendants' timeshares. Plaintiff sues on behalf of herself and a putative class.

#### B. Motion for Class Certification

On December 8, 2016, Plaintiff filed the instant Motion for Class Certification ("Motion") (Dkt. 11). Plaintiff seeks class certification for violations of the TCPA. *See generally* Mot. Plaintiff seeks to certify the following class ("the proposed class"):

> All persons within the United State to whom Intervoice Technologies ["IVT"] and Marketing Solutions, International ["MSI"] have placed a call to said persons' cellular telephone (without their express prior consent and not for emergency purposes) through the use of an automatic telephone dialing system for the purpose of marketing Defendants' timeshares from September 15, 2010 to the present.

FAC ¶ 24; Mot. at 1–2.

### II. LEGAL STANDARDS

#### A. Class Certification

Federal Rule of Civil Procedure 23 governs class actions. Fed. R. Civ. P. 23. A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of

plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)).

After satisfying the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate either: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; or (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. Fed. R. Civ. P. 23(b)(1)–(3).

"A party seeking class certification must affirmatively demonstrate compliance with Rule 23—that is, the party must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (emphasis in original). The party may not rest on mere allegations, but must provide facts to satisfy these requirements. *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977). A class certification motion requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351. However, neither "the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies [Rule 23]." *United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010). "[N]othing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Id.* (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974)).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

**III.   DISCUSSION**

    **A.   The Four Requirements of Rule 23(a)**

        **1. Numerosity under Rule 23(a)(1)**

Numerosity, the first prerequisite of class certification, requires that the class be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). A proposed class of at least forty members presumptively satisfies the numerosity requirement. *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds by County of Los Angeles v. Jordan*, 459 U.S. 810 (1982); *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).

Here, Plaintiff contends, and Defendants do not dispute, that Plaintiff's proposed class is sufficiently numerous. *See* Mot. at 10. Evidence that Plaintiff has presented with her Motion confirms that this prerequisite is satisfied. *See* Mot. at 10 n.4. For example, Defendant GEVC's Further Response to Plaintiff's Special Interrogatories states that RVI and its vendors ("third party contractors") make more than 8,000 calls per day. Plaintiff's Appendix of Evidence ("Pl.'s App.") (Dkt. 11-2) Ex. E at 7:21–23. Plaintiff has also offered evidence that IVT and MSI each send approximately fifty to sixty customers to RVI per week. Pl.'s App. Ex. B ("Bryson Depo.") at 168–169. In addition, Defendant GEVC's attorneys have stated that as of May 18, 2015, over 111,000 individuals "have asked not to be called related to [GEVC]." Pl.'s App. Ex. E at 15:16–18. Accordingly, the Court concludes that the proposed class contains at least forty members and that the numerosity requirement of Rule 23 is satisfied. *See Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 533 (C.D. Cal. 2011) ("Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied.").

### a. Ascertainability

Although Rule 23 does not contain an ascertainability requirement, courts have often required that a class be ascertainable to be certified. Defendants argue that "class certification should be denied because the class cannot be currently and readily ascertainable based upon objective criteria." Opp'n at 22. Defendants cite cases from the Second, Third, and Fifth Circuits to support their contention that Plaintiff must show the class is ascertainable in order to achieve certification. *See id.* But the Ninth Circuit does not have a separate ascertainability or administrative feasibility requirement. In *Briseno v. ConAgra Foods*, ___F.3d___, 2017 WL 24618 (9th Cir. 2017), the Ninth Circuit declined to adopt an administrative feasibility requirement. *Briseno*, 2017 WL 24618, at *10. The *Briseno* court found that Rule 23 "does not impose a freestanding administrative feasibility prerequisite to class certification" and declined to adopt any of the Third Circuit's policy rationales. *Id.* at *4–*5.

Plaintiff seeks to certify a class under Rule 23(b)(3). *See* Mot. at 16–20. Rule 23(b)(3) provides that "the likely difficulties of managing a class action" are "pertinent" to a court's finding that a class action may be maintained under this rule. Fed. R. Civ. P. 23(b)(3)(D); *see Briseno*, 2017 WL 24618 at *4 (finding a separate administrative feasibility requirement would "render [the] manageability criterion [of Rule 23(b)(3)] largely superfluous, a result that contravenes the familiar precept that a rule should be interpreted to give effect to every clause"). The Court finds that Plaintiff's two possible methods of ascertaining the class are reasonably manageable. First, Plaintiff asserts that MSI and IVT can provide Defendants with "a report showing every call made on [Defendants'] behalf," because their software—a program called VICIdial—is "a predictive dialer that dials lists of telephone numbers loaded into client specific 'campaigns.'" Mot. at 10. This system allegedly "creates a record of every call it makes" and "generate[s] campaign reports." *Id.* Plaintiffs propose that their expert, Jeffrey A. Hansen ("Hansen"), be provided with such a report, which he will then "scrub" to isolate calls made to cellular phone numbers. *Id*. Hansen would then compare these numbers with MSI and IVT's "internal lead lists" to identify the contact information of each individual class member. *Id.* Other courts have approved a similar method in TCPA class actions. *See*

*Abdejalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015); *Thrasher v. CMRE Fin. Servs., Inc.*, No. 14-CV-1540-BEN, 2015 WL 1138469 (S.D. Cal. Mar. 13, 2015); *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674 (S.D. Fla. 2013).

In the alternative, Plaintiff asserts that it could ascertain many class members by identifying individuals who were "actually interested in attending one of Defendants' timeshare presentations." Mot. at 11. Defendants possess the contact information of these individuals because MSI and IVT send the information of such people to Defendants. *Id.* Plaintiff would then perform a "scrub" to identify cellular phone numbers. *Id.*

Defendants say they are unable to determine which of MSI and IVT's calls are related to them, because "those companies do not track telephone calls in a manner that lets them know which calls are related to [Defendants]" and MSI and IVT "are not able to obtain this information." Opp'n at 22. Because of this, Defendants contend that "the only way to establish whether a call from MSI or IVT was related to [Defendants] . . . would be have *every single person* called by MSI and IVT *separately testify* as to the specific content of the phone calls." *Id.* (emphasis in original). This, of course, would be very time-consuming and presumably expensive.

The Court finds it very unlikely that a company cannot obtain performance data from a contractor whose sole service is to generate customers and sales for that company. The Court will not deny class certification based on Defendants' argument that they do not have the ability to obtain call information from MSI and IVT because those companies do not track which calls they make are "related to RVI and [GEVC]." *See* Opp'n at 22–23. For the reasons explained above, the Court finds that this class action is manageable enough to not bar certification of the proposed class.

### 2. Typicality under Rule 23(a)(3)

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quotation marks omitted). "Typicality

refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* The typicality requirement demands that a named plaintiff's claims be "reasonably co-extensive with those of absent class members," although "they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

"The purpose of the typicality requirement is to assure that the interests of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508. "[A] named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.*

Here, Plaintiff asserts that she is typical of the putative class because her "claims arise out of the course of conduct—i.e., IVT and MSI's telemarketing of her cell phone using [automatic telephone dialing system ("ATDS")] without her prior express consent—as the absent class members." Mot. at 15. Plaintiff also asserts that there are no defenses unique to Plaintiff "that will be a major focus of the litigation." *Id.*

Defendants argue that Plaintiff is atypical because she is not a member of the class she seeks to represent. *See* Opp'n at 16–18. Specifically, Defendants contend that Plaintiff was not called by MSI or IVT prior to filing her Complaint and that she has not shown she was ever called by MSI or IVT in connection with marketing of GEVC. *Id.* at 16. Defendants assert that many calls made by MSI and IVT are not related to GEVC and may be related to "different timeshare businesses that have a similar marketing model." *Id.* at 17. Defendants argue that Plaintiff cannot make the required showing because her testimony is "vague and uncertain regarding who called her, when, and what they actually said." *Id.* at 17. She does not mention the company names that MSI and IVT are required to use when making calls related to GEVC, and at least one call that is the basis of this lawsuit was also the basis of a separate lawsuit against a different timeshare company. *See id.*; *compare* Declaration of Mark R. Meyer ("Meyer Decl.") Ex. E (alleging a call on December 14, 2014 at 7:58 p.m. from Great Destinations) *with* Mot. at 7 (alleging a call on December 14, 2014 at 7:58 p.m. from MSI related to GEVC).

Plaintiff's testimony is far from confidence-inspiring. For example, when asked about the December 4, 2014 call that is one of the alleged violation of the TCPA, she testified that she "can't" recall that call and states that she "would not remember any of these"—presumably referring to the list of calls that Defendants' counsel placed in front of her. Meyer Decl. Ex. C ("Del Valle Depo.") at 36:6–15. In another instance, Plaintiff testified that she asked a caller where they were calling from, but "I don't remember what they told me." *Id.* at 39:4–8. This makes little sense in light of Plaintiff's testimony that she conducted internet research on the company named by the caller, identified the number of its Irvine headquarters, called twice, and spoke with two different supervisors. *Id.* at 39:12–40:11.

On the other hand, Plaintiff testified that she attended a presentation as a result of "a call." *Id.* at 38:20–22. When asked for the name of the company whose presentation she attended, Plaintiff testified: "Isn't it global—global, something, exchange. I know it was a timeshare" and "all I can remember is the two words[,] global and exchange." *Id.* at 41:2–5, 47:1–2. She did not remember when she attended the presentation. *Id.* at 41:10–13. This exchange also occurred:

> Q: Okay. If you recall, did the Filipino men or the lady, were they trying to get you to go to the same place?
> A: Yes
> Q: To this Global Exchange place?
> A: Yes.

*Id.* at 52:5–10. Then, asked again whether she remembered what company she researched online, Plaintiff finally stated "Well, I looked up, I'm sure, the name of that company." *Id.* at 52:17–19.

While this evidence is not as clear-cut as Defendants suggest, the Court agrees that Plaintiff has not sufficiently demonstrated that she is a member of the proposed class. The evidence described above makes it possible—but not clear or even likely—that Plaintiff is a member of the proposed class. It is undisputed that Plaintiff received calls from MSI and IVT. *See* Pl.'s App. Ex. E at 9–11 (listing "phone numbers used by RVI and all known phone

-8-

numbers of vendors," including MSI and IVT); Mot. at 7 (listing "at least three times" that Plaintiff was called by a number on the list provided by Defendants); Opp'n at 16 ("Plaintiff received at least three calls from IVT and MSI."). However, the link between MSI and IVT's calls and the Defendants has not been "affirmatively demonstrate[d]." *See Wal-Mart*, 564 U.S. at 348.

"[A] class representative must be part of the class." *Id.* Because Plaintiff has defined the proposed class as individuals who received calls "for the purpose of marketing Defendants' timeshares," Mot. at 1–2, the link between Defendants and the calls Plaintiff received from MSI and IVT is critical. After analyzing the evidence before it, the Court is not satisfied that the typicality prerequisite has been met.

### 3. Adequacy of Named Representative under Rule 23(a)(4)

Due process requires that absent class members have an adequate representative. *See Hansberry v. Lee*, 311 U.S. 32, 43 (1940). An adequate representative is one who will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A representative is adequate where: (1) there is no conflict of interest between the representative and its counsel and absent class members, and (2) the representative and its counsel will "pursue the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 120 (internal citations and quotations omitted).

#### a. Class Counsel Is Adequate

Defendants do not dispute and the evidence confirms that, as detailed in his declaration, Plaintiff's counsel is an experienced class action litigator who has been certified as class counsel in numerous class actions. Pl.'s App. Ex. 4 ("R. Parris Decl."). Plaintiff's counsel and his firm have actively litigated this matter. *Id.* Accordingly, Plaintiff's counsel is adequate.

#### b. Plaintiff Is Not an Adequate Representative

Plaintiff avers that there is no antagonism between her and the proposed class, and that she understands the duties of acting as a class representative. Mot. at 16. She asserts that there are "no unique circumstances between Plaintiff and Defendants that destroy[] her ability to fairly and adequately represent the class." *Id.*

As an initial matter, if Plaintiff is not a member of the class, she cannot "adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). Thus, because the Court has found that Plaintiff may not be a member of the class she purports to represent, the Court also finds that Plaintiff is not an adequate representative.

Defendants contend that Plaintiff is also not an adequate representative because, in addition to not being a member of the class, she lacks credibility. Opp'n at 28. Specifically, Defendants allege that "Plaintiff's testimony does not match up with her written discovery responses, is contradicted by her own public statements, and conflicts with indisputable facts." *Id.*

The Court agrees with Defendants that Plaintiff's credibility may be a relevant consideration with respect to her adequacy as class representative. "[I]t is self-evident that a Court must be concerned with the integrity of individuals it designates as representatives for a large class of plaintiffs." *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986) (citing *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549 (1949) (considering "diligence, wisdom and integrity" of class representatives important)). Here, Defendant point out that Plaintiff provided discovery responses stating that she never consented to any calls. Opp'n at 27; *see* Meyer Decl. Ex. A at 11–12 (denying ever consenting to calls from GEVC orally, electronically, or in writing). However, Plaintiff then testified that she allowed her brother to sign up for a giveaway using one of her cellular phone numbers. Opp'n at 27; *see* Meyer Decl. Ex. C at 19:11–18, 24:15–24. Defendants also seem to suggest that Plaintiff is not credible because she "lost or destroyed" evidence that could prove what presentation she attended, and "destroyed any records she may have had" of such presentation. Opp'n at 18. The matter of the presentation Plaintiff allegedly attended strikes the Court as especially strange. Plaintiff unconvincingly argues that "it is possible Plaintiff mistook the date she attended the sale presentation, or confused the Ontario sales center with the one located in nearby San Dimas." Reply at 22. In addition, Plaintiff's testimony regarding the calls that form the basis of her suit, discussed above *supra* Section III(A)(2), is quite vague. Altogether, the Court finds that this evidence raises serious questions about the veracity of Plaintiff's account.

Nevertheless, "credibility problems do not automatically render a proposed class representative inadequate." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010). Rather, to result in a finding of inadequacy, attacks on the credibility of the class representative must be "so sharp as to jeopardize the interests of absent class members." *Id.* Accordingly, "a finding of inadequacy based on the representative['s] . . . credibility problems is only appropriate where the representative's credibility is seriously questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud." *Id.* (citation omitted). Plaintiff is quite right that whether Plaintiff "attended a timeshare presentation is irrelevant" to her TCPA claims, Reply at 22, and the other evidence before the Court does not rise to the requisite level of dishonesty. Thus, at this time the Court will not find that Plaintiff is so unbelievable as to be an inadequate class representative.

Finally, Defendant also argues that the issue of "whether Plaintiff has signed for other give-a-ways [sic] and provided her phone numbers creates a special distraction and unique position of Plaintiff as opposed to the rest of the class." Opp'n at 28. The Court is not convinced. "'[E]xpress consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof." *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 (9th Cir. 2011) (citing 23 F.C.C.R. 559, 565 (Jan. 4, 2008)). This affirmative defense is potentially relevant to all class members, not just Plaintiff. This is not a material distinction between Plaintiff and other members of the putative class, especially when Defendants have provided no evidence that Plaintiff is differently situated with respect to possible defenses against her claims.

Nevertheless, because the Court finds that Plaintiff has not shown she is a member of the class she seeks to represent, the Court cannot find that Plaintiff is an adequate representative of that class.

### 4. Commonality under Rule 23(a)(2)

The "commonality" prerequisite mandates that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that the class's claims

are based on a "common contention . . . capable of classwide resolution," meaning that determination of the "truth or falsity" of that contention "will resolve an issue that is central to the validity of [the class's] claims." *Wal-Mart*, 564 U.S. at 350.

The requirements of Rule 23(a)(2) have "been construed permissively," and just one common question of law or fact will satisfy the rule. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion [predominance] requirements of Rule 23(b)(3)." *Id.*

In order to determine whether there are common questions of law or fact, the court reviews the law regarding the putative class's claim. *See Wal-Mart*, 564 U.S. at 351 ("[C]lass determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n.15 (9th Cir. 2009) ("The district court may consider the merits of the claims to the extent that it is related to the Rule 23 analysis.").

Plaintiff asserts that there are four common questions:

(1) Do IVT and MSI call cell phones?

(2) Do IVT and MSI use an ATDS?

(3) Can Defendants prove that IVT and MSI obtained prior consent to telemarket [to] cell phones?

(4) Are Defendants liable for the calls made by IVT and MSI on their behalf?

Mot. at 14. Defendants, on the other hand, contend that the "issues that will drive the resolution of this litigation" are:

(1) Whether any calls caused actual harm to Plaintiff another class member to establish standing,

(2) Whether IVT or MSI called Plaintiff or class members in connection with GEVC,

(3) Whether IVT or MSI were acting as the apparent agents of defendant, and

-12-

(4) Whether any class members provided consent to be called.

*See* Opp'n at 23.

Defendants first argue that "individual issues overwhelm any common issues to be litigated," because each class member is required to have standing, which would "require individual treatment and testimony regarding whether each class member actually suffered from any cognizable harm." Opp'n at 24. Defendants state without citing authority that "there can hardly be a claim of harm" "if a class member received a phone call while the phone was on silent and no charges were applied." *Id.* The Court disagrees.

As an initial matter, district courts in this Circuit have held that absent class members must have Article III standing. *See O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG CWX, 2011 WL 4352458, at *10 (C.D. Cal. Sept. 19, 2011), *aff'd sub nom. Rogers v. Epson Am., Inc.*, 648 F. App'x 717 (9th Cir. 2016); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 497 (C.D. Cal. 2011). To have standing, a plaintiff (or, more relevantly here, a class member) must have (1) suffered an "injury in fact," (2) there must be a causal connection between the injury and the complained-of conduct, and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Defendants focus on the first standing requirement. However, as courts in this Circuit have explained, "every unconsented call through the use of an ATDS to a consumer's cellular phone results in actual harm: the recipient wastes her time and incurs charges for the call if she answers the phone, and her cell phone's battery is depleted even if she does not answer the phone." *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2016 WL 5791411, at *5 (N.D. Cal. Sept. 1, 2016) (citing *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 WL 3645195, at *3 (N.D. W.Va. June 30, 2016) ("[A]ll ATDS calls deplete a cell phone's battery, and the cost of electricity to recharge the phone is also a tangible harm.")); *see also Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016) (finding TCPA violations, if proven, caused injury because they "required Plaintiffs to waste time answering or otherwise addressing widespread robocalls."). This Court thus finds that "a statutory violation of Section 227(b)(1)(A)(iii) of the TCPA necessarily harms the recipient of

1   the unwanted calls such that the statutory violation is sufficient on its own to constitute an
2   injury in fact." *Cabiness*, 2016 WL 5791411, at *5. Defendants' argument that there was no
3   harm if a class member's phone was on silent or if there was no charge is therefore unavailing.[1]

4   Second, Defendants contend that liability would likely be based on an apparent authority
5   theory. Opp'n at 25. They argue that because apparent authority depends upon representations
6   made to a plaintiff and that plaintiff's reliance, "each individual class member would be
7   required to provide evidence as to their reliance on the representations," defeating
8   commonality. *Id.* Each class member must (1) believe the agent is acting with authority and (2)
9   their belief must be reasonable. *Id.* Accordingly, Defendants argue that there is no way to avoid
10  having each individual class member testify "as to their individual perceptions and beliefs." *Id.*
11  This would require each class member to provide evidence that they "actually answered the
12  phone , . . listened to the person who called, and had some belief originating in statements [that
13  are] traceable to the defendants." *Id.*

14  This is beside the point. Although Defendants ignore these issues in their brief, the Court
15  is not convinced that actual agency or ratification do not exist here and Defendant offers no
16  evidence to the contrary. Thus, the common question related to Defendant's authority over IVT
17  and MSI is whether Defendants "controlled or had the right to control" IVT and MSI "and,
18  more specifically, the manner and means" of the telemarketing campaign IVT and MSI
19  conducted. *See Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1080 (C.D. Cal 2012).
20  Alternatively, as proposed by Plaintiff, a common question is whether Defendants ratified IVT
21  and MSI's conduct by accepting customers IVT and MSI sent to Defendants. *See* Mot. at 22.

22  Third, Defendants argue that commonality is defeated because "the issue of consent may
23  need to be established individually based upon records located in unrelated third parties [sic]."
24  Opp'n at 26. Relying once again on the contention that they do not have access to performance
25  data (*i.e.* what phone numbers were called on behalf of GEVC, when, and how the number was

---

[1] The Court notes that "because a statutory violation of § 227(b)(1)(A)(iii) of the TCPA necessarily causes harm to the recipient . . . [Plaintiff] need not allege any additional harm beyond the one Congress has identified." *Cabiness*, 2016 WL 5791411, at *5 (internal quotations omitted) (citing *Spokeo, Inc. v. Thomas Robins*, 136 S. Ct. 1540, 1549 (2016)).

acquired), Defendants suggest that "the issue of consent would need to be separately litigated as to each individual class member." *Id.* at 27. As explained above, the Court is not convinced that Defendants have no way of accessing this information. Class certification cannot be defeated by Defendants' poor record-keeping or failure to establish performance data reporting mechanisms with their third-party vendors. This would incentivize companies to not keep records, or not require that their vendors keep records, in an attempt to circumvent TCPA liability.

Further, "'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof." *Grant*, 449 F. App'x at 600 (citing 23 F.C.C.R. 559, 565 (Jan. 4, 2008)). Defendants' speculation that customers may have given their consent to receive telemarketing calls related to GEVC on their cellular phones is not sufficient to defeat class certification—especially where Plaintiff has offered persuasive evidence that GEVC does not obtain express consent before cellular phone numbers are called by Defendants' vendors on their behalf.[2] *See* Mot. at 20–21.

### B. Rule 23(b)

After satisfying the requirements of Rule 23(a), the proposed class must also satisfy at least one of the three requirements listed in Rule 23(b). Here, Plaintiff seeks certification under Rule 23(b)(3). Mot. at 16–20. The Court has concluded that the prerequisites of Rule 23(a) are not satisfied. Thus, the Court need not reach the Rule 23(b)(3) analysis at this time.

### C. Motion to Remand

On December 28, 2016, Plaintiff filed her Motion to Remand. Defendants opposed on January 9, 2017 ("Opp'n to Mot. to Remand") (Dkt. 24); Plaintiff has not filed a Reply.

Plaintiff argues that because Defendants opposed class certification "primarily on the grounds that Plaintiff has no standing to pursue her claims," Defendants, as the removing party, have failed to meet their burden of proving that removal was proper. Mot. to Remand at 4. Said

---

[2] Defendants argue that the fact that Plaintiff gave one of her cellular numbers to GEVC and consented to be called means that "there is no way of knowing how many different [class] members would raise consent issues that would need to be addressed individually." Opp'n at 28. Plaintiff has provided persuasive evidence that MSI did not receive that phone number from Defendants—and yet Plaintiff alleges that she was nevertheless called on that number by MSI regarding GEVC. Reply at 18–20. This suggests that MSI was acquiring phone numbers independently of instances when an individual provided express consent. Further, Plaintiff alleges she received calls from both IVT and MSI on her other cellular numbers. *See* Mot. at 20. Accordingly, this one instance of alleged consent does not defeat class certification.

-15-

differently, Plaintiff argues that Defendants have contradicted their own assertion that this is "a civil action [over] which this Court has original jurisdiction." Notice of Removal ¶ 9.

On January 13, 2016, Defendants filed a Supplemental Brief Withdrawing an Argument ("Supplemental Brief") (Dkt. 25), which had the effect of withdrawing all arguments in Defendants' Opposition to Motion for Class Certification suggesting that Plaintiff individually lacks standing. *See* Suppl. Brief at 2 (specifically withdrawing arguments on lines 8:17–19, 8:24–28, 12:21–24, 15:8–16:6, 19:12–22:12, and 29:9 of Opposition to Motion for Class Certification). Defendant concedes that Plaintiff has individual standing to pursue a claim for violation of the TCPA, but argues that Plaintiff's claims fail on the merits. Opp'n to Mot. to Remand at 7–8.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state to federal court is governed by 28 U.S.C. § 1441, which provides in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." The removing defendant must file a notice of removal in the appropriate United States District Court, together with all process, pleadings, and orders served upon the defendant. 28 U.S.C. § 1446(a). Notice of removal must be filed within thirty days of receiving a copy of the original complaint, or "within 30 days after the service of summons upon the defendant, if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b). Remand may be ordered for lack of subject matter jurisdiction or any defect in the removal procedure. 28 U.S.C. § 1447(c).

"[P]ost-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court." *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006); *see also Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) ("[A] plaintiff may not compel remand by amending a complaint to eliminate the federal question

upon which removal was based."). Therefore, "a party that has properly removed a case need not amend its removal notice or file a new notice after an amended complaint changes the ground for federal jurisdiction." *Id.* Once a defendant has properly removed a case, "the district court has jurisdiction over it on all grounds apparent from the complaint, not just those cited in the removal notice." *Id.*

To protect the jurisdiction of state courts, removal jurisdiction should be strictly construed in favor of remand. *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheet*, 313 U.S. 100, 108–09 (1941)). If there is any doubt as to the right of removal in the first instance, remand must be ordered. *See Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988). "The party seeking removal bears the burden of establishing federal jurisdiction." *Id.*; *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

Here, the pleadings filed in state court provide a basis for federal subject matter jurisdiction. Plaintiff alleges she received annoying and nonconsensual phone calls on her cell phone from IVT and MSI regarding Defendants' timeshare products in violation of the TCPA, and that those calls have damaged her. As discussed above in Section III(A)(4), "a statutory violation of Section 227(b)(1)(A)(iii) of the TCPA necessarily harms the recipient of the unwanted calls such that the statutory violation is sufficient on its own to constitute an injury in fact." *Cabiness*, 2016 WL 5791411, at *5. Thus, based on Plaintiff's pleadings in state court, Plaintiff has adequately established Article III standing and Defendants did not improperly remove. The Court thus DENIES Plaintiff's Motion to Remand.[3]

## IV. DISPOSITION

For the reasons explained above, the Court DENIES Plaintiff's Motion for Class Certification and DENIES Plaintiff's Motion to Remand.

---

[3] To the extent Defendants argue that members of the putative class lack standing, the Court has determined that this argument does not affect class certification and it is not relevant to the resolution of the instant Motion to Remand.

Should Plaintiff wish to file a new Motion for Class Certification, she shall do so **on or before May 15, 2017.**

DATED: February 1, 2017

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE